**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:23-cv-22083-RAR**

MICHAEL OSTERER, individually and on
behalf and all others similarly situated,

      Plaintiff,

v.

BAM TRADING SERVICES INC. d/b/a
BINANCE.US, a Delaware corporation,
and BINANCE HOLDINGS, LTD. d/b/a
BINANCE, a foreign company,

      Defendants.

_____/

**<u>AFFIDAVIT OF SERVICE ON BINANCE HOLDINGS, LTD.</u>**

I, Shanna Solorzano, do hereby make oath and say as follows:

1.  I am employed by Broadhurst LLC, Level 4, Monaco Towers, 54 Edward Street, George

    Town, Grand Cayman, Cayman Islands, and am authorized to serve legal process in the

    Cayman Islands.

2.  On or about Friday, 9 June 2023, Broadhurst LLC was retained by KO Lawyers located in

    Ft. Lauderdale, Florida, in turn instructed by the Plaintiff, to serve the following documents

    upon the Defendant, Binance Holdings Ltd. ("Binance"):

    a.  Summons, dated 9 June 2023; and

    b.  Class Action Complaint dated 5 June 2023

        (copies of which are attached hereto as Exhibit A)

3. According to the Cayman Islands Corporate Registry for Binance, Binance's registered office is located at International Corporation Services Ltd., 2nd Floor, Harbour Place, North Wing, 103 South Church Street, George Town, Grand Cayman KY1-1106, Cayman Islands. *See* Search Report attached hereto as Exhibit B.

4. On Friday, 9 June 2023 at approximately 2:35pm, I went to Binance's registered office at International Corporation Services where I met the receptionist, Ms. Ann-Marie Wight who confirmed she is authorized to accept service on behalf of Binance. I handed to her the above-referenced documents, which she accepted, and she signed Broadhurst LLC's cover letter, attached hereto as Exhibit C, confirming date of receipt.

5. Ms. Wight is Caucasian, aged approximately 30 - 40 years, 5'7" tall, slim build, with short straight blonde hair and wears glasses.

6. Service has been effected upon Binance Holdings Ltd. in compliance with the laws of the Cayman Islands and thus in compliance with Article 10(b) of the Hague Service Convention.

I declare under penalty of perjury under the laws of Cayman Islands and the United States that the above statements are true and accurate to the best of my knowledge and belief.

12/06/23
Date

Shanna Solorzano, Process Server

Sworn to before me at George Town, Grand Cayman, Cayman Islands, this ____12____ day of June 2023.

Signature of Cayman Islands Notary/Commissioner of Oaths

[Seal]

**Tanya Meyerhoff**
Notary Public in and for the Cayman Islands
My commission expires January 31, 20 24
Date:

**EXHIBIT A**

**COPIES OF DOCUMENTS SERVED**

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

MICHAEL OSTERER, et al.

)
)
)
)

*Plaintiff(s)*

)
)

v.

)

Civil Action No. 1:23-cv-22083-RAR

BAM TRADING SERVICES INC.,

)
)
)
)
)

*Defendant(s)*

)

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Binance Holdings Limited
by Serving Registered Agent: INTERNATIONAL CORPORATION SERVICES LTD
P.O. Box 472
Harbour Place, 2nd Floor, North Wing
103 South Church Street
George Town
Grand Cayman KY1-1106

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Jeff Ostrow
Kopelowitz Ostrow Ferguson Weiselberg Gilbert
1 W. Las Olas Blvd., Suite 500
Ft. Lauderdale, FL 33301
ostrow@kolawyers.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  Jun 9, 2023



**SUMMONS**

*s/ Ketly Pierre*

Deputy Clerk
U.S. District Courts

Angela E. Noble
Clerk of Court

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO.: _____

MICHAEL OSTERER, individually and on
behalf and all others similarly situated,

      Plaintiff,

v.

BAM TRADING SERVICES INC. d/b/a
BINANCE.US, a Delaware corporation,
and BINANCE HOLDINGS, LTD. d/b/a
BINANCE, a foreign company,

      Defendants.

_____/

### CLASS ACTION COMPLAINT

Plaintiff Michael Osterer ("Plaintiff") brings this class action against Defendants BAM

Trading Services Inc. d/b/a Binance.US ("BAM" or "Binance.US"), and Binance Holdings, Ltd.

d/b/a Binance ("Binance"), and alleges based upon personal knowledge as to himself and his own

acts and experiences, and on information and belief as to all other matters based upon, *inter alia*,

the investigation of counsel, as follows:

### NATURE OF THE ACTION

1.      This is a class action brought by a New York citizen against the Miami, Florida-

headquartered corporation BAM and its alter ego Binance for converting, or in the alternative,

knowingly aiding and abetting the conversion of, Plaintiff's digital assets by not complying with

Know Your Customer ("KYC") and Anti-Money Laundering ("AML") rules, after Plaintiff's

digital assets were stolen and laundered through Binance accounts.  In addition, Defendants

unjustly enriched themselves by collecting significant fees on transactions involving Plaintiff's stolen cryptocurrency.

2.     The action arises from Binance acting as depository for cryptocurrency (digital assets including bitcoin, Ether, Litecoin, and many others) stolen from U.S. citizens in the Class (defined below), including Plaintiff who had at least 7.2 bitcoin ("BTC") and 449 Ether[1] ("ETH") stolen from his cryptocurrency wallet.  Binance's role as a depository is similar to that of a bank, but also different in that the chain-of-title of cryptocurrency is permanently and accurately traceable on the blockchain, which acts as a "ledger."

3.     Plaintiff and Class members bring this lawsuit to recover the value of their stolen cryptocurrency, for compensatory damages, and for restitution and disgorgement of Defendants' ill-gotten gains of fees collected on transactions involving stolen cryptocurrency.

## PARTIES

4.      Plaintiff is an individual citizen of New York who resides in Elmsford, NY.  On or about April 7, 2021, at least 7.2 BTC and 449 ETH was stolen from his Coinbase account.  In the days and weeks after, Binance allowed the stolen bitcoin and Ether to be deposited in Binance accounts in exchange for which Binance earned transactions fees without applying KYC and AML procedures to detect lawful ownership of the cryptocurrency.  At the time of this filing, 7.2 BTC and 449 Ether are together equivalent to about $1,007,261 (USD).

5.     BAM is a Delaware-organized corporation with its current headquarters and principal place of business in Miami, Florida.[2]  It is wholly owned by BAM Management U.S. Holdings Inc., which is 81 percent owned by the founder of Binance, Changpeng Zhao ("CZ").[3]

---

[1] The Ethereum system of cryptocurrency uses units of "Ether."
[2] https://www.binance.us/terms-of-use (last accessed May 15, 2023).
[3] *SEC v. Binance*, Case No. 1:23-cv-01599 (D.D.C.), D.E. 1, Compl. (June 5, 2023) (hereinafter "*SEC Compl.*") ¶¶ 28-29.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

Today, the BAM platform is available in 46 U.S. states, and 8 U.S. territories; is one of the top five crypto asset trading platforms in the United States by trading volume; and as of April 1, 2023, BAM's average 24-hour trading volume was valued at over $282 million.[4]

6.      Binance is a foreign company which, upon information and belief is registered and headquartered with its principal place of business in the Cayman Islands, though it professes to not have a principal executive office.[5]   CZ, who is the beneficial owner of a number of entities subordinate to or affiliated with Binance, in multiple jurisdictions, has been publicly dismissive of "traditional mentalities" about corporate formalities and their attendant regulatory requirements.[6] He claims Binance's headquarters is "wherever [he] sit[s]" and "wherever [he] meet[s] somebody."[7]   According to CZ, the concept of a formal corporate entity with a headquarters and its own bank account is unnecessary: "All of those things doesn't have to exist for blockchain companies."[8]   However, billions of dollars from Binance flowed through dozens of Binance- and CZ-owned U.S.-based bank accounts.[9]

7.      Both Defendants are digital currency wallet and money transmitter services platforms at which merchants and consumers exchange digital currencies like bitcoin and Ether.

8.      Binance was founded in 2017 and allowed customers, including those in the United States, to make risky, highly leveraged bets on cryptocurrency prices that were and are illegal in the United States—currently offering trading in over 350 crypto assets.  At this time, Binance is several times the size of cryptocurrency exchange FTX at its peak, processing tens of billions of

---

[4] *Id.* ¶ 210.
[5] Paddy Baker, *Binance Doesn't Have a Headquarters Because Bitcoin Doesn't, Says CEO,* COINDESK (May 8, 2020), https://www.coindesk.com/binance-doesnt-have-a-headquarters-because-bitcoin-doesnt-says-ceo.
[6] *SEC Compl.* ¶ 27.
[7] *Id*.
[8] *Id*.
[9] *Id*.

dollars in trades each day.[10]  As of April 26, 2023, despite customer withdrawals due to regulatory scrutiny, Binance had an estimated $66.5 billion worth of customer holdings.[11]  "About two-thirds of all crypto trades take place on Binance's platform, according to CCData, a data analysis firm."[12]

9.      Though Binance catered to U.S. customer from its outset, BAM was founded in 2019 purportedly to offer a solution for U.S. customers compliant with U.S. regulations.  However, Binance remains highly popular with U.S. customers, who can access it using technology called a Virtual Private Network ("VPN") that makes it seem like the customer's IP address is associated with another country.  According to the U.S. Commodities Futures Trading Commission in its recently-filed Complaint for Injunctive and Other Equitable Relief and Civil Monetary Penalties Under the Commodity Exchange Act and Commissions Regulations against Binance and related entities ("*CFTC Complaint*"), much of Binance's reported trading volume, and its profitability, has come from its extensive solicitation of and access to customers located in the United States.[13]

10.     At all relevant times, and in connection with the matters alleged herein, Defendants were controlled and majority-owned[14] by the same person—founder CZ, "a Chinese-born Canadian citizen [who] now largely splits his time between Dubai and Paris"[15]—and constitute a single enterprise with unity of interest.  CZ has been an officer and director of BAM and Binance at all relevant times.  Between October 2022 and January 2023, CZ personally received $62.5 million from one of the Binance bank accounts.[16]

---

[10] David Yaffe-Bellany, Emily Flitter & Matthew Goldstein, *Binance Faces Mounting Pressure as U.S. Crypto Crackdown Intensifies*, NEW YORK TIMES, Apr. 26, 2023, https://www.nytimes.com/2023/04/26/technology/binance-crypto-crackdown.html.

[11] *Id.*

[12] *Id.*

[13] *CFTC v. Zhao et al.*, Civil Action No.: 1:23-cv-01887 (N.D. Ill. Mar. 27, 2023), D.E. 1.

[14] Aidan Ryan, *The People with Power at Binance and Binance.US*, THE INFORMATION, Mar. 17, 2023, https://www.theinformation.com/articles/the-people-with-power-at-binance-and-binance-us.

[15] *See supra* n.3.

[16] SEC Compl. ¶ 30.

11. According to the *SEC Compl.*, which regards the sale of unregistered securities on Defendants' platforms, the ownership structure of Defendants, their platforms, and related entities can be visualized as follows:



12. At all relevant times, and in connection with the matters alleged herein, each Defendant acted as an agent, servant, partner, joint venturer, and/or alter ego of the other, and acted in the course and scope of such agency, partnership, and relationship and/or in furtherance of such joint venture. Each Defendant acted with the knowledge and consent of the other Defendant and/or directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of the other Defendants as described herein. Recognition of the privilege of separate existence under such circumstances would promote injustice, as described below.

- 5 -

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## JURISDICTION AND VENUE

13.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because the members of the putative class are of diverse citizenship from Defendants, there are more than 100 members of the putative class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest.

14.    The Court has general personal jurisdiction over BAM because its principal place of business is in Florida.  The Court also has general personal jurisdiction over Binance because, as an alter ego of BAM, it would be inequitable under the circumstances to recognize Binance's existence as a separate entity.

15.    In addition, the Court has specific personal jurisdiction over both Defendants because they: (i) transact business in Florida; (ii) have substantial aggregate contacts with Florida; (iii) engaged in and are engaging in conduct that has and had a direct, substantial, and reasonably foreseeable, and intended effect of causing injury to persons in Florida; and (iv) purposely availed themselves of the laws of Florida.  This Court also has specific personal jurisdiction over Binance for the additional reason that it asserts substantial control over BAM, as described below.

16.    Exercising jurisdiction over Defendants in this forum is reasonable and comports with fair play and substantial justice.

### BAM and Binance are Alter Egos

17.    Plaintiff is informed and believes, based on information available in the public domain, that BAM's and Binance's operations are both controlled entirely by CZ, and the entities' operations and funds are comingled to such an extent that it would be inequitable to recognize their existence as separate entities.

18.     Binance created BAM in 2019 "as a de facto subsidiary in order to draw the scrutiny of U.S. regulators away from the global exchange."[17]

19.     On October 29, 2020, *Forbes* broke the story about BAM's real purpose:

The 2018 document details plans for a yet-unnamed U.S. company dubbed the "Tai Chi entity," in an allusion to the Chinese martial art whose approach is built around the principle of "yield and overcome," or using an opponent's own weight against him. While Binance appears to have gone out of its way to submit to U.S. regulations by establishing a compliant subsidiary, Binance.US, an ulterior motive is now apparent. Unlike its creator Binance, Binance.US, which is open to American investors, does not allow highly leveraged crypto-derivatives trading, which is regulated in the U.S.

The leaked Tai Chi document, a slideshow believed to have been seen by senior Binance executives, is a strategic plan to execute a bait and switch. While the then-unnamed entity set up operations in the United States to distract regulators with feigned interest in compliance, measures would be put in place to move revenue in the form of licensing fees and more to the parent company, Binance. All the while, potential customers would be taught how to evade geographic restrictions while technological work-arounds were put in place.[18]

20.     According to the *CFTC Complaint*, "Binance personnel, including [CZ], have dictated [BAM's] corporate strategy, launch, and early operations. At [CZ's] direction, [BAM's] marketing and branding has mirrored that of Binance.com. [BAM] has licensed Binance's trademarks to advertise in the United States. [BAM] has also relied on one of Binance's matching engines through a software licensing agreement."[19]

21.     It was recently reported that in the first three months of 2021, Binance transferred more than $400 million from BAM to a trading firm managed by CZ (Merit Peak Ltd.), some of

---

[17] Angus Berwick & Tom Wilson, *Exclusive: Crypto giant Biannce moved $400 million from U.S. partner to firm managed by CEO Zhao*, REUTERS, Feb. 16, 2023, https://www.reuters.com/technology/crypto-giant-binance-moved-400-million-us-partner-firm-managed-by-ceo-zhao-2023-02-16/.

[18] Michael del Castillo, *Leaked "Tai Chi" Document Reveals Binance's Scheme to Evade Bitcoin Regulators*, FORBES, Oct. 29, 2020, https://www.forbes.com/sites/michaeldelcastillo/2020/10/29/leaked-tai-chi-document-reveals-binances-elaborate-scheme-to-evade-bitcoin-regulators/?sh=1a6e28472a92.

[19] *CFTC Compl.* ¶ 81.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

which was later sent to the Silvergate Bank account of a Seychelles-incorporated firm called Key Vision Development Limited, which is another entity controlled by CZ:

> The transfers to Merit Peak took place on the bank's proprietary Silvergate Exchange Network (SEN), which Binance.US joined in November 2020 to serve its corporate clients. SEN allows these clients to transfer dollars between their accounts at the bank. Silvergate's investor prospectus says SEN transfers are "push only," which means they must be authorized by the account's controller.[20]

22.     Susan Li, a Binance finance executive, had full access to the BAM account at California-based Silvergate Bank,[21] which in May 2023 shut down operations and liquidated its assets.[22]

23.     On June 5, 2023, *Reuters* reported that Binance executive Guangyin Chen was authorized by Silvergate Bank to operate five bank accounts belonging to BAM: "Employees at the affiliate, [BAM], had to ask Chen's team to process payments, even to cover the firm's payroll, company messages show."[23]

24.     Binance makes clear in the "Binance Terms of Use" that its users must agree to what it considers its fiat gateways, including BAM, to be part of the "ecosystem" that defines "Binance." After expressly defining "Binance" to include "fiat gateways" the Terms of Use also explain that the fiat gateways are part of the services Binance provides:

> **Binance Services** refer to various services provided to you by Binance that are based on Internet and/or blockchain technologies and offered via Binance websites, mobile applications, clients and other forms (including new ones enabled by future technological development). Binance Services include but are not limited to such Binance ecosystem components as Digital Asset Trading Platforms, the financing sector, Binance Labs, Binance Academy, Binance Charity, Binance Info, Binance

---

[20] *Id.*

[21] *Id.*

[22] MacKenzie Sigalos, *Crypto-focused bank Silvergate is shutting operations and liquidating after market meltdown*, CNBC, https://www.cnbc.com/2023/03/08/silvergate-shutting-down-operations-and-liquidating-bank.html (last visited June 5, 2023).

[23] Angus Berwick & Tom Wilson, *Exclusive: Crypto giant Binance controlled "independent" U.S. affiliate's bank accounts*, REUTERS, https://www.reuters.com/technology/crypto-giant-binance-controlled-independent-us-affiliates-bank-accounts-2023-06-05/ (last visited June 5, 2023).

Launchpad, Binance Research, Binance Chain, Binance X, Binance Fiat Gateway, existing services offered by Trust Wallet and novel services to be provided by Binance.[24]

In short, Binance's Terms of Use inform consumers that a "Binance Fiat Gateway"—one of which is BAM—is a service provided by Binance.

25.     The CFTC Complaint elaborates on this strategy:

Binance's corporate organizational chart includes over 120 entities incorporated in numerous jurisdictions around the world. At times, at least certain of those entities, including Binance Holdings, Binance IE, and Binance Services have commingled funds, relied on shared technical infrastructure, and engaged in activities to collectively advertise and promote the Binance brand.

Binance's reliance on a maze of corporate entities to operate the Binance platform is deliberate; it is designed to obscure the ownership, control, and location of the Binance platform . . .

Binance is so effective at obfuscating its location and the identities of its operating companies that it has even confused its own Chief Strategy Officer. For example, in September 2022 he was quoted as saying that "Binance is a Canadian company." The Chief Strategy Officer's statement was quickly corrected by a Binance spokesperson, who clarified that Binance is an "international company."[25]

26.     Binance does not observe corporate formalities.  It has no board of directors but is controlled entirely by CZ.  *See CFTC Compl.* ¶ 103 ("As part of [an] audit, the Binance employee who held the title of Money Laundering Reporting Officer ("MLRO") lamented that she 'need[ed] to write a fake annual MLRO report to Binance board of directors wtf.' [Chief Compliance Officer Samuel] Lim, who was aware that Binance did not have a board of directors, nevertheless assured her, 'yea its fine I can get mgmt. to sign' off on the fake report.").

27.     It is the same individual, CZ, who manages all aspects of both Defendants' operations.  *See, e.g.*, *CFTC Compl.* ¶¶ 85-87 ("Zhao is ultimately responsible for evaluating the

---

[24] https://www.binance.com/en/terms (last visited June 5, 2023).
[25] *CFTC Compl.* ¶¶ 82-84.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

legal and regulatory risks associated with Binance's business activities, including those related to the launch of [BAM].").

28.     CZ micromanages all aspects of Defendants' operations. For example, in January 2021, a month in which Binance earned over $700 million in revenue, CZ personally approved an approximately $60 expense related to office furniture.[26] Moreover, CZ's approval was required for all BAM expenditures over $30,000 through at least January 30, 2020.[27] BAM regularly sought approval from CZ and Binance concerning routine business expenditures including rent, franchise taxes, legal expenses, Amazon Web Services fees to host BAM customer data, and even an $11,000 purchase of Binance-branded hooded sweatshirts.[28]

29.     BAM "employees referred to [CZ's] and Binance's control of [BAM's] operations as 'shackles' that often prevented [BAM] employees from understanding and freely conducting the business of running and operating the Binance.US Platform—so much so that, by November 2020, [BAM's] then-CEO told Binance's CEO that her 'entire team feels like [it had] been duped into being a puppet.'"[29]

30.     The same day the BAM platform was announced, a consultant for Binance provided Binance with internal guidelines advising that: "On the US launch, it is important to NOT link it to the .COM IP blocking [of U.S. investors]. That would suggest both that Binance is aware of previous violation and that BAM and .COM are alter egos of each other coordinating the work."[30]

31.     CZ was involved in the hiring of BAM's first CEO, who reported to and was directed by CZ and the Binance CFO throughout her tenure from June 2019 through about March

---

[26] *Id.* ¶ 85.
[27] *SEC Compl.* ¶ 170.
[28] *Id.*
[29] *Id.* ¶ 7.
[30] *Id.* ¶ 153.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

2021.[31]  She referred to Binance as the "mothership" and provided weekly updates to CZ and Binance concerning BAM's operations.[32]

32.     At least for a significant period of time after BAM launched, Binance held and controlled BAM data offshore, and at least for much of 2021, BAM employees could not obtain certain real-time trading data for the BAM platform without CZ's personal approval.[33]

33.     BAM's second CEO testified to SEC staff that the "level of . . . connection" between Binance and BAM was a "problem" and that he had concluded that BAM "need[ed] to migrate the technology to full [BAM] control."[34]  As of at least BAM's second CEO's resignation in August 2021, no such transfer of control had happened.[35]

34.     Binance required that CZ and/or the Binance Back Office Manager had signatory authority over BAM bank accounts.[36]  Until at least December 2020, the Binance Back Office Manager was a signatory of BAM's bank accounts.[37]  Until at least July 2021, she was also a signatory on BAM Trading Trust Company B accounts that contained BAM customers' fiat deposits.[38]

35.     Binance's finance team managed payment of BAM's expenses, including by executing money transfers between bank accounts and depositing cash injections from Merit Peak when BAM operating funds were low.[39]  Binance's finance team was even able to make substantial

---

[31] *Id.* ¶ 150.
[32] *Id.* ¶ 154.
[33] *Id.* ¶ 158.
[34] *Id.* ¶ 160.
[35] *Id.*
[36] *See id.* ¶¶ 165-69.
[37] *Id*
[38] *Id.*
[39] *Id.* ¶ 171.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

fund transfers without BAM's knowledge, including in June 2020 as to billions of dollars in BAM's own accounts.[40]

36.     In addition, at least through December 2022, Binance was the designated custodian for crypto assets deposited, held, traded, and/or accrued on BAM, and could authorize transfer of crypto assets, including between various omnibus wallets, without then need for any authorization from BAM.[41]

37.     As of May 2023, CZ still had signatory authority over BAM's account that held BAM's customers' funds.[42]

**Defendants Solicit U.S. Citizens and Promote the Use of a VPN for U.S. Citizens to Unlawfully Use Binance**

38.     As of the date of this filing, Binance's largest single market has usually been the United States.

39.     "The monthly [internal] revenue report for September 2020 reflects that 2.51 million customers were located in 'U.S.'"[43]  Starting in October 2020, Binance's internal reports instead identified the bulk of those users (2.38 million) as "UNKNOWN," a category that in the previous month totaled 0.31 million "unknown" users.[44]

40.     Defendants continue to advertise to and solicit customers in the United States and Florida.  According to the CFTC Complaint, Defendants have increasingly relied on personnel and vendors in the United States and actively cultivated lucrative and commercially important "VIP" customers, including institutional customers, located in the United States:

[A]ccording to Binance's own documents for the month of August 2020 the platform earned  $63  million  in  fees  from  derivatives  transactions  and

---

[40] *Id.* ¶ 172.
[41] *Id.* ¶ 175.
[42] *Id.* ¶ 174.
[43] *CFTC Compl.* ¶ 138.
[44] *Id.* ¶¶ 138-39.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

approximately 16% of its accounts were held by customers Binance identified as being located in the United States. By May 2021, Binance's monthly revenue earned from derivatives transactions increased to $1.14 billion. Binance's decision to prioritize commercial success over compliance with U.S. law has been, as Lim paraphrased Zhao's position on the matter, a "biz decision."[45]

41. The CFTC Complaint also states:

Binance has enlisted U.S. residents to act as "Binance Angels" to solicit and interact with U.S. customers. Generally, Binance Angels attempt to recruit new customers to Binance, answer questions from customers and prospective customers, and test new Binance features.[46]

42. In February 2022, Binance launched several celebrity-fueled advertisements during the Super Bowl to solicit accountholders in the United States, including in this jurisdiction.

43. According to a Binance press release:

The global campaign – featuring global superstar and entrepreneur J Balvin, all-star basketball forward Jimmy Butler and mixed martial arts fighter Valentina Shevchenko – focuses on encouraging consumers to do the research and learn crypto themselves, so they can be empowered and accountable for their own financial freedom and success.

On February 13, the day of the Big Game, for every commercial aired during the game with a celebrity "talking crypto", viewers are encouraged to sound Binance's #CryptoCelebAlert at CryptoCelebAlert.com to claim one of 2,222 POAP NFTs featuring Jimmy Butler. More importantly, they can access an easy-to-read crypto primer to better understand the basics of crypto.[47]

44. Jimmy Butler, one of the featured celebrities promoting Binance, has played for the past several seasons for the National Basketball Association's Miami Heat, where he has over 6,500,000 followers on Instagram, more than 2,500,000 followers on Facebook, and more than 800,000 followers on Twitter.

---

[45] *Id.* ¶ 4.
[46] *Id.* ¶ 74.
[47]https://www.binance.com/en/blog/community/binance-unites-j-balvin-jimmy-butler-and-valentina-shevchenko-to-take-on-big-game-crypto-ads-invites-fans-to-sound-the-cryptocelebalert-and-trust-themselves-to-learn-crypto-421499824684903392 (visited June 5, 2023).

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

45. While Binance publicly claims it does not permit United States-based customers to use its services (rather than BAM's services)—something it purports to monitor by tracking the geo-location of the IP Address used by the customer to login to Binance—that supposed barrier is easily overcome through methods of which Binance is well aware and which Binance tacitly permits.

46. To evade geo-location tracking monitors, a customer need only use a VPN that "spoofs" the user's actual location. Instead of marking his or her IP Address with a location in the United States, the Binance user employs a VPN so that Binance's records will reflect that the user is logging in from a non-U.S. territory that is supported by Binance.

47. One such VPN, specifically promoted by Binance, is PureVPN, which describes the simple process thusly:



48. As PureVPN explains, as long as the location the user choose through his/her VPN is a non-U.S. country supported by Binance, the user's log-in to Binance will proceed unfettered:



49.     At least as early as April 2019, Binance published a guide on the "Binance Academy" section of its website called "A Beginner's Guide to VPNs," which hinted that "you might want to use a VPN to unlock sites that are restricted in your country."

50.     It has long been known that Binance has full knowledge that U.S.-based users, including those based within this jurisdiction, utilize VPN services to access Binance despite the existence of BAM.   The *CFTC Complaint* has provided copious evidence this was an *explicit strategy* orchestrated by Binance:

> Binance's corporate communications strategy has attempted to publicly portray that Binance has not targeted the United States at the same time Binance executives acknowledge behind closed doors that the opposite is true. For example, on June 9, 2019, around the time Zhao and Binance hatched their secret plot to retain U.S. customers even after the launch of Binance.US, Binance's Chief Financial Officer stated during a meeting with senior management including Zhao:
>
> > [S]ort of, the messaging, I think would develop it as we go along is rather than saying we're blocking the US, is that we're preparing to

- 15 -

launch Binance US. So, we would never admit it publicly or privately anywhere that we serve US customers in the first place because we don't. So, it just so happens we have a website and people sign up and we have no control over [access by U.S. customers] . . . . [B]ut we will never admit that we openly serve US clients. That's why the PR messaging piece is very, very critical.

Zhao agreed that Binance's "PR messaging" was critical, explaining in a meeting the next day that "we need to, we need to finesse the message a little bit . . . . And the message is never about Binance blocking US users, because our public stance is we never had any US users. So, we never targeted the US. We never had US users." But during the June 9, 2019 meeting, Zhao himself stated that "20% to 30% of our traffic comes from the US," and Binance's "July [2019 Financial] Reporting Package," which was emailed directly to Zhao, attributes approximately 22% of Binance's revenue for June 2019 to U.S. customers.
. . .
In a March 2019 chat, Lim explained to his colleagues that "CZ wants people to have a way to know how to vpn to use [a Binance functionality] . . . it's a biz decision."  And in an April 2019 conversation between Binance's Chief Financial Officer and Lim regarding Zhao's reaction to controls that purported to block customers attempting to access Binance from U.S.-based IP addresses, Lim said: "We are actually pretty explicit about [encouraged VPN use] already – even got a fking guide. Hence CZ is ok with blocking even usa."[48]

51.     As the Binance COO explained, "[o]n the surface we cannot be seen to have U.S. users but in reality we should get them through other creative means."[49]

52.     In short, Defendants use the superficially separate corporate form of BAM to foster the appearance of compliance with U.S. regulations, all the while encouraging U.S. citizens' stealth use of the unregulated Binance via VPNs. Thus, this Court has general jurisdiction over Binance.

53.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because BAM resides in this District, and Binance as a foreign entity may be sued in any judicial district.  *See id.* § 1391(c)(3).

---

[48] *CFTC Compl.* ¶¶ 107, 118.
[49] *Id.* ¶ 120.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## GENERAL FACTUAL ALLEGATIONS

### Binance Profits from Intentionally Nonexistent or Inadequate KYC and AML Protocols

54.     Since its founding, Binance has grown at an enormous rate.  In October 2019, a cryptocurrency industry publication reported Binance had crossed the $1 billion profit threshold. In 2022, Binance's revenue was approximately $12 billion, a ten-times growth over the preceding two years.[50]

55.     Binance's profits are derived in largest part[51] from the fees Binance receives for transactions on the Binance exchange, including trades in which stolen cryptocurrency is exchanged for other cryptocurrency or fiat currency, and in part from the frequency and volume of trading that helps enhance and maintain the liquidity that is essential to an efficient and profitable exchange.  In other words, Binance has a strong monetary incentive to encourage, facilitate, and allow as many transactions on its exchange as possible—even transactions involving stolen cryptocurrency.

56.     Binance has turned a blind eye to the wide variety of money and cryptocurrency laundering from around the globe it knowingly facilitates through its platform.  For example:

> Lim's instruction to allow a customer "very closely associated with illicit activity" to open a new account and continue trading on the platform is consistent with Zhao's business strategy, which has counseled against off-boarding customers even if they presented regulatory risk. For example, in a September 2020 chat Lim explained to Binance employees that they
>
> > Don't need to be so strict.
> > Offboarding = bad in cz's eyes[52]

---

[50] https://www.binance.com/en/feed/post/157884 (last visited June 5, 2023).
[51] *CFTC Compl*. ¶ 45 ("In a December 2022 interview, Zhao estimated that transaction revenue accounts for approximately 90 percent of Binance's revenue.").
[52] *Id.* ¶ 104.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

57.     Numerous public reports have identified Binance as perhaps the largest vehicle in the world through which cryptocurrency assets are laundered, including cryptocurrency stolen from U.S. citizens:

> Binance Holdings Ltd. is under investigation by the [United States] Justice Department and Internal Revenue Service, ensnaring the world's biggest cryptocurrency exchange in U.S. efforts to root out illicit activity that's thrived in the red-hot but mostly unregulated market.
>
> The firm, like the industry it operates in, has succeeded largely outside the scope of government oversight. Binance is incorporated in the Cayman Islands and has an office in Singapore but says it lacks a single corporate headquarters. Chainalysis Inc., a blockchain forensics firm whose clients include U.S. federal agencies, concluded last year that among transactions that it examined, more funds tied to criminal activity flowed through Binance than any other crypto exchange.[53]

58.     Despite being one of the world's largest cryptocurrency exchanges, Binance's KYC and AML protocols—during the relevant time period—were shockingly nonexistent or inadequate and did not measure up to industry standards.  Thieves laundered stolen cryptocurrency through Binance because Binance failed to implement security measures that would confirm its accountholders lawfully possessed the cryptocurrency deposited in Binance accounts, including the ones in which Plaintiff's stolen cryptocurrency was deposited.

59.     During the relevant time period, and continuing to date, Binance has facilitated money laundering by allowing deposits and withdrawals of up to 2 bitcoin per day though the Binance.com exchange *without any form of identification verification*.  In July 2019, 2 bitcoin were valued at more than $22,000 and in March 2021 more than $100,000.

60.     To launder stolen cryptocurrency, a person creates an account by accessing the Binance website.  To trade or withdaw up to 2 bitcoin per day, the accountholder need not provide

---

[53] *Binance Faces Probe by U.S. Money-Laundering and Tax Sleuths*, BLOOMBERG, May 13, 2021, https://www.bloomberg.com/news/articles/2021-05-13/binance-probed-by-u-s-as-money-laundering-tax-sleuths-bore-in.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

even the most basic identifying information, such as name, date of birth, address, or other personal identifiers, or an attestation that the cryptocurrency initially or subsequently deposited is lawfully possessed. All Binance requires is a password and an email address.

61.     Unlike legitimate virtual currency exchanges, Binance does not require these users to validate their identity information by providing official identification documents, given that Binance does not require an identity at all. Accounts are therefore easily opened anonymously, including by users in the United States within Florida.

62.     According to the *CFTC Complaint*:

In February 2019, Lim chatted to Zhao: "a huge number" of Binance's "TIER 1 [meaning customers trading via the two BTC-no KYC loophole] could be U.S. citizens in reality. They have to get smarter and VPN through non-U.S. IP." And Zhao stated during a management meeting in June 2019 that the "under 2 BTC users is [sic] a very large portion of our volume, so we don't want to lose that," although he also understood that due to "very clear precedents," Binance's policy of allowing "those two BTCs without KYC, this is definitely not possible in the United States."

63.     Moreover, further obscuring the source of customer cryptocurrency, *Reuters* recently reported that Binance lacks internal controls to ensure that customer funds are identifiable and segregated from company revenues, and therefore regularly comingles customer assets with its own.[54]

64.     As of May 2022, Binance had not filed a single Suspicious Activity Report ("SAR") in the United States, despite having filed them in other jurisdictions.

65.     During the relevant time period, Binance's practices encouraged cryptocurrency hackers and thieves to steal cryptocurrency and launder it at Binance by breaking the

---

[54] *Crypto giant Binance commingled customer funds and company revenue, former insiders say*, CNBC, May 23, 2023, https://www.cnbc.com/2023/05/23/crypto-giant-binance-commingled-customer-funds-and-company-revenue-former-insiders-say.html.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

cryptocurrency into amounts of 2 bitcoin or less, depositing it at Binance, converting the illegally-obtained asset, and withdrawing it from Binance — all without providing identification.

66.     Defendants had actual knowledge that their KYC and AML policies were inadequate and knowingly kept them in place to drive revenue and profit.   From the *CFTC Complaint*:

> In a January 2019 chat between Lim and a senior member of the compliance team discussing their plan to "clean up" the presence of U.S. customers on Binance, Lim explained: "Cz doesn't wanna do us kyc on .com." And Lim acknowledged in February 2020 that Binance had a financial incentive to avoid subjecting customers to meaningful KYC procedures, as Zhao believed that if Binance's compliance controls were "too stringent" then "[n]o users will come."[55]

67.     In addition, in an October 2020 chat between Lim and a Binance colleague, Lim explained:

> [Because you attended a telephone conference on which CZ participated] then you will also know that as a company, we are probably not going to remove no kyc (email registration) because its too painful . . . i think cz understands that there is risk in doing so, but I believe this is something which concerns our firm and its survivability. If Binance forces mandatory KYC, then [competing digital asset exchanges] will be VERY VERY happy.[56]

68.     Internally, Binance officers, employees, and agents have acknowledged that Binance has facilitated illegal activities.   For example, in February 2019, after receiving information "regarding HAMAS transactions" on Binance, Lim explained to a colleague that terrorists usually send "small sums" as "large sums constitute money laundering." Lim's colleague replied: "can barely buy an AK47 with 600 bucks."[57] And referring to certain Binance customers, including customers from Russia, Lim acknowledged in a February 2020 chat: "Like come on.

---

[55] *CFTC Compl.* ¶ 100.
[56] *Id.* ¶ 96.
[57] *Id.* ¶ 104.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

They are here for crime."  Binance's Money Laundering Reporting Officer agreed that "we see the bad, but we close 2 eyes."[58]

69.     Lim has displayed a nuanced understanding of applicable regulatory requirements and the potential individual liability that may accompany a failure to comply with U.S. law.  For example, in October 2020 Lim chatted to a colleague:

> US users = CFTC = civil case can pay fine and settle
> no kyc = BSA act [sic] = criminal case have to go [to] jail[59]

70.     CZ has at all times been aware of U.S. laws that apply to Binance's activities.  For example, CZ stated during a June 9, 2019 management meeting:

> [T]here are a bunch of laws in the U.S. that prevent Americans from having any kind of transaction with any terrorist, and then in order to achieve that, if you serve U.S. or U.S. sanctioned countries there are about 28 sanctioned countries in the U.S. you would need to submit all relevant documents for review [but that is not] very suitable for our company structure to do so. So, we don't want to do that and it is very simple if you don't want to do that: you can't have American users. Honestly it is not reasonable for the U.S. to do this.
> . . . .
> [U.S. regulators] can't make a special case for us. We are already doing a lot of things that are obviously not in line with the United States.[60]

71.     CZ has kept information reflecting Binance.US's customer base secret even from certain senior managers and has been cautious in circulating internal materials to a broad audience. In a March 2019 discussion regarding the circulation of data that categorized Binance users by geographic location, CZ said, "Let me see it first then, and not distribute it, especially guys who have to deal with U.S. regulators."[61]  And in an August 2020 chat, CZ instructed a Binance

---

[58] *Id.*
[59] *Id.* ¶ 112.
[60] *Id.* ¶ 113.
[61] *Id.* ¶ 114.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

employee that transaction volume data concerning U.S. [Application Program Interface] customers should not be published to a group; rather, such data should be sent only to CZ.[62]

72.     Binance had actual knowledge that cryptocurrency stolen from Plaintiff had been transferred to addresses and accounts on Binance's exchange.

73.     Binance had the ability to freeze those accounts and stop transactions on its exchange involving the stolen cryptocurrency.  Binance could have done so before some or all of the stolen cryptocurrency left the Binance exchange, but failed to do so.

74.     To the extent Plaintiff's stolen assets are no longer at Binance, Binance failed to interrupt the money laundering process when it could have done so.

75.     Binance's intentional or knowing failings were all for the purpose of earning Binance transaction fees to the detriment of Plaintiff and other Class members.

**Plaintiff's Experience**

76.     At times material hereto, Plaintiff maintained an account at U.S.-based cryptocurrency exchange Coinbase, in which he deposited cryptocurrency including bitcoin and Ether.

77.     On or about April 7, 2021, an unauthorized person(s) infiltrated Plaintiff's Coinbase account and stole approximately 8.06 BTC and 449 ETH from Plaintiff.

78.     The 8.06 BTC were transferred to a High Risk wallet (ICGMU9***) which is known in the cryptocurrency industry to been maintained by suspected criminals or dark web users beyond KYC or AML standard protocols and which has been marked for its potential or likely illicit activity as a "high risk address."

---

[62] *Id.*

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

79.     From that known high risk wallet, the assets stolen from Plaintiff were then deposited into three Binance deposit addresses. The following is a graphic representation of the path of those stolen assets, with the three Binance recipient addresses denoted in red:



80.     Similarly, the 449 ETH stolen from Plaintiff were commingled with other stolen assets and—within a few short, readily traceable steps—were deposited into Binance addresses as well (also denoted in red):

- 23 -

SILVER MILLER
4450 NW 126th Avenue - Suite 101 • Coral Springs, Florida 33065 • Telephone (954) 516-6000
www.SilverMillerLaw.com



81. The ~7.2 BTC transferred from Plaintiff's Coinbase account were placed into three Binance deposit addresses (each of the three Binance addresses with Bitcoin are listed in the second column below entitled "Destination Address"), and the ~449 ETH transferred from Plaintiff's Coinbase account were placed into two Binance deposit addresses (addresses listed in the "Destination Address" column of the second table below) (the "Binance Addresses"):

| Owner name (Destination Address) | Destination Address | Cryptocurrency Unit | Transaction Hash | Transaction Date (UTC) | Assets Traced |
|---|---|---|---|---|---|
| Binance | *1CuK7WJzhMFKjMbaAjGdr9AS8yPyLKCWKV* | BTC | 99cff9ebc3ba9df19e4eadc72021684976573b0288ff1c5f0f17d18b52c319a6 | 2021-04-19 01:48:57 | 0.99118689 |
| Binance | *1CuK7WJzhMFKjMbaAjGdr9AS8yPyLKCWKV* | BTC | 4ad15110f932f1ab2d9e4ac1ffc7a16998ec62dc99adb34e8444581d447b8f58 | 2021-04-20 22:22:07 | 0.99120653 |
| Binance | *1CuK7WJzhMFKjMbaAjGdr9AS8yPyLKCWKV* | BTC | 5aac10367738095ba1504a67e4f3158ac0e97d37dd105fd542956fd55551ed3c | 2021-04-20 22:22:07 | 0.24782794 |
| Binance | *1CuK7WJzhMFKjMbaAjGdr9AS8yPyLKCWKV* | BTC | 677ba3b35784f43a0720cb8262738a936d85770b9477f7f10688ca0640d35ed8 | 2021-04-21 00:47:31 | 1.58496257 |

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

| Binance | 1DWGELgbxLbUx4hnQ6xHZ5vf9PWdrbDG3d | BTC | c26be788548d43f39015bdf1b14920cd66b133df8dfb7455f55c420d615f5db4 | 2021-04-08 11:01:10 | 0.47896794 |
| Binance | 1DWGELgbxLbUx4hnQ6xHZ5vf9PWdrbDG3d | BTC | e4aacf5d44460dd49fdfddb6c61d441b1be1d74b6ea78ea4cf150b7eaf7725ed0 | 2021-04-09 09:22:38 | 0.95446480 |
| Binance | 1HNpJxeuDAFKdiuwP4nM4Kiy2qDLBsfvwW | BTC | 0b6796cdc14ad86c4f71d2a6071b696810c0ea0c388955be0387de246145208a | 2021-04-27 09:45:14 | 1.96331746 |

| Owner name (Destination Address) | Destination Address | Cryptocurrency Unit | Transaction Hash | Transaction Date (UTC) | Assets Traced |
|---|---|---|---|---|---|
| Binance | *464dbcfb2c0c19a69f256f6939bf0f7ec431029b* | ETH | bac5a2eea5c01d43231021027588d172fb747639300c50ae5f93f33cb660f884 | 2021-04-20 10:48:41 | 0.56377600 |
| Binance | *464dbcfb2c0c19a69f256f6939bf0f7ec431029b* | ETH | 7e423a5666009ef152a203aae0035cd0bbe28b234d41dc84ccac45a4a5c3da41 | 2021-04-22 20:59:13 | 37.04301406 |
| Binance | *464dbcfb2c0c19a69f256f6939bf0f7ec431029b* | ETH | 03d9e21ba7c7b936e3a221b85961d5218384326b96571b8bb4f52c47f7b4db6a | 2021-04-22 21:04:15 | 181.18346081 |
| Binance | *fa83a2caaee8f9999eef09bb8072a4c665f543e5* | ETH | a491efc7f124f441e6cb29844abae976607a8e4bd5fbb09f036f0aac556b13ba | 2021-04-27 09:50:20 | 96.16559617 |
| Binance | *fa83a2caaee8f9999eef09bb8072a4c665f543e5* | ETH | 38148d296463bc8e8b677caa092a8533e739ec5eaabe4d763c8087b3068740a1 | 2021-04-27 10:03:05 | 96.35504905 |
| Binance | *fa83a2caaee8f9999eef09bb8072a4c665f543e5* | ETH | 5618b6ec5f7d5aec0fe86c910b62a7756e6f00f80373d6be589eb8bc6d58c39b | 2021-05-03 06:47:13 | 37.99143571 |

82.     All the transfers of Plaintiff's BTC to Binance were within Binance's 2 BTC limit under which no form of identification was required to deposit cryptocurrency.

83.     As of the date of this Complaint, the approximately 7.2 BTC and 449 ETH are together valued equivalent to about $1,007,261 (USD).

84.     As a direct and proximate result of Binance's policies and failures, Plaintiff and Class members suffered financial harm when their digital assets were stolen and laundered through Binance.

- 25 -

## CLASS ALLEGATIONS

85.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23 individually and on behalf of the following Class:

> All persons or entities in the United States within the applicable statute of limitations period through class certification who had their stolen cryptocurrency deposited in a Binance account.

86.     Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers, and directors, all persons who make a timely election to be excluded from the Class, the judge to whom this case is assigned and any immediate family members thereof, and the attorneys who enter their appearance in this action.

87.     **Numerosity:**  The class members are so numerous that individual joinder of all class members is impracticable.  Upon information and belief, the Class includes thousands of persons or entities.  The precise number of class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendants.

88.     **Commonality:**  There are numerous questions of law and fact common to the Class, including but not limited to:

a.      Whether Binance knowingly had no KYC and AML policies or maintained inadequate KYC and AML policies;

b.      Whether Binance failed to verify the identity of its depositors in a way likely to cause injury to Plaintiff and Class members;

c.      Whether Defendants converted Plaintiff's and Class members' cryptocurrency;

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

      d.      Whether Defendants aided and abetted the conversion of cryptocurrency lawfully possessed by Plaintiff and Class members.

      e.      Whether Class members suffered damages because of Defendants' conduct; and

      f.      Whether Defendants were unjustly enriched through transactions involving cryptocurrency lawfully possessed by Plaintiff and Class members.

89.    **Typicality:**  Plaintiff's claims are typical of the claims of the class members, as they are all based on the same factual and legal theories.

90.    **Adequacy of Representation:**  Plaintiff is a representative who will fully and adequately assert and protect the interests of the class and has retained competent counsel.

91.    **Predominance:**  Common questions of law and fact predominate over any questions affecting only individual Class members.  Similar or identical violations, business practices, and injuries are involved.  Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

92.    **Superiority:**  In this lawsuit, a class action is superior to all other available methods for its fair and efficient adjudication because individual litigation of the claims of all class members is economically infeasible and procedurally impracticable.  This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

## CAUSES OF ACTION

### COUNT I
### Conversion

93.     Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 through 92 above.

94.     At the time of the theft on or about April 7, 2021, Plaintiff owned and had the right to immediately possess the ~7.2 BTC and ~449 ETH, not just a mere right to payment for the value of that cryptocurrency.

95.     Class members also owned and had the right to immediately possess their stolen cryptocurrency that was later deposited into Binance addresses without their permission.

96.     As can be done with Plaintiff's specific, identifiable cryptocurrency, Class members' cryptocurrency assets at issue are specific, identifiable property and can be traced to and from Binance accounts.

97.     At all relevant times, Defendants had actual or constructive knowledge that cryptocurrency stolen from Plaintiff and Class members had been transferred to accounts on Binance's exchange.

98.     Notwithstanding the knowledge of the custody of stolen assets in a Binance account, Binance accepted the benefit of exchanging Plaintiff's and Class members' cryptocurrency for other cryptocurrency, thereby converting Plaintiff and Class members' cryptocurrency.

99.     Defendants ignored their own internal policies and procedures and knowingly maintained inadequate KYC and AML policies which enabled cryptocurrency hackers and thieves to launder cryptocurrency through the Binance ecosystem without providing valid or sufficient personal identification and proof of lawful possession of the cryptocurrency.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

100.    Defendants knew Binance KYC and AML policies and procedures, including any tracing analysis of where funds originated, were nonexistent or inadequate.  Nevertheless, those inadequacies were ignored, and no effort was taken to utilize reasonable measures to remedy those dangerous shortcomings.

101.    As a result of the knowingly inadequate KYC and AML policies, Defendants were able to retain possession of stolen cryptocurrency, collect significant transaction fees, and drive revenue and profits by furthering their image as promoters of anonymous and unregulated financial transactions, attracting fraudsters and other transacting parties seeking to evade scrutiny.

102.    Plaintiff and Class members are entitled to the value of their stolen cryptocurrency placed in Binance addresses and an amount of damages to be proven at trial, plus interest.

## COUNT II
## Aiding and Abetting Conversion

103.    Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 through 92 above.

104.    At the time of the theft on or about April 7, 2021, Plaintiff owned and had the right to immediately possess the ~7.2 BTC and ~449 ETH, not just a mere right to payment for the value of that cryptocurrency.

105.    Class members also owned and had the right to immediately possess their stolen cryptocurrency that was later deposited into Binance addresses without their permission.

106.    As can be done with Plaintiff's specific, identifiable cryptocurrency, Class members' cryptocurrency assets at issue are specific, identifiable property and can be traced to and from Binance accounts.

107.    At all relevant times, Defendants had actual knowledge that cryptocurrency stolen from Plaintiff and Class members had been transferred to accounts on Binance's exchange.

**SILVER MILLER**
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

108.    Notwithstanding the actual knowledge of the custody of stolen assets in a Binance address, Binance did not halt the further movement of that stolen property, which allowed a thief to abscond with, and convert to their own benefit, Plaintiff's and other Class members' property. Instead, Binance enabled thieves to complete the conversion of cryptocurrency assets.

109.    Defendants rendered knowing and substantial assistance to cryptocurrency thieves in their commission of conversion through which they obtained Plaintiff's and other Class members' cryptocurrency, such that they culpably participated in the conversion.

110.    Defendants ignored their own internal policies and procedures and knowingly maintained inadequate KYC and AML policies which enable cryptocurrency hackers and thieves to launder cryptocurrency through the Binance ecosystem without providing valid or sufficient personal identification and proof of lawful possession of the cryptocurrency.

111.    Defendants knew that the Binance KYC and AML policies and procedures, including any tracing analysis of where funds originated, were nonexistent or inadequate. Nevertheless, they ignored those inadequacies and made no effort to utilize reasonable measures to remedy those dangerous shortcomings.  This amounts to "driving the getaway car" for the cryptocurrency thieves with full awareness of the harm being committed.

112.    As a result of the knowingly inadequate KYC and AML policies, Defendants were able to collect significant transaction fees and drive revenue and profits by furthering their image as promoters of anonymous and unregulated financial transactions, attracting fraudsters and other transacting parties seeking to evade scrutiny.

113.    In effect, Defendants were consciously participating in the conversion of Plaintiff's and Class members' cryptocurrency to drive their revenue and profits, such that their assistance in the conversion was pervasive, systemic, and culpable.

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

114.    Plaintiff and Class members are entitled to the value of their stolen cryptocurrency and an amount of damages to be proven at trial, plus interest.

### COUNT III
### Unjust Enrichment

115.    Plaintiff re-alleges, and adopts by reference herein, Paragraphs 1 through 92 above.

116.    As a result of the stolen cryptocurrency laundered through Binance accounts, Defendants were able to collect significant transaction fees, and drive revenue and profits by furthering their image as promoters of anonymous and unregulated financial transactions, attracting fraudsters and other transacting parties seeking to evade scrutiny.

117.    Plaintiff and Class members conferred benefits upon Defendants in the form of the transaction fees for their cryptocurrency.

118.    It would be inequitable for Defendants to retain those benefits, including profits derived from those benefits.

119.    Defendants should reimburse Plaintiff and Class members for the inequitable retention of the transaction fees, and disgorge their ill-gotten gains into a fund for the benefit of the Class.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully prays for relief as follows:

(a) Declaring that this action is properly maintainable as a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

(b) Declaring that Defendants' actions, as set forth above, converted Plaintiff and Class members' cryptocurrency, or alternatively, aided and abetted conversion of that cryptocurrency, where they knowingly failed to follow KYC or AML policies;

SILVER MILLER
4450 NW 126th Avenue · Suite 101 · Coral Springs, Florida 33065 · Telephone (954) 516-6000
www.SilverMillerLaw.com

(c) Declaring that Defendants were unjustly enriched by their collection of transaction fees on Plaintiff and Class members' stolen cryptocurrency;

(d) Awarding Plaintiff and the Class actual and compensatory damages as allowed by applicable law;

(e) Awarding Plaintiff and the Class restitution and disgorgement of Defendants' ill-gotten gains;

(f) Awarding pre-judgment and post-judgment interest; and

(g) Granting such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and the putative class members hereby demand a trial by jury, pursuant to Fed. R. Civ. P. 38(b), on all issues so triable.

Dated: June 5, 2023.

Respectfully submitted,

*/s/ Jeff Ostrow*
Jeff Ostrow, Esq.
Florida Bar No.: 121452
**KOPELOWITZ OSTROW FERGUSON
WEISELBERG GILBERT**
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
ostrow@kolawyers.com

David C. Silver, Esq.
Florida Bar No.: 572764
**SILVER MILLER**
4450 NW 126th Avenue, Suite 101
Coral Springs, Florida 33065
Telephone: (954) 516-6000
DSilver@SilverMillerLaw.com

*Counsel for Plaintiff and the Putative Class*

EXHIBIT B

**CAYMAN ISLANDS CORPORATE REGISTRY SEARCH REPORT FOR**

**BINANCE HOLDINGS LTD.**



**CAYMAN ISLANDS**

# Search Report

---

| | |
|---|---|
| **Entity Name :** | Binance Holdings Limited |
| **Jurisdiction :** | Cayman Islands |
| **Registration Number :** | 326889 |
| **Registration Date :** | 12 September 2017 |
| **Entity Type :** | EXEMPT |
| **Registered Office :** | INTERNATIONAL CORPORATION SERVICES LTD |
| | P. O. Box 472 |
| | Harbour Place, 2nd Floor, North Wing, |
| | 103 South Church Street, |
| | George Town |
| | GRAND CAYMAN     KY1-1106 |
| | CAYMAN ISLANDS |
| **Status :** | ACTIVE |

---

-   INFORMATION REGARDING THE CORPORATE RECORDS AND REGISTERS ARE
    NOT AVAILABLE FOR PUBLIC INSPECTION

-   THIS REPORT DOES NOT CONFIRM THE ENTITY IS IN GOOD STANDING

Authorisation Code : 472902596429
www.verify.gov.ky
07 June 2023

**EXHIBIT C**

**BROADHURST LLC'S COVER LETTER**

**SIGNED BY Ann-Marie Wight**





9 June 2023

**BY HAND**

**Binance Holdings Ltd.**
c/o International Corporation Services Ltd
Harbour Place, 2nd Floor, North Wing
103 South Church Street
George Town
Grand Cayman
Cayman Islands

Dear Sirs,

**RE:   Michael Osterer, et al. v BAM Trading Services Inc.**

We have been instructed with respect to the service of the following documents upon Binance Holdings Ltd. and as such please find enclosed by way of service the following documents:

1.   Summons, dated 9 June 2023; and
2.   Class Action Complaint dated 5 June 2023.

We would be grateful if you would confirm personal receipt of these documents by executing this letter appended hereto.

Sincerely,

*Broadhurst*

**BROADHURST LLC**

*encl.*

**RECEIVED**

JUN 0 8 2023

2.38PM

TRAVERS THORP ALBERGA
ATTORNEYS-AT-LAW