**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 1:23-cv-22083-RUIZ/Sanchez**

MICHAEL OSTERER,

     *Plaintiff,*

v.

BAM TRADING SERVICES, INC. *et al*.,

     *Defendants.*

_____/

**DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS**
**PLAINTIFF'S COMPLAINT AND CLASS ACTION ALLEGATIONS**

Dated: July 21, 2023

By: *Aaron S. Weiss*
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
Telephone: 305-530-0050

Christopher N. LaVigne (pro hac vice)
christopher.lavigne@withersworldwide.com
Withers Bergman LLP
430 Park Avenue, 10th Fl.
New York, New York 10022
Telephone: 212-848-9800

*Counsel for Defendant Binance Holdings,*
*LTD. d/b/a Binance*

By: *Adam M. Foslid*
Adam M. Foslid (FBN 682284)
Email: afoslid@winston.com
Winston & Strawn LLP
200 S. Biscayne Blvd., Ste. 2400
Miami, Florida 33131
Telephone: 305-910-0646

*Counsel for Defendant BAM Trading*
*Services Inc. d/b/a Binance.US*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ....................................................................................................1

II.   BACKGROUND ....................................................................................................4

  A.   Plaintiff Alleges an Unidentified Hacker Stole Digital Assets From Plaintiff's Coinbase Account and Traded Them on Binance's Exchange ..............4

  B.   Plaintiff Alleges Binance – Not BAM – Should Have Stopped the Hacker From Withdrawing the Alleged Stolen Funds and Should Not Have Collected Fees Based on the Hacker's Transactions ................................................5

  C.   Defendants Are Separate Legal Entities That Provide Cryptocurrency Exchange Services to Different Markets ................................................................6

  D.   Before Users Are Able to Use Binance's Services, They Agree to Be Bound by Binance's Terms ..............................................................................................7

    1.   Binance's Terms Authorize Binance to Freeze Customer Assets and Collect Transaction Fees ............................................................................7

    2.   The Terms Include Binding Arbitration and Class Action Waiver Provisions....................................................................................................8

III.  ARGUMENT ..........................................................................................................9

  A.   The Complaint Should Not Proceed in This Court Because the Claims Are Subject to Mandatory Binding Arbitration ..........................................................9

    1.   Governing Law Compels Arbitration Here................................................10

      a.   The Terms Constitute a Valid Clickwrap Agreement...................11

      b.   Plaintiff Is Bound by the Terms' Arbitration Provision Under the Doctrine of Equitable Estoppel .....................................11

      c.   An Arbitral Issue Exists Because Plaintiff's Claims Fall Within the All-Encompassing Arbitration Provision....................15

      d.   BAM May Invoke the Arbitration Provision to Compel Plaintiff to Arbitrate ....................................................................17

  B.   Plaintiff Has Not Satisfied His Burden of Establishing Personal Jurisdiction Over Binance ........................................................................................................18

    1.   There is No General Jurisdiction Over Binance Because It Is Not at Home in Florida ........................................................................................19

    2.   There Is No Specific Jurisdiction Because the Controversy Does Not Arise Out of Binance's Contacts in Florida..............................................20

    3.   Plaintiff Has Not Carried the "Very Heavy Burden" of Establishing That Binance and BAM Are Alter Egos ..................................................24

    C.      Plaintiff's Complaint Should Be Dismissed Because It Fails to State a Claim ...................................................................................................................26

          1.      Under Florida's Choice of Law Rules, Plaintiff's Claims Are Subject to New York Substantive Law ....................................26

          2.      Plaintiff Fails to State a Claim for Conversion ...........................27

          3.      Plaintiff Fails to State a Claim for Aiding and Abetting Conversion ........30

          4.      Plaintiff Fails to State a Claim for Unjust Enrichment ...........................32

          5.      Plaintiff Fails to State a Claim Against BAM Because There Are No Independent Allegations of Wrongdoing by BAM ...................................34

    D.      The Class Allegations Should Be Dismissed Because the Complaint Does Not Plausibly Allege the Required Elements to Proceed As a Class Action .........35

IV.    CONCLUSION ...................................................................................................37

V.    REQUEST FOR HEARING ...............................................................................38

VI.    S.D. FLA. L.R. 7.1(A)(3) CERTIFICATION ...................................................38

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adkins v. Morgan Stanley*,
    307 F.R.D. 119 (S.D.N.Y. 2015) ...........................................................................................35

*AIM Recycling Fla., LLC v. Metals USA, Inc.*,
    2019 WL 1991946 (S.D. Fla. Mar. 4, 2019)..........................................................................33

*Anwar v. Fairfield Greenwich Ltd.*,
    728 F. Supp. 2d 372 (S.D.N.Y. 2010)....................................................................................30

*Aramony v. United Way of Am.*,
    949 F. Supp. 1080 (S.D.N.Y. 1996)........................................................................................29

*Argos Global Partner Services, LLC v. Ciuchini*,
    446 F. Supp. 3d 1073 (S.D. Fla. 2020) ..................................................................................21

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009).................................................................................................................11

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986).................................................................................................................15

*Attix v. Carrington Mortg. Servs., LLC*,
    35 F.4th 1284 (11th Cir. 2022) .................................................................................10, 15, 16

*Ayala-Rodriguez v. Falic Fashion Grp. LLC*,
    2019 WL 13216292 (S.D. Fla. Mar. 6, 2019).........................................................................16

*Babcock v. Neutron Holdings, Inc.*,
    454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020) ..........................................................................9

*Bailey v. ERG Enterprises, LP*,
    705 F.3d 1311 (11th Cir. 2013) ..........................................................................................3, 14

*Bandyopadhyay v. Defendant 1*,
    2023 WL 2263552 (S.D. Fla. Feb. 28, 2023) .............................................................26, 27, 29

*Bentley v. Control Grp. Media Co., Inc.*,
    2020 WL 3639660 (S.D. Cal. July 6, 2020) ...........................................................................14

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)...............................................................................30, 32

*Bernsley v. Advance Group*,
2022 WL 2915741 (S.D. Fla. July 24, 2022)....................................................................19, 23

*Blinco v. Green Tree Servicing LLC*,
400 F.3d 1308 (11th Cir. 2005) ............................................................................2, 13, 14

*Brown v. Electrolux Home Prods.*,
817 F.3d 1225 (11th Cir. 2016) ........................................................................................35

*Brown v. Evans*,
2016 WL 69629 (N.D. Ill. Jan. 6, 2016) ..........................................................................21

*Brown v. ITT Consumer Fin. Corp.*,
211 F.3d 1217 (11th Cir. 2000) .................................................................................16, 17

*Cabrera-Morales v. UBS Tr. Co. of Puerto Rico*,
769 F. Supp. 2d 67 (D.P.R. 2011).....................................................................................12

*Caporicci U.S.A. Corp. v. Prada S.p.A.*,
2018 WL 2264194 (S.D. Fla. May 7, 2018) .....................................................................18

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
490 F. Supp. 2d 536 (S.D.N.Y. 2007)...............................................................................32

*Commodity Futures Trading Commission v. Binance Holdings Limited, et al.*,
1:23-cv-01887 (N.D. Ill) ...................................................................................................31

*Coughlan v. Jachney*,
473 F. Supp. 3d 166 (E.D.N.Y. 2020) ........................................................................29, 36

*Cox v. Am. Cast Iron Pipe Co.*,
784 F.2d 1546 (11th Cir. 1986) ........................................................................................35

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)...........................................................................................................19

*Day v. Taylor*,
400 F.3d 1272 (11th Cir. 2005) ..........................................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)...........................................................................................................10

*Del Puerto Water Dist. v. U.S. Bureau of Reclamation*,
271 F. Supp. 2d 1224 (E.D. Cal. 2003)..............................................................................21

*Env't Prot. Comm'n of Hillsborough Cnty., Fla. v. Mercedes-Benz USA, LLC*,
2022 WL 4355666 (M.D. Fla. Sept. 20, 2022) ............................................................21, 25

*Flextronics Int'l USA, Inc. v. Murata Mfg. Co., Ltd.*,
    2020 WL 5106851 (N.D. Cal. Aug. 31, 2020) ........................................................16

*Fraser v. Smith*,
    594 F.3d 842 (11th Cir. 2010) ...............................................................................19

*Frida Kahlo Corp. v. Pinedo*,
    2021 WL 4147876 (S.D. Fla. Sept. 13, 2021) .......................................................23

*Frybarger v. Salemme*,
    2022 WL 18530012 (S.D. Fla. Dec. 28, 2022) .....................................................24

*Gadasalli v. Bulasa*,
    2023 WL 3586424 (E.D. Tex. May 22, 2023).............................................3, 26, 35

*Gibson v. BTS North, Inc.*,
    2018 WL 888872 (S.D. Fla. Feb. 14, 2018) .........................................................28

*Green Tree Fin. Corp. Alabama v. Randolph*,
    531 U.S. 79 (2000).................................................................................................10

*Guarini v. Doe*,
    2022 WL 20180341 (S.D. Fla. Apr. 5, 2022) ................................................ *passim*

*Gulf Coast Produce, Inc. v. Am. Growers, Inc.*,
    2008 WL 660100 (S.D. Fla. Mar. 7, 2008).....................................................28, 36

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019).............................................................................................15

*Herrera v. West Flagler Assocs., Ltd.*,
    2017 WL 9324515 (S.D. Fla. Apr. 5, 2017) .........................................................18

*Hinkle v. Cirrus Design Corp.*,
    775 F. App'x 545 (11th Cir. 2019) .......................................................................23

*Home Design Servs., Inc. v. David Weekley Homes, LLC*,
    2007 WL 1080001 (M.D. Fla. Apr. 9, 2007).......................................................21

*HostLogic Zrt. v. GH Int'l, Inc.*,
    2014 WL 2968279 (M.D. Fla. June 30, 2014)......................................................27

*Huang v. Hong Kong & Shanghai Banking Corp. LTD*,
    2022 WL 4123879 (S.D.N.Y. Sept. 9, 2022)........................................................32

*Iglesias v. Pernod Ricard*,
    2020 WL 13367465 (S.D. Fla. Aug. 17, 2020)...................................19, 20, 23, 24

*Inetianbor v. CashCall, Inc.*,
   923 F. Supp. 2d 1358 (S.D. Fla. 2013) ...................................................................11

*Integrated Sec. Servs. v. Skidata, Inc.*,
   609 F. Supp. 2d 1323 (S.D. Fla. 2009) ...................................................................11

*In re January 2021 Short Squeeze Trading Litig.*,
   584 F. Supp. 3d 1161 (S.D. Fla. 2022) ...................................................................12

*Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*,
   2003 WL 21146714 (S.D. Fla. May 6, 2003) .........................................................36

*Johnson v. Chase Bankcard Servs., Inc.*,
   582 F. Supp. 3d 1230 (M.D. Fla. 2022) ..................................................................33

*JPay, Inc. v. Kobel*,
   904 F.3d 923 (11th Cir. 2018) ................................................................................10

*Judge v. Unigroup, Inc.*,
   2017 WL 3971457 (M.D. Fla. Sept. 8, 2017) .........................................................15

*K3 Enterprises, Inc. v. Sasowski*,
   2021 WL 8363506 (S.D. Fla. Nov. 22, 2021)..............................................24, 25, 34

*King v. UA Local 91*,
   2020 WL 4003019 (N.D. Ala. July 15, 2020) ........................................................35

*Kirschner v. Bennett*,
   648 F. Supp. 2d 525 (S.D.N.Y. 2009)........................................................30, 36, 37

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ..............................................................................18

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
   603 F. Supp. 3d 1183 (S.D. Fla. 2022) ...................................................................26

*Melton v. Century Arms, Inc.*,
   243 F. Supp. 3d 1290 (S.D. Fla. 2017) ...................................................................26

*Miro v. Doe*,
   2023 WL 2734374 (S.D. Fla. Mar. 31, 2023)....................................................3, 26

*Molinos Valle Del Cibao, C. por A. v. Lama*,
   633 F.3d 1330 (11th Cir. 2011) ..............................................................................34

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).............................................................................................10, 17

*Multi-Financial Sec. Corp. v. King*,
   386 F.3d 1364 (11th Cir. 2004) .......................................................15

*New Prime Inc. v. Oliveira*,
   202 L. Ed. 2d 536 (2019) ...............................................................15

*Nix v. ESPN, Inc.*,
   2018 WL 8802885 (S.D. Fla. Aug. 30, 2018)............................................12

*Pearson v. Deutsche Bank AG*,
   2022 WL 951316 (S.D. Fla. Mar. 30, 2022)..............................30, 36, 37

*Perlman v. Wells Fargo Bank, N.A.*,
   559 F. App'x 988 (11th Cir. 2014) ...............................................30

*Perry v. Ryan*,
   2023 WL 2403889 (M.D. Fla. Mar. 8, 2023) ...................................23

*Physician Consortium Services, LLC v. Molina Healthcare, Inc.*,
   414 F. App'x 240 (11th Cir. 2011) ..............................11, 17, 18

*Ray v. NPRTO Fla., LLC*,
   322 F. Supp. 3d 1261 (M.D. Fla. 2017) ........................................11

*In re Refco, Inc. Sec. Litig.*,
   2008 WL 2185676 (S.D.N.Y. May 21, 2008) ...................................17

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010)...................................................................15

*Reynolds v. Binance Holdings Ltd.*,
   481 F. Supp. 3d 997 (N.D. Cal. 2020) ...............................4, 25, 26, 35

*Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*,
   2021 WL 2355096 (N.D. Ga. June 9, 2021) ...................................21

*Scherer v. Hyundai Cap. Am., Inc.*,
   2022 WL 17488420 (S.D. Fla. Nov. 22, 2022)................................16

*Schrier v. Qatar Islamic Bank*,
   632 F.Supp.3d 1335 (S.D. Fla. Sept. 30, 2022) ............................23

*Securities and Exchange Commission v. Binance Holdings Limited et al.*,
   Case 1:23-cv-01599 (D.D.C.) .......................................................31

*Segal v. Amazon.com, Inc.*
   763 F. Supp. 2d 1367 (S.D. Fla. 2011) ........................................11

*Shamsi v. Levin*,
    2017 WL 7803807 (S.D. Fla. Oct. 27, 2017).........................................................12

*Steinberg v. Sherman*,
    2008 WL 1968297 (S.D.N.Y. May 2, 2008) .........................................................33

*ThunderWave, Inc. v. Carnival Corp.*,
    954 F. Supp. 1562 (S.D. Fla. 1997) ......................................................................27

*Tiffany Tate & Quantum Luxury Props., LLC v. Ibis Prop. Owners Ass'n*,
    2018 U.S. Dist. LEXIS 27768 (S.D. Fla. Feb. 16, 2018).......................................12

*Toll v. North*,
    2022 WL 17412937 (S.D. Fla. Dec. 5, 2022) .......................................................21

*Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*,
    92 F.3d 1110 (11th Cir. 1996) ..............................................................................27

*Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*,
    2019 WL 2327810 (S.D.N.Y. May 30, 2019) .......................................................32

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009) ............................................................................37

*Vitzethum v. Dominick & Dominick Inc.*,
    1996 WL 19062 (S.D.N.Y. Jan. 18, 1996) ...........................................................18

*Waite v. All Acquisition Corp.*,
    901 F.3d 1307 (11th Cir. 2018) ..............................................................20, 22, 23, 24

*Wallace v. VF Jeanswear Ltd. P'ship*,
    2020 WL 999341 (N.D. Ala. Mar. 2, 2020) .........................................................36

**State Cases**

*ALP, Inc. v. Moskowitz*,
    204 A.D.3d 454 (2022) .........................................................................................31

*Alrai Naked Opportunity LLC v. Naked Brand Group Ltd.*,
    2019 WL 5595157 (N.Y. Sup. Ct. Oct. 30, 2019) ...........................................27, 29

*Arrowhead Golf Club, LLC v. Bryan Cave, LLP*,
    59 A.D.3d 347 (2009) ...........................................................................................12

*Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*,
    31 A.D.3d 983 (2006) ...........................................................................................33

*Corsello v. Verizon N.Y., Inc.*,
    944 N.Y.S.2d 732 (2012)........................................................................................33

*Georgia Malone & Co. v. Rieder*,
   19 N.Y.3d 511 (2012) ........................................................................................34

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132 (2009) ........................................................................................33

*Lenczycki v. Shearson Lehman Hutton, Inc.*,
   238 A.D.2d 248 (1997) ......................................................................................31

*Mandarin Trading Ltd. v. Wildenstein*,
   944 N.E.2d 1104 (2011).........................................................................32, 33, 34

*McKinnon Doxsee Agency, Inc. v. Gallina*,
   187 A.D.3d 733, 132 N.Y.S.3d 144 (2020) .......................................................28

*Samiento v. World Yacht Inc.*,
   10 N.Y.3d 70, 883 N.E.2d 990 (2008)..............................................................33

*SH575 Holdings LLC v. Reliable Abstract Co., LLC*,
   195 A.D.3d 429, 149 N.Y.S.3d 62 (2021) ...........................................27, 28, 31

**Federal Statutes**

9 U.S.C. § 1 ................................................................................................................10

9 U.S.C. § 3................................................................................................................10, 15

Fair Credit Reporting Act .........................................................................................14

Federal Arbitration Act .............................................................................................10

**State Statutes**

Fla. Stat. Ann.
   § 48.193(1)........................................................................................................23
   § 48.193(1)(a)(1).............................................................................................24
   § 48.193(1)(a)(2).............................................................................................24
   § 48.193(1)(a)(6)(a) ........................................................................................24

Real Estate Settlement Procedures Act....................................................................13

**Rules**

Federal Rules of Civil Procedure
   8(c)(1) ...............................................................................................................12
   23(a) ..................................................................................................................35
   23(b) ..................................................................................................................35

Local Rule
   7.1(a)(3) ............................................................................................................38
   7.1(b)(2) ............................................................................................................38

Defendant Binance Holdings, Ltd. and Defendant BAM Trading Services Inc. ("Defendants") respectfully move the Court to enter an order compelling arbitration, or, in the alternative, dismissing Plaintiff's Complaint (the "Complaint") (ECF No. 1). In support of this motion, Defendants state as follows:

## I.    <u>INTRODUCTION</u>

This case has no legal or factual basis. Defendants are totally unaffiliated with the Plaintiff or the exchange where his cryptocurrency was purportedly stolen. For a host of reasons, this case should be dismissed.

Plaintiff Michael Osterer's cryptocurrency was purportedly stolen by an unknown hacker from his Coinbase account. Oddly, Plaintiff has not sued either party connected to this occurrence. Plaintiff did not sue the hacker for stealing his assets, or Coinbase for failing to adequately protect those assets. Instead, Plaintiff sued two cryptocurrency exchanges that are entirely uninvolved with the alleged theft or Plaintiff: Defendant Binance Holdings, Ltd ("Binance") and Defendant BAM Trading Services Inc. ("BAM").

The Complaint is mostly barren of facts specific to how Plaintiff was purportedly harmed by Binance. And it contains zero substantive allegations against BAM. Plaintiff's attempt to sue these entities, who are at least three degrees removed from the alleged theft, fails for several independent reasons: (1) Plaintiff is required to arbitrate his claims, (2) the Court lacks personal jurisdiction over Binance, and (3) the Complaint fails to allege plausible facts to state a claim. The Court should compel arbitration, or, in the alternative, dismiss the Complaint.

Plaintiff's theory is that Defendants are liable for the hacker's theft of the cryptocurrency from a completely separate exchange because the hacker allegedly eventually moved the stolen assets from Coinbase, where the alleged theft occurred, pursuant to numerous blockchain

transactions unassociated with Binance, to Binance's exchange. Plaintiff never alleges that the stolen funds touched BAM's exchange. Plaintiff alleges that Binance should have stopped the hacker from ultimately withdrawing their funds through its authority to freeze user accounts. Furthermore, Plaintiff's theory is that Binance knowingly allowed this conduct, and unjustly enriched itself, in order to collect fees on the hacker's transactions.

As an initial matter, the Court need not address the blatant deficiencies in Plaintiff's allegations because the claims are subject to mandatory arbitration. This is because the bases for Plaintiff's conversion and unjust enrichment claims and the attendant relief he seeks – Binance's right to freeze or suspend customer accounts and to collect transaction fees – derive directly from Binance's Terms of Use ("Terms"), which must be agreed to as a prerequisite to depositing or withdrawing any funds on Binance, and which also contain a binding arbitration provision. Among other things, the Terms confer the rights and obligations of Binance and its users, including among other things, creating the right for Binance to: (1) freeze users' accounts and transactions, and (2) collect fees from users' transactions.

Pursuant to widely recognized equity principles, Plaintiff, who does not allege he is a Binance customer or a signatory to the Terms, is nevertheless bound by the Terms' arbitration and class waiver provisions. Equitable estoppel "precludes a party from claiming the benefits of [some of the provisions] of a contract" in pleading their claims while attempting to avoid the arbitration and class waiver provisions in the same contract. *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005). That is exactly what Plaintiff is attempting to do here. Without the benefits conferred by the Terms, i.e., Binance's ability to freeze user accounts and charge fees, Plaintiff's claims would be completely toothless. Courts in this Circuit consistently recognize that plaintiffs cannot have their cake and eat it too in this manner. They cannot rely on the "underlying

contract to make out his or her claim" and avoid the arbitration provision in that same contract. *Bailey v. ERG Enterprises, LP*, 705 F.3d 1311, 1321 (11th Cir. 2013). Accordingly, the Court should compel Plaintiff to abide by the arbitration and class waiver provisions in Binance's Terms.

Even if Plaintiff is not compelled to arbitrate his claims, the Complaint should be dismissed because it fails to sufficiently allege personal jurisdiction or a claim upon which relief can be granted. First, Plaintiff has not established that the Court has personal jurisdiction over Binance. Under Plaintiff's own version of events, the conduct of Binance, not BAM, caused him injury. But the Complaint is devoid of any facts that would establish personal jurisdiction over Binance. There is not a single allegation regarding Binance's conduct in Florida such that the Court can infer that Binance is "at home" in Florida, or that Binance has purposefully availed itself to Florida such that the Complaint "arises from or relates to" Binance's contacts with Florida.

Plaintiff alleges, in a misguided attempt to establish jurisdiction over Binance, that Binance and BAM are alter egos by copying allegations from two totally unrelated complaints, which were recently filed by government agencies and are pending in other, distant courts. But this falls short of satisfying his "very heavy burden" of establishing jurisdiction over Binance based on alter ego. This theory fails because there are no allegations that Binance controlled BAM or used BAM for a fraudulent or improper purpose in a manner that caused Plaintiff's injury, in Florida or elsewhere. In fact, Binance and BAM are entirely separate legal entities and BAM has no corporate affiliation to Binance whatsoever, and there are no facts Plaintiff has alleged – or could allege – to the contrary. Indeed, Courts in this District and elsewhere consistently rejected the argument that Binance, a foreign entity, is subject to personal jurisdiction within Florida and other states based on this alter ego theory. *See Miro v. Doe*, 2023 WL 2734374 (S.D. Fla. Mar. 31, 2023); *Guarini v. Doe*, 2022 WL 20180341 (S.D. Fla. Apr. 5, 2022); *Gadasalli v. Bulasa*, 2023 WL 3586424, (E.D.

3

Tex. May 22, 2023); *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997 (N.D. Cal. 2020). Accordingly, the Court lacks jurisdiction over Binance.

Second, each of Plaintiff's causes of action are inadequately pled. This is unsurprising given the attenuated circumstances on which Plaintiff's theory relies. The Complaint does not state any of the elements of conversion, because there are no allegations: (1) that Defendants intended to deprive Plaintiff of his cryptocurrency; (2) that Defendants, as exchanges, asserted dominion over the cryptocurrency; or (3) that Defendants interfered with Plaintiff's right to possess the cryptocurrency. Likewise, Plaintiff's purported aiding and abetting claim fails as a matter of law, because the Complaint contains no allegations that Defendants had actual knowledge of the supposed theft of the cryptocurrency, had some freestanding duty to Plaintiff, or intended to or did help conceal or "affirmatively assist" the purported thief. Furthermore, while as a threshold matter it should be barred for being duplicative, Plaintiff's claim for unjust enrichment cannot survive because Plaintiff has not plausibly alleged, among other things, that he conferred a benefit upon Defendants. And, finally, the claims against BAM fail because there are no independent allegations of misconduct on the part of BAM, and Plaintiff has no viable basis to impute liability to BAM.

Simply put, there is no basis whatsoever for the Complaint to proceed in this Court. Defendants respectfully request that the Court enter an order compelling arbitration, or alternatively, dismissing the Complaint with prejudice.

## II. BACKGROUND

### A. Plaintiff Alleges an Unidentified Hacker Stole Digital Assets From Plaintiff's Coinbase Account and Traded Them on Binance's Exchange

Plaintiff's 32-page Complaint contains only 9 paragraphs alleging any facts pertaining to his specific claims or alleged injury. (Compl. ¶¶ 76-84 ("Plaintiff's Experience").) Those paragraphs allege that Plaintiff had an account with Coinbase (an unaffiliated U.S.-based

cryptocurrency exchange) in which he deposited his cryptocurrency. (*Id.* ¶ 76.) Plaintiff further alleges that "[o]n or about April 7, 2021, an unauthorized person(s) infiltrated Plaintiff's Coinbase account and stole approximately 8.06 BTC [Bitcoin] and 449 ETH [Ether] from Plaintiff." (*Id.* ¶ 77.) This hacker then allegedly transferred the Bitcoin into a purported "High Risk wallet" and the Ether into a separate digital wallet. (*Id.* ¶¶ 77-80.) Notably, these two wallets are not alleged to be associated with, or located on, Binance's platform. (*Id.*) The alleged stolen cryptocurrency was then allegedly transferred from these two non-Binance wallets through a series of separate transactions on the Bitcoin and Ethereum into various other cryptocurrency wallets. (*Id.* ¶¶ 79-80.) Eventually, the alleged hacker purportedly deposited the stolen cryptocurrency from these various wallets into Binance accounts, from which it later withdrew the stolen funds. (*Id.* ¶¶ 78-81.)

**B.    Plaintiff Alleges Binance – Not BAM – Should Have Stopped the Hacker From Withdrawing the Alleged Stolen Funds and Should Not Have Collected Fees Based on the Hacker's Transactions**

Plaintiff alleges that the financial harm he suffered by virtue of the unknown hacker stealing his cryptocurrency from his Coinbase account was "a direct and proximate result of Binance's policies and failures." (*Id.* ¶ 84.) In support of this misguided theory, Plaintiff alleges that Binance knowingly engaged in this allegedly culpable conduct "for the purpose of earning Binance transaction fees[.]" (*Id.* ¶ 75.) Plaintiff alleges nothing, along these lines, against BAM.

Plaintiff's cobbled-together theory is that Binance is liable because Binance "actually knew" that the stolen cryptocurrency was deposited into Binance accounts, "Binance had the ability to freeze those accounts and stop transactions" and "could have done so before some or all of the stolen cryptocurrency left the Binance exchange, but failed to do so." (*Id.* ¶¶ 72-73.) The Complaint contains no information supporting the conclusory allegation that Binance – one brief stop along the alleged series of transactions made by the hacker – had "actual knowledge" (*id.* ¶ 72) that Plaintiff's allegedly stolen cryptocurrency had been transferred to a Binance account.

5

Instead, Plaintiff relies on the general and conclusory allegation that Plaintiff's stolen Bitcoin was transferred to a "High Risk wallet" wholly unassociated with Binance's exchange, and which is supposedly "known in the cryptocurrency industry" as being maintained by suspected criminals. (*Id.* ¶ 78.) Plaintiff does not allege how Binance would know this, or how or why that wallet was purportedly "known in the industry," let alone known by Binance specifically, to be associated with suspected criminals. Plaintiff does not allege that his Ether was transferred to a high risk or suspected criminal's wallet. (*Id.* ¶ 80.)

Notably, Plaintiff does not allege that he or the hacker had any interaction with BAM, that BAM had any knowledge of the hacker's alleged conduct, or that BAM or its policies played any role in the theft of Plaintiff's cryptocurrency. The only allegations against BAM are simply copied and pasted from unrelated complaints filed by the SEC and the CFTC in completely different courts in a failed attempt to establish that Binance operates in the U.S. and that Binance and BAM are alter egos. (*Id.* ¶¶ 17-37.) The lack of a single original allegation against BAM makes it clear that BAM is only included in this action as a jurisdictional façade.

## C. Defendants Are Separate Legal Entities That Provide Cryptocurrency Exchange Services to Different Markets

Binance was founded in 2017 as a cryptocurrency exchange that allows its users to purchase and trade cryptocurrencies and digital assets such as Bitcoin and Ether. (*Id.* ¶¶ 7-8.) Binance is a foreign company incorporated outside the U.S. (*Id.* ¶ 6.) Binance does not operate in the U.S. On the other hand, BAM was founded in 2019 and is organized under the laws of Delaware. (*Id.* ¶ 5.)  BAM is a completely different cryptocurrency exchange and operates in the U.S. (*Id.* ¶ 9.)

**D.      Before Users Are Able to Use Binance's Services, They Agree to Be Bound by Binance's Terms**

Before a user can deposit, withdraw, or trade assets on Binance's exchange, the user must first register and create an account with Binance. (*See* Declaration of Erin Fracolli, dated July 19, 2023 and attached as **Exhibit A** ("Decl.") at ¶ 3.) The Terms expressly provide that U.S. users are restricted from creating accounts with Binance. (Decl. ¶ 8.) To create an account, the user must read and agree to Binance's Terms. (Decl. ¶ 3.) Users must affirmatively check a box confirming that they "agree to Binance's Terms of Use." (*Id.*) The words "Terms of Use" in this sentence are hyperlinked (in bold and underlined typeface) to the Terms themselves. (Decl. ¶ 4.) The Terms plainly explain that the "Terms constitute a legal agreement and create a binding contract" between the user and Binance. (Decl. ¶ 6, Exh. 2 at § II.1.a.)

Thus, to allegedly move Plaintiff's cryptocurrency to Binance, the hacker must have first agreed to the Terms. (Decl. ¶¶ 3-4.) Additionally, whenever the Terms are modified, Binance alerts users of those changes and notifies users that they are assenting to those changes by continuing to use Binance. (Decl. ¶ 7.) Every version of the Terms from the date of Plaintiff's first alleged injury to the present have included substantially similar language regarding all the material provisions discussed in this Motion. (*See* Decl. Exh. 3.)

**1.      Binance's Terms Authorize Binance to Freeze Customer Assets and Collect Transaction Fees**

The Complaint alleges that Binance could have frozen the alleged hacker's accounts and stopped their transactions "before some or all of the stolen cryptocurrency left the Binance exchange." (Compl. ¶¶ 72-73.) Binance's ability to freeze users' accounts and stop transactions on its exchange derives directly from the Terms, which give Binance "the right to immediately suspend your Binance Account (and any accounts beneficially owned by related entities or affiliates), freeze or lock the Digital Assets or funds in all such accounts, and suspend your access

to Binance for any reason . . . ." (Decl. Exh. 2 § VI.1.) Users also agree to confer on Binance "the right . . . to permanently freeze (cancel) the authorizations of your Binance Account on Binance and withdraw the corresponding Binance Account" in case of certain events. (*Id.* § VI.2.)

Plaintiff also seeks disgorgement of fees allegedly collected by Binance on the hacker's alleged transactions. (Compl. ¶¶ 1, 3.) The basis for this claim also derives directly from the Terms, which provide Binance the right to collect fees from users for transactions. (Decl. ¶¶ 9-10, Exh. 2 § III.2.c ("You agree to pay Binance the fees specified in [the published online fee schedule]. . . . You authorize Binance to deduct from your account any applicable fees that you owe under these Terms.").)

### 2. The Terms Include Binding Arbitration and Class Action Waiver Provisions

The Terms bind both the user and Binance to mandatory binding arbitration, requiring Binance and users to arbitrate any dispute arising out of the Terms or related to Binance's "Services" (the "Arbitration Provision"). (Decl. ¶ 15, Exh. 2 § X.2.) The "Services" subject to the Arbitration Provision include the "Digital Asset Trading Platforms" that Plaintiff alleges the hacker used to move Plaintiff's cryptocurrency. (Decl. ¶ 15, Exh. 2 § I.3.)

The Arbitration Provision states in relevant part:

> **2. Agreement to Arbitrate and Governing Law.** You and Binance Operators agree that, subject to paragraph 1 above, *any dispute, claim, or controversy* between you and Binance (and/or Binance Operators) arising in connection with or relating in any way to these Terms or to your relationship with Binance (and/or Binance Operators) as a user of Binance Services (*whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of these Terms) will be determined by mandatory final and binding individual (not class) arbitration*, except as set forth below under Exceptions to Agreement to Arbitrate.

(Decl. ¶ 15, Exh. 2 § X.2 .) The Arbitration Provision also provides: "These Terms (including this arbitration agreement) shall be governed by, and construed in accordance with, the laws of Hong Kong" administered in English by the Hong Kong International Arbitration Centre (HKIAC). (*Id.*)

8

The Arbitration Provision is prominently highlighted throughout the Terms. In the preamble of the Terms found on the first page of the Terms, prospective users are instructed to "Please read the terms carefully as they govern your use of Binance Services. **THESE TERMS CONTAIN IMPORTANT PROVISIONS INCLUDING AN ARBITRATION PROVISION THAT REQUIRES ALL CLAIMS TO BE RESOLVED BY WAY OF LEGALLY BINDING ARBITRATION.** " (Decl. ¶ 13, Exh. 2 at p. 1 (bold and all caps in original).) And just above the Arbitration Provision, the Terms again emphasize – using bold and all caps – that the Terms include a waiver of legal rights, including proceeding "as a class action." (*Id.* § X.)

### III.   ARGUMENT

Plaintiff's claims cannot proceed in this Court for three independent reasons: (1) the claims are subject to binding arbitration pursuant to the established doctrine of equitable estoppel; (2) the Court lacks personal jurisdiction over Binance – the only defendant that Plaintiff alleges engaged in culpable (or any) conduct; and (3) Plaintiff fails to allege plausible facts to state a viable claim against either Binance or BAM.

### A.  The Complaint Should Not Proceed in This Court Because the Claims Are Subject to Mandatory Binding Arbitration

Plaintiff must arbitrate his claims because he is suing based on, and seeking benefits arising from, Binance's Terms, which include a mandatory arbitration clause.[1] A necessary component of all Plaintiff's claims is that Binance could have, but failed to, freeze Plaintiff's allegedly stolen cryptocurrency. (*See, e.g.*, Compl. ¶ 73 ("Binance had the ability to freeze those accounts and stop

---

[1] The Court can properly consider the extrinsic evidence, including Binance's Terms, submitted in support of this Motion because the Terms are incorporated by reference in the Complaint (*see* Compl. ¶ 24). *Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir. 1999)). Additionally, on a motion to compel arbitration, the Court can consider extrinsic evidence. *See Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1228 (S.D. Fla. 2020).

transactions on its exchange involving the stolen cryptocurrency. Binance could have done so before some or all of the stolen cryptocurrency left the Binance exchange, but failed to do so."); *id.* ¶ 108 ("Notwithstanding the actual knowledge of the custody of stolen assets in a Binance address, Binance did not halt the further movement of that stolen property, . . .").) Plaintiff's unjust enrichment claim further relies on Plaintiff's allegation that Binance's collection of transaction fees from this alleged failure to freeze was unjust. (Compl. ¶¶ 1, 3, 55, 75, 116; *id.* at p. 32 (seeking declaratory judgment, restitution, and disgorgement because "Defendants were unjustly enriched by their collection of transaction fees on Plaintiff and Class members' stolen cryptocurrency.").) These allegations, which form the gravamen for both of Plaintiff's causes of action here, demonstrate that Plaintiff is suing Binance based on rights arising from the Terms.

### 1.    Governing Law Compels Arbitration Here

The Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"). Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that there is an "issue referable to arbitration under an agreement in writing for such arbitration[.]" *See* 9 U.S.C. § 3; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . ."); *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 929 (11th Cir. 2018).

Given the FAA's liberal policy favoring arbitration, "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000). "[A]ny doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration[.]" *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022).

Under the FAA, a district court must compel arbitration if (1) a valid written agreement to arbitrate exists, (2) an arbitrable issue exists, and (3) the right to arbitrate has not been waived. *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009). A plaintiff challenging the enforcement of an arbitration agreement must establish, by substantial evidence, any defense to the enforcement of the agreement. *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013). Here, all three of these factors compel arbitration.

### a.      The Terms Constitute a Valid Clickwrap Agreement

The Arbitration Provision in Binance's Terms constitutes a valid agreement in writing. (Decl. Exh. 2 § X.2). As set forth in the accompanying declaration from Binance, in order to trade on Binance's exchange platform, the hacker would have had to create an online account with Binance and would have had to affirmatively check a box agreeing to the Terms. (*See supra* § II(D); Decl. ¶¶ 3-4.) Courts routinely enforce online agreements of this nature, particularly where the user is required to take affirmative action to consent. *Segal v. Amazon.com, Inc.* 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits . . . 'clickwrap agreements,' where a user accepts a website's terms and conditions . . . are valid and enforceable contracts.").

### b.      Plaintiff Is Bound by the Terms' Arbitration Provision Under the Doctrine of Equitable Estoppel

While Plaintiff is not a signatory to the Terms, he is nonetheless bound to the Arbitration Provision under well-settled principles of equitable estoppel. "[T]raditional principles of state contract law determine whether an arbitration agreement can be enforced by or against a non-party." *Ray v. NPRTO Fla., LLC*, 322 F. Supp. 3d 1261, 1262-63 (M.D. Fla. 2017), *aff'd*, 743 F. App'x 955 (11th Cir. 2018); *see also Physician Consortium Services, LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 242 (11th Cir. 2011); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631, (2009).

The Court need not engage in any choice-of-law analysis here because there is no conflict among the possible applicable laws with respect to the doctrine of equitable estoppel. *See In re January 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1179 (S.D. Fla. 2022) (finding that "[u]nder Florida's choice-of-law rules, courts need not decide a choice-of-law dispute unless a true conflict of laws exists[.]"). Florida law (forum), New York law (applicable to Plaintiff's claims, to which estoppel is an affirmative defense),[2] federal common law (which some courts have relied on in cases like this one (*see, e.g.*, *Cabrera-Morales v. UBS Tr. Co. of Puerto Rico*, 769 F. Supp. 2d 67, 71 (D.P.R. 2011) ("[A]pplying federal common law to evaluate Defendant's argument that a nonsignatory 'can be bound by an arbitration provision in a contract executed solely by others.'") (cleaned up), and Hong Kong law (selected by Terms' choice-of-law provision) all apply the doctrine of equitable estoppel in the same way to bind a nonsignatory to a contract's arbitration provision when the nonsignatory relies on the contract to state his claims.[3]

---

[2] *See* Fed. R. Civ. P. 8(c)(1); *Nix v. ESPN, Inc.*, 2018 WL 8802885 (S.D. Fla. Aug. 30, 2018) (finding first that the tort claim at issue was governed by New York law, as opposed to Florida law, and then applying New York law to the affirmative defenses).

[3] *See Tiffany Tate & Quantum Luxury Props., LLC v. Ibis Prop. Owners Ass'n*, 2018 U.S. Dist. LEXIS 27768, at **14-15, *n 5 (S.D. Fla. Feb. 16, 2018) (applying Florida law and binding non-signatory to contract containing arbitration provision under "direct benefits" theory of estoppel because the non-signatory's suit sought to benefit under contract); *Arrowhead Golf Club, LLC v. Bryan Cave, LLP*, 59 A.D.3d 347 (2009) (applying New York law and binding a non-signatory to an arbitration clause because non-signatory used contract as basis for its claims, which signaled intent to be bound by contract's arbitration clause); (Declaration of Sherlin Tung, dated July 21, 2023 and attached as **Exhibit B** ("Tung Decl.") ¶15 (recognizing "in the appropriate circumstances, [that] non-signatories may be bound to written arbitration agreements under the theory of estoppel.") (citing *Dickson Valora Group (Holdings) Co., Ltd. v. Fan Ji Qian*, [2019] HKCFI 482 (binding, under Hong Kong law, non-signatory to arbitration clause where non-signatory sought to enforce contractual rights under contract containing arbitration clause)); *Shamsi v. Levin*, 2017 WL 7803807, at *4 (S.D. Fla. Oct. 27, 2017) (applying federal law on equitable estoppel and compelling arbitration where the plaintiff's claims made reference to or presumed the existence of a contract that included an arbitration clause.)

Under any of these laws, which do not conflict, equitable estoppel binds Plaintiff to the Arbitration Provision because Plaintiff relies on the Terms to establish his causes of action. Specifically, Plaintiff's theory of liability against Binance (and BAM) requires that (1) Binance could have, but did not, freeze Plaintiff's allegedly stolen cryptocurrency assets; and (2) Binance failed to do so in order to earn transaction fees. (*See supra* §§ II(B), II(D)(1).) The only reason Plaintiff is able to invoke these rights is because the alleged hacker – in order to make deposits and withdrawals on Binance – must have agreed to the Terms, which allowed Binance to suspend, freeze or lock their assets and accounts, and to collect fees based on their transactions on the exchange. (*See supra* § II(D)(1); Decl. ¶¶ 9-12.) Thus, Plaintiff is relying on the Terms to establish his claims.

*Blinco v. Green Tree Servicing LLC* is instructive. In *Blinco*, two plaintiffs, Mr. and Mrs. Blinco, asserted claims against a group of affiliated defendants pursuant to the Real Estate Settlement Procedures Act ("RESPA") for failing to provide notice that Mr. Blinco's loan had been transferred and was being serviced by a different entity. *Id.* at 1310. While Mr. Blinco had signed the underlying note, which contained an arbitration clause (the "Note"), Mrs. Blinco had not. The defendants moved to compel Mrs. Blinco to arbitrate her claims despite her status as a nonsignatory because her claims derived from the Note. *Id.* at 1311. Mrs. Blinco argued that her "claims arise solely from statutory rights," but the Circuit rejected that argument and explained that while RESPA claims are statutory, Mrs. Blinco's claims – that she was entitled to notice of the transfer of her husband's loan – derived from the Note and she was thus relying "upon the Note to establish her . . . claims while avoiding her obligation under the Note to arbitrate such claims." *Id.* at 1312. As such, Mrs. Blinco was bound "to the arbitration clause of the Note under the doctrine of equitable estoppel." *Id.*

Similarly, in *Bentley v. Control Grp. Media Co., Inc.*, the court bound a nonsignatory to an arbitration agreement where the facts were virtually identical to those here. In *Bentley*, plaintiffs filed a putative class action against a defendant who was the parent of two online public records search companies. *Bentley v. Control Grp. Media Co., Inc.*, 2020 WL 3639660, at *1 (S.D. Cal. July 6, 2020). Plaintiffs hired a service to expunge certain criminal records online. *Id.* Plaintiffs alleged that the expungement company sent multiple notices to defendants, but defendants refused to remove the expunged criminal records, thereby violating the Fair Credit Reporting Act and state laws. *Id.* Defendants moved to enforce the arbitration agreement included on the website's terms of use on the grounds that the expungement company agreed to the terms of use. *Id.* at *2. Even though the plaintiffs did not have a direct relationship with the defendants and therefore never accepted the terms of use, including the arbitration provision, the Court nevertheless found that plaintiffs were bound by the arbitration agreement. The Court held:

> Equity similarly requires Plaintiffs be estopped from refusing to comply with the 'Terms of Use' provisions, including the arbitration agreement . . . [The expungement company hired by Plaintiffs] subscribed to Defendants' websites, agreed to the 'Terms of Use', paid Defendants' fee, accessed and reviewed Plaintiffs' criminal records through Defendants' websites, and reported the results to Plaintiffs. . . . Plaintiffs' claims "presume the existence of the underlying contract." Plaintiffs, therefore, cannot avoid the restrictive obligations of the contract. [I]n relying on [the] website subscriptions, Plaintiffs seek to benefit from the 'Terms of Use' without being bound by the contract's provisions. Equity precludes such selective enforcement of a contract.

*Id.* at *3.

Plaintiff must be bound by the Arbitration Provision here because just like in *Blinco* and *Bentley*, Plaintiff cannot sustain his claims without relying on Binance's Terms. Plaintiff attempts to selectively rely on these obligations while ignoring the rest of the Terms, but case law is abundantly clear that equity precludes him from doing so. *See Bailey*, 705 F.3d at 1320-21 ("Equitable estoppel [binds] a nonsignatory . . . when [it] relies on the terms of the contract to

assert his or her claims [and] [a] party relies on the terms of a contract when the party needs the underlying contract to make out his or her claim[.]"); *Judge v. Unigroup, Inc*., 2017 WL 3971457, at *4 (M.D. Fla. Sept. 8, 2017) (when party "relies on the agreement to assert claims[,]" compelling arbitration is proper). Accordingly, Plaintiff must be bound by the Arbitration Provision.

### c.   An Arbitral Issue Exists Because Plaintiff's Claims Fall Within the All-Encompassing Arbitration Provision

An "issue referable to arbitration," 9 U.S.C. § 3, exists for two independent reasons.

<u>First</u>, the Arbitration Provision clearly and unmistakably delegates the question of arbitrability to the arbitrator. Where an arbitration agreement "clearly and unmistakably" states that an arbitrator will decide gateway issues such as the validity, enforceability or applicability of the arbitration agreement, it is for the arbitrator, and not the Court, to decide those issues. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Courts must enforce "agreement[s] to arbitrate threshold issues" regarding the arbitrability of their dispute. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010); *New Prime Inc. v. Oliveira*, 202 L. Ed. 2d 536 (2019).[4] This mandate is non-negotiable. Indeed, when a "contract delegates the arbitrability question to an arbitrator, a court may not override the contract" and "possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

The Arbitration Provision provides "that the arbitrator shall have the exclusive power to rule on his or her own jurisdiction, including without limitation any objections with respect to the

---

[4] It is settled in the Eleventh Circuit that, absent statutory prohibition, questions of arbitrability are decided by arbitrators, not the federal courts. *See Multi-Financial Sec. Corp. v. King*, 386 F.3d 1364, 1367 (11th Cir. 2004); *Attix v. Carrington Mortg. Servs.*, LLC, 35 F.4th 1284, 1298, 1300-01 (11th Cir. 2022) (questions of arbitrability are delegated to an arbitrator unless law prohibits that delegation.).

existence, scope or validity of the Agreement to Arbitrate, or to the arbitrability of any claim or counterclaim." (Decl. Exh. 2 § X.2.) Moreover, the Arbitration Provision expressly incorporates the Hong Kong International Arbitration Centre ("HKIAC") rules (*id.*), which also mandate delegation of all questions of arbitrability to the arbitrator. (*See* Tung Decl. Exh. 3 Art. 19.) Accordingly, the threshold issue of arbitrability of Plaintiff's claims requires referral to arbitration. *See Scherer v. Hyundai Cap. Am., Inc.*, 2022 WL 17488420, at *7 (S.D. Fla. Nov. 22, 2022), *report and recommendation adopted*, 2022 WL 17486330 (S.D. Fla. Dec. 7, 2022) (enforcing delegation provision because the "provision permit[s] either party to elect to resolve 'any' claim or dispute . . . by arbitration," and "any disputes means all disputes, because any means all"); *Attix v. Carrington Mortg. Servs.*, LLC, 35 F.4th 1284, 1300-01 (11th Cir. 2022) ("[I]ncorporation of AAA rules giv[es] an arbitrator the power to rule on his or her own jurisdiction constitutes a clear and unmistakable delegation of questions of arbitrability."); *Ayala-Rodriguez v. Falic Fashion Grp. LLC*, 2019 WL 13216292, at *3 (S.D. Fla. Mar. 6, 2019) (same); *see also Flextronics Int'l USA, Inc. v. Murata Mfg. Co., Ltd.*, 2020 WL 5106851, at *8 (N.D. Cal. Aug. 31, 2020) (finding that HKIAC Rules "delegat[e] all questions of arbitrability to the arbitrator").

Second, if this Court determines it must answer the question of whether there is an arbitral claim, Plaintiff's claims fall squarely within the broad Arbitration Provision which mandates that "any" claim – "whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of these Terms" – "arising in connection with or relating in any way to" the Terms "will be determined by mandatory final and binding (not class) arbitration." (Decl. ¶ 15, Exh. 2 § X.2.) The Eleventh Circuit has interpreted arbitration provisions like this one to be "unequivocal and all-encompassing." *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) ("It states that 'any dispute between

them or claim by either against the other' is subject to arbitration. By using this inclusive language, the parties agreed to arbitrate any and all claims against each other, with no exceptions. An arbitration agreement is not vague solely because it includes the universe of the parties' potential claims against each other.").[5]

Here, the "all-encompassing" and classically "broad" Arbitration Provision at issue covers the alleged dispute between Plaintiff and Binance. *See Brown*, 211 F.3d at 1221. As set out above, the substance of Plaintiff's claims relies directly on the Terms, and therefore "arise under" and "relate to" the Terms. (*Supra* § III(A)(1)(a).) The Arbitration Provision also expressly covers the types of claims brought by Plaintiff, *i.e.*, a tort and quasi-contractual claim. (Decl. ¶ 15, Exh. 2 § X.2.) *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]").

In sum, because Plaintiff's claims arise under Terms containing an Arbitration Provision encompassing those claims, Plaintiff is equitably bound to arbitrate his claims against Binance.

###         d.         BAM May Invoke the Arbitration Provision to Compel Plaintiff to Arbitrate

A similar equitable estoppel theory requires Plaintiff to arbitrate his claims against BAM. A plaintiff bound by an arbitration agreement must arbitrate claims against a nonsignatory defendant if those claims are "both based on the same facts" and "inherently inseparable from the alleged" misconduct by a signatory. *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*,

---

[5] The interpretation of the Arbitration Provision is the same under Hong Kong law or New York law. *See In re Refco, Inc. Sec. Litig.*, 2008 WL 2185676, at *6 (S.D.N.Y. May 21, 2008) ("The arbitration clause. . . .providing for arbitration of 'any controversy or claim arising out of or relating to. . . . is 'precisely the kind of broad arbitration clause that justifies a presumption of arbitrability[.]'"); (*see also* Tung Decl. ¶ 10 ("[T]he courts of Hong Kong interpret arbitration clauses broadly and determine that disputes or claims 'arising out of' or 'related to' contracts containing arbitration agreements fall under the scope of arbitration."); *id.* Exhs. 6-8.)

414 F. App'x 240, 243 (11th Cir. 2011); *Caporicci U.S.A. Corp. v. Prada S.p.A.*, 2018 WL 2264194 at * 3 (S.D. Fla. May 7, 2018); *accord Herrera v. West Flagler Assocs., Ltd.*, 2017 WL 9324515, at *5 (S.D. Fla. Apr. 5, 2017).[6] This rule exists for good reason:  requiring arbitration of interrelated claims against non-signatories prevents plaintiffs from "attempting an 'end run'" around their obligation to arbitrate. *Physician Consortium Servs.*, 414 F. App'x at 243.

 The Court should similarly require Plaintiff to arbitrate his claims against BAM because those claims against BAM are "based on the same facts" and "inherently inseparable from the alleged" misconduct asserted against Binance. To be sure, Plaintiff alleges nothing independently against BAM and wholly relies on its allegations against Binance to impute liability onto BAM. (*See, e.g.*, Compl. ¶ 17.) Nonetheless, Plaintiff asserts both his claims against both Defendants. (Compl. ¶¶ 93-119.) Plaintiff's hollow alter ego premise demonstrates BAM should be permitted to arbitrate because the "same facts" are alleged against both Defendants as the basis for liability. Stated simply, there is no basis for Plaintiff's claims against BAM to proceed in court.

**B.**  **Plaintiff Has Not Satisfied His Burden of Establishing Personal Jurisdiction Over Binance**

 There is no basis for Plaintiff's claims against Binance to proceed in this Court for the additional reason that Plaintiff has not satisfied his "initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of [personal] jurisdiction" over Binance. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). "[A] federal court sitting in diversity [as here] undertakes a two-step inquiry" to determine whether personal jurisdiction

---

[6] The laws of New York and Hong Kong are in accord. *See Vitzethum v. Dominick & Dominick Inc.*, 1996 WL 19062, at *7 (S.D.N.Y. Jan. 18, 1996) (binding a non-signatory to an arbitration agreement when the non-signatory relied on the agreement in asserting claims); (Tung Decl. ¶¶ 14-16 (citing *Dickson Valora Group (Holdings) Co., Ltd. v. Fan Ji Qian*, [2019] HKCFI 482 (binding, under Hong Kong law, a non-signatory to an arbitration clause where the non-signatory sought to enforce contractual rights under the agreement containing the arbitration clause)).

exists: "the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate [] Due Process[.]" *Bernsley v. Advance Group*, 2022 WL 2915741, at **1-2 (S.D. Fla. July 24, 2022) (Ruiz, J.) (citations and quotations omitted). Personal jurisdiction may be either general or specific. *Id.* Here, neither exists over Binance.

### 1.   There is No General Jurisdiction Over Binance Because It Is Not at Home in Florida

Plaintiff does not allege Binance is subject to general jurisdiction under Florida's long-arm statute, nor can he. A corporation is subject to general jurisdiction, such that the court can hear any claim against it, where "the corporation is fairly regarded as at home[.]" *Iglesias v. Pernod Ricard*, 2020 WL 13367465, at *4 (S.D. Fla. Aug. 17, 2020). The Eleventh Circuit has noted the general jurisdiction provisions of Florida's long-arm statute are coextensive with "the limits on personal jurisdiction imposed by the Due Process Clause[.]" *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010). In this respect, general jurisdiction is normally established over a corporation if it is incorporated or has its principal place of business in Florida. *Daimler AG v. Bauman*, 571 U.S. 117, 118 (2014); *see also Iglesias*, 2020 WL 13367465, at *2 (citing cases).

Here, Plaintiff concedes that "Binance is a foreign corporation," and does not allege that it is incorporated in Florida, or that it has a principal place of business in Florida. (Compl. ¶ 6.) And as explained below (*infra* § III(B)), the Complaint is devoid of *any* facts regarding Binance's activities in Florida let alone facts sufficient to characterize Binance as at home in Florida. The only allegations in the Complaint pertain to the United States generally, not Florida, which the Court in *Guarini* already found is insufficient to establish personal jurisdiction over Binance. *Guarini v. Doe*, 2022 WL 20180341, at *3 (S.D. Fla. Apr. 5, 2022) (holding that allegations "about customers' use of [Binance's] services in the United States is woefully inadequate [grounds] to support the exercise of general jurisdiction over [Binance]").

Accordingly, Plaintiff attempts to impute BAM's contacts to Binance to establish general jurisdiction over Binance. But Plaintiff fails for the reasons below. *Iglesias*, 2020 WL 13367465, at *7 ("[E]ven if Plaintiff had sufficiently alleged . . . alter ego . . . for purposes of satisfying Florida's long-arm requirement of 'substantial and not isolated activity' in the state, [the foreign defendant's] connections with Florida are not 'so continuous and systemic' as to render it essentially at home[.]").

### 2.    There Is No Specific Jurisdiction Because the Controversy Does Not Arise Out of Binance's Contacts in Florida

To establish specific jurisdiction, Plaintiff's "*suit* must arise out of or relate to the defendant's contacts with the forum." *Iglesias*, 2020 WL 13367465, at *4 (quoting *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.* 137 S.Ct. 1773, 1779-80 (2017) (emphasis in original) (cleaned up). The Complaint is devoid of any facts to satisfy Plaintiff's burden to show that (1) Binance has "purposefully availed" itself to the Florida forum, (2) that Plaintiff's claims against Binance "arise out of or relate to" Binance's "contacts with" Florida; and (3) that the exercise of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018).

<u>First</u>, the Complaint is devoid of any *factual* allegations showing Binance "purposefully availed" itself of the Florida forum. Instead, the Complaint improperly alleges collectively that there is specific jurisdiction "over both Defendants because they (i) transact business in Florida; (ii) have substantial aggregate contacts with Florida; (iii) engaged in and are engaging in conduct that has and had a direct, substantial, and reasonably foreseeable, and intended effect of causing injury to persons in Florida; and (iv) purposely availed themselves to the laws of Florida." (Compl. ¶ 15.) The Complaint does not, however, make allegations specific to either Binance or BAM, which is a pleading deficiency that courts in this Circuit routinely find fails to meet Plaintiff's

burden as to personal jurisdiction. *See Sanho Corp. v. KaiJet Tech. Int'l Ltd., Inc.*, 2021 WL 2355096, at *5 (N.D. Ga. June 9, 2021); *Home Design Servs., Inc. v. David Weekley Homes, LLC*, 2007 WL 1080001, at *3 (M.D. Fla. Apr. 9, 2007) (plaintiff's group allegations failed to establish what actions individual defendants took to establish personal jurisdiction).

Plaintiff's allegations regarding Defendants' solicitation of customers in the *United States* are likewise insufficient to show Binance availed itself to the forum of *Florida*. Namely, a sizeable portion of the Complaint copies swaths of allegations from complaints filed by the SEC and CFTC regarding how Binance purportedly knowingly operated in the United States via customers' use of VPNs.[7] Regardless, there is not a single allegation in the Complaint regarding how Binance purposefully availed itself *specifically in Florida*. (*See* Compl. ¶ 39 (referencing ". . . customers were located *in 'U.S.*'"); *id.* ¶ 40 (referencing customers "located *in the United States*."); *id.* ¶ 50 (referencing customer traffic from the U.S.).) Finding personal jurisdiction here based on such generic allegations would be improper. *See Toll v. North*, 2022 WL 17412937, at *3 (S.D. Fla. Dec. 5, 2022) (merely making a website available is not "target[ing] [it to] a Florida audience in any way"); *Argos Global Partner Services, LLC v. Ciuchini*, 446 F. Supp. 3d 1073, 1092 (S.D. Fla. 2020) ("[T]he mere posting of…a website 'without more' is insufficient to demonstrate that Defendants purposefully aimed their activity toward Florida.").

---

[7] As a threshold issue, Plaintiff's reliance on allegations from a different complaint are improper and do not show plausible facts sufficient to satisfy the pleading standard. *Env't Prot. Comm'n of Hillsborough Cnty., Fla. v. Mercedes-Benz USA, LLC*, 2022 WL 4355666, at *4 (M.D. Fla. Sept. 20, 2022) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[N]either a complaint nor references to a complaint . . . may properly be cited in the pleadings"); *Brown v. Evans*, 2016 WL 69629, at *5 (N.D. Ill. Jan. 6, 2016) ("The allegations of a different complaint involving different facts and actors are irrelevant to Brown's claims before this Court."); *Del Puerto Water Dist. v. U.S. Bureau of Reclamation*, 271 F. Supp. 2d 1224, 1234 (E.D. Cal. 2003) ("To the extent their contents are in dispute, such matters of controversy are not appropriate subjects for judicial notice.").

Indeed, the facts and arguments raised by Plaintiff are identical to the those in *Guarini*, and there, Judge Middlebrooks found that the Court lacked jurisdiction over Binance. In *Guarini*, a Florida resident, represented by the same counsel as counsel for Plaintiff in this action, brought an action against an unknown thief and Binance for conversion, imposition of constructive trust, and disgorgement of funds based on the allegations that the thief stole cryptocurrency and deposited it into a Binance account. The plaintiff argued that there was personal jurisdiction over Binance because it conducted business in the U.S. through Binance.US. The Court held that:

> [T]he fact that Plaintiff was the victim of a crime in Florida committed by an unknown John Doe Defendant does not bear on Defendant Binance's contacts with the forum state. In order to establish that a defendant is carrying on business for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit. Factors relevant to this inquiry include: (1) the presence and operation of an office in Florida; (2) the possession and maintenance of a license to do business in Florida; (3) the number of Florida clients served; and (4) the percentage of overall revenue gleaned from Florida clients. Plaintiff's Amended Complaint contains no allegations that Defendant Binance satisfies any of these factors.

*Guarini v. Doe*, 2022 WL 20180341, at *4 (S.D. Fla. Apr. 5, 2022) (quotations omitted). The connection to Florida in this case is even less than in *Guarini* as Plaintiff is a New York resident (whereas Guarini was a Florida resident). Thus, just like in *Guarini*, the Complaint here is devoid of any allegations satisfying any of the factors to establish specific jurisdiction over Binance.

Second, the Complaint also contains no allegations indicating that Plaintiff's injury arose out of Defendants' contacts with Florida. *See Waite*, 901 F.3d at 1314 (holding "a tort 'arises out of or relates to' the defendant's activity in a state only if the activity is a 'but-for' cause of the [alleged] tort."). In all of Plaintiff's 32-page complaint, there are only 9 paragraphs dedicated to facts specific to Plaintiff and *none* contain allegations that any conduct occurred in Florida. (*See* Compl. ¶¶ 76-84.) Plaintiff is a New York resident (*id.* ¶ 4) and the Complaint contains absolutely no information about the identity of the hacker, including whether he resided or interacted with

Binance in Florida (or even in the United States). Courts routinely dismiss claims for lack of personal jurisdiction with similarly vague allegations. *See Hinkle v. Cirrus Design Corp.*, 775 F. App'x 545, 550 (11th Cir. 2019); *Schrier v. Qatar Islamic Bank*, 632 F.Supp.3d 1335, 1352-53 (S.D. Fla. Sept. 30, 2022) (Altman, J.); *Perry v. Ryan*, 2023 WL 2403889, at *3 (M.D. Fla. Mar. 8, 2023) ("[T]he complaint does not allege specific factual events or transactions involving Defendants that occurred in Florida."); *Bernsley*, 2022 WL 2915741, at *5 (Ruiz, J) (holding that plaintiff has not established specific personal jurisdiction where conduct giving rise to the complaint "occurred entirely in New York."); *see also Iglesias*, 2020 WL 13367465, at *7-8 (finding no specific jurisdiction where foreign defendant conducted business in Florida through a subsidiary, but did not have sufficient contacts itself, and the acts giving rise to the complaint all occurred outside of Florida).

Third, since the Complaint is devoid of facts supporting the first two prongs of this specific jurisdiction analysis, there is no need to ascertain whether exercising personal jurisdiction would comport with traditional notions of fair play and substantial justice. *See Waite*, 901 F.3d at 1313. However, it is clear that the exercise of such jurisdiction would offend due process given Binance's total lack of connections with, and presence in, Florida. *See Frida Kahlo Corp. v. Pinedo*, 2021 WL 4147876, at *6 (S.D. Fla. Sept. 13, 2021).

Lastly, Florida's long-arm statute does not support specific personal jurisdiction. "Under Florida's long-arm statute, specific jurisdiction can only be exercised over a defendant in causes of action that arise from a list of enumerated acts. And Florida's long-arm statute is strictly construed." *Guarini v. Doe*, 2022 WL 20180341, at *3 (S.D. Fla. Apr. 5, 2022) (cleaned up); *see* Fla. Stat. Ann. § 48.193(1). The Complaint fails to state which section of Florida's long-arm could be satisfied here, and it is completely devoid of non-conclusory facts that support Binance has

"operat[ed] a business venture" in Florida, "committ[ed] a tortious act" in Florida, or "solicit[ed]" any business in Florida that is the "but-for" cause of Plaintiff's claims. Fla. Stat. Ann. §§ 48.193(1)(a)(1), (1)(a)(2), (1)(a)(6)(a); *Waite*, 901 F.3d at 1314. As explained above, the Complaint does not allege that either the forum of Florida or any Florida resident has anything to do with this lawsuit.

### 3.     Plaintiff Has Not Carried the "Very Heavy Burden" of Establishing That Binance and BAM Are Alter Egos

In an effort to distance itself from the well-reasoned holding in *Guarini*, Plaintiff alleges that Binance is subject to personal jurisdiction because it is the so-called "alter ego" of an entirely separate legal entity, BAM. (Compl. ¶ 14.) The alter ego theory of personal jurisdiction is "a limited exception to the general, two-step process of establishing long-arm [personal] jurisdiction." *Frybarger v. Salemme*, 2022 WL 18530012, at *6 (S.D. Fla. Dec. 28, 2022). Under the alter ego theory, the Court may pierce the corporate veil and find that a foreign entity is subject to personal jurisdiction in Florida *only if* the Plaintiff alleges sufficient facts to establish that the foreign entity exerts so much control over a resident entity that the two do not exist as separate entities but are one and the same for purposes of jurisdiction. *See K3 Enterprises, Inc. v. Sasowski*, 2021 WL 8363506, at *5 (S.D. Fla. Nov. 22, 2021). A plaintiff seeking to pierce the corporate veil in Florida carries a "very heavy burden." *Iglesias*, 2020 WL 13367465, at *5 (S.D. Fla. Aug. 17, 2020). "To establish that a non-resident defendant corporation is an alter ego of a resident defendant, a plaintiff must show that (1) the non-resident defendant dominated and controlled the resident corporation to such an extent that the corporation's independent existence was in fact non-existent, (2) the corporate form was used fraudulently or for an improper purpose, and (3) the fraudulent or improper use of the corporate form caused injury to the plaintiff." *Sasowski*, 2021 WL 8363506,

at *3. Here, the allegations fall far short of satisfying Plaintiff's very heavy burden to justify piercing the corporate veil.

Plaintiff alleges virtually nothing based upon his own personal knowledge or information and belief to satisfy any of the elements needed to establish Binance and BAM are alter egos. First, the Complaint is devoid of any factual allegations regarding Binance's control over BAM. *Env't Prot. Comm'n of Hillsborough Cnty., Fla.*, 2022 WL 4355666, at *5 ("Simply noting that another entity has made allegations . . . does not provide sufficient detail to support the Commission's claims."). Plaintiff also makes no allegations that Binance used BAM for a fraudulent or improper purpose in this case. Likewise, there is no allegation that Binance's supposed control over BAM caused Plaintiff's injury. Indeed, there are no specific allegations that Plaintiff (or the hacker) interacted with BAM at all: Plaintiff alleges that an unknown hacker stole his cryptocurrency maintained in Coinbase, a different cryptocurrency exchange, and then deposited Plaintiff's stolen cryptocurrency into "three Binance recipient addresses"; and that his injury was caused because "*Binance* had actual knowledge" that the stolen cryptocurrency was deposited into its accounts, that "*Binance* had the ability to freeze" the transactions but "*Binance* . . . failed to do so." (Compl. ¶¶ 72-74, 76-81 (emphasis added).) There is not a single allegation regarding any conduct by BAM that resulted in Plaintiff's injury, or that Binance's control over BAM allowed the hacker to steal his cryptocurrency and allegedly deposit it into Binance accounts.

Given the dearth of substantive allegations against BAM, it is apparent that Plaintiff included BAM in in this case solely for purposes of attempting to artificially create personal jurisdiction over Binance. But courts in this District and others have already rejected this alter ego theory. *See Guarini*, 2022 WL 20180341 at **3-4 (dismissing action against Binance for lack of personal jurisdiction finding that BAM is not actually affiliated with Binance such that its contacts

can be imputed to Binance); *Miro v. Doe*, 2023 WL 2734374, at *3 (S.D. Fla. Mar. 31, 2023) (dismissing action against Binance for lack of personal jurisdiction, rejecting alter-ego theory, and explaining that "Binance.US is an entirely different entity from Defendant and should not be conflated with Defendant in this action."); *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1008 (N.D. Cal. 2020) ("Binance is not subject to personal jurisdiction as BAM's alter ego."); *Gadasalli v. Bulasa*, 2023 WL 3586424, at *4 (E.D. Tex. May 22, 2023) ("The Court will reject [Plaintiff's] theory that it may exercise personal jurisdiction [over Binance] based on a theory of alter ego."). The Court should find similarly and conclude that Plaintiff has not carried the heavy burden necessary to pierce the corporate veil.

**C.     Plaintiff's Complaint Should Be Dismissed Because It Fails to State a Claim**

> **1.     Under Florida's Choice of Law Rules, Plaintiff's Claims Are Subject to New York Substantive Law**

Plaintiff's claims for conversion and aiding and abetting conversion (the "Conversion Claims") are governed by New York law. Florida's choice-of-law rules dictate that the "'most significant relationship test' outlined in the Restatement (Second) of Conflict of Laws[,]" be used to determine the applicable law for the Conversion Claims. *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1299 (S.D. Fla. 2017). In cases involving alleged cyber-torts where the alleged situs of the injury is ostensibly unknown, courts have explained the "location of the breach itself is fortuitous[,]" (*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1199 (S.D. Fla. 2022)), and have instead looked toward where the plaintiff *felt* the injury. *See, e.g.*, *Bandyopadhyay v. Defendant 1*, 2023 WL 2263552, at *4 (S.D. Fla. Feb. 28, 2023) ("The State of Washington has the most significant relationship to the occurrence and the parties because Plaintiff suffered substantial damages and is a resident and citizen of the State of Washington[.]").

Here, we know Plaintiff is a citizen of New York, and that is the location where Plaintiff ostensibly felt the alleged injury, so under *Bandyopadhyay*, New York law applies to the Conversion Claims.

Plaintiff's claim for unjust enrichment is likewise governed by New York law. Florida applies "lex loci contractus" to determine the law applicable to this contract implied-in-law claim. *See Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc*., 92 F.3d 1110, 1119-20 (11th Cir. 1996). "Under this rule, an implied-in-law contract is created where the last act necessary to complete the contract is made." *ThunderWave, Inc. v. Carnival Corp*., 954 F. Supp. 1562, 1564 (S.D. Fla. 1997) (citation omitted); *see also HostLogic Zrt. v. GH Int'l, Inc*., 2014 WL 2968279, at *8 (M.D. Fla. June 30, 2014) (applying Florida law because "the last necessary act for the unjust enrichment claim occurred in Florida[.]"). Here, the Complaint only alleges that the Plaintiff felt the alleged injury in New York, where he is located, which may be the ostensible location of where the "last necessary act" for the unjust enrichment claim occurred. In the event this Court were to find Florida law (*i.e*., the forum's law) applies to Plaintiff's claims, Defendants also analyze Florida law for the sake of completeness.

### 2.      Plaintiff Fails to State a Claim for Conversion

Plaintiff fails to state a claim for conversion. A "conversion takes place when someone," (1) "intentionally and without authority," (2) "assumes or exercises control over personal property belonging to someone else," and (3) interferes "with that person's right of possession[.]" *Alrai Naked Opportunity LLC v. Naked Brand Group Ltd.*, 2019 WL 5595157, at *4 (N.Y. Sup. Ct. Oct. 30, 2019) (citations omitted). The first element, *i.e*., intent, may be properly stated if the plaintiff pleads that it made a prior demand for the return of the alleged converted property. *See SH575 Holdings LLC v. Reliable Abstract Co., LLC*, 195 A.D.3d 429, 430-31, 149 N.Y.S.3d 62, 64 (2021) (dismissing conversion claim and explaining "even if the funds were specifically identifiable,

plaintiff still failed to plead a claim. It is undisputed that plaintiff [did] not ma[k]e demands for return of the funds upon the moving defendants.") (citations omitted) (cleaned up).[8]

The Complaint fails to establish any of these three elements of conversion. First, the Complaint is devoid of any allegations of intent or any corresponding demand to return the assets. There are no non-conclusory statements alleging that Binance (or BAM) *intended* to deprive Plaintiff or the purported class of their cryptocurrency or crypto assets. Indeed, there is no allegation that Plaintiff alerted Binance that his stolen currency was deposited on Binance's exchange, demanded its return, and that Binance refused to return it. *See SH575 Holdings LLC*, 195 A.D.3d at 430-31 (dismissing conversion claim for failing to state prior demand).

Second, the Complaint does not state, let alone establish, that Binance (or BAM) asserted any dominion, let alone intentional wrongful dominion, over the cryptocurrency or crypto assets in question. The Complaint does not assert that either Binance or its affiliates hold title to any of the digital assets that users hold or transfer on Binance affiliated exchanges, nor does it allege that Binance asserted, let alone intended to assert, legal dominion and/or control over the assets. *See, e.g.*, *McKinnon Doxsee Agency, Inc. v. Gallina*, 187 A.D.3d 733, 738, 132 N.Y.S.3d 144, 149 (2020) (affirming dismissal of conversion claim because plaintiff failed to show "the defendant exercised an unauthorized dominion"). Moreover, the Complaint fails to sufficiently state that "the personal property" belonging to Plaintiff is unsegregated and specifically identifiable. *SH575*

---

[8] Under Florida law, the elements of a conversion claim are similar: (1) an act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with his ownership therein. *See, e.g., Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, 2008 WL 660100, at *4 (S.D. Fla. Mar. 7, 2008). Similar to New York law, "the essence of conversion is not the possession of property by the wrongdoer, but rather such possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property, which intent may be, but is not always, shown by demand and refusal." *Gibson v. BTS North, Inc.*, 2018 WL 888872, at *9 (S.D. Fla. Feb. 14, 2018) (quoting *Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman)*, 450 So. 2d 1157, 1161 (Fla. 3d DCA 1984).

*Holdings LLC v. Reliable Abstract Co.*, *LLC*, 195 A.D.3d 429, 430, 149 N.Y.S.3d 62, 63 (2021) (affirming dismissal of conversion claim and explaining "[a]s the account is unsegregated, plaintiff's funds, upon their transfer therein, became commingled with monies that were already in it, rendering them no longer specifically identifiable.").

In fact, the Complaint suggests the opposite—that crypto assets are commingled and not specifically identifiable—vitiating its own claim for conversion. (*See* Compl. ¶ 63 ("Binance lacks internal controls to ensure that customer funds are identifiable and segregated from company revenues, and therefore regularly comingles customer assets with its own.").) Also, the Complaint fails to allege in a non-conclusory manner that the Plaintiff had anything more than a right to repayment for the dollar-value of the crypto assets. *See Alrai Naked Opportunity LLC v. Naked Brand Group Ltd.*, 2019 WL 5595157, at *5 (N.Y. Sup. Ct. Oct. 30, 2019) ("[M]ere right to payment . . . is not sufficient to establish a 'present possessory interest for purposes of a conversion claim'") (citations omitted).

Third, the Complaint fails to sufficiently allege that Binance (or BAM) "interfere[ed] with [Plaintiff's] right of possession," *Alrai Naked Opportunity LLC*, 2019 WL 5595157, at *4, because the Complaint fails to state that Binance was the cause of the alleged conversion. To establish this element, the plaintiff must show, among other things, that plaintiff possessed or controlled the property prior to its conversion. *Aramony v. United Way of Am.*, 949 F. Supp. 1080, 1086 (S.D.N.Y. 1996) (citing *Peters Griffin Woodward, Inc., v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't 1982)).  Here, Plaintiff's crypto assets were stolen by a third-party hacker, and the hacker, not Plaintiff, allegedly possessed and deposited those assets on Binance's exchange. *See also Coughlan v. Jachney*, 473 F. Supp. 3d 166, 199-200 (E.D.N.Y. 2020) (citing cases) (explaining the complaint must state that the *defendant* exercised the unauthorized

"dominion over the thing in question [at] the exclusion of plaintiff's rights."). For these reasons, Plaintiff's conversion claim should be dismissed.

### 3.      Plaintiff Fails to State a Claim for Aiding and Abetting Conversion

Plaintiff also fails to state a claim for aiding and abetting conversion. Aiding and abetting conversion requires (1) "the existence of a primary violation," (2) "actual knowledge of the violation on the part of the aider and abettor," and (3) "substantial assistance." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009).[9]

The Complaint does not plead any basis for the required element that Binance (or BAM) had "actual knowledge" of the hacker's theft and laundering of Plaintiff's stolen digital assets. (Compl. ¶ 107.) "[P]leading knowledge for purposes of an aiding and abetting claim requires allegations of facts that give rise to a 'strong inference' of actual knowledge." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021) (quoting *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,* 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007)). Allegations that the defendant "should have known of the conduct" are insufficient to raise an inference of actual knowledge. *See, e.g.*, *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010); *Berdeaux*, 561 F. Supp. 3d at 412 ("[C]onstructive knowledge is not sufficient, nor is 'a lower standard such as recklessness or willful blindness.'") (quotations omitted). Other than trying to impute BAM's Know Your Customers ("KYC") and Anti-Money Laundering ("AML") obligations on Binance, the Complaint contains no allegations allowing even a reasonable inference that Binance actually

---

[9] Under Florida law, the elements of this claim are substantially similar. *Pearson v. Deutsche Bank AG*, 2022 WL 951316, at *7 (S.D. Fla. Mar. 30, 2022). Similar to New York law, Florida law requires a showing of "actual" knowledge. *See Perlman v. Wells Fargo Bank, N.A.*, 559 F. App'x 988, 993 (11th Cir. 2014) ("Merely alleging a series of red flags—that a bank should have known of a Ponzi scheme based solely on a series of purportedly atypical transactions—is not sufficient [enough] to [state a claim.]") (emphasis added).

knew that the alleged hacker was depositing stolen cryptocurrency.[10] Even assuming such obligations were applicable to Binance during the time period in question (which they were not), there are no allegations at all supporting the notion that Binance's adherence to those obligations would establish the requisite actual knowledge that the assets were stolen. Plaintiff alleges nothing regarding the hacker's identity that would allow Binance or the Court to determine whether Binance would have had information that would have raised even a suspicion, let alone actual knowledge, of impropriety. For example, the Complaint simply alleges that Plaintiff's stolen crypto assets were "transferred to a High Risk wallet (ICGMU9***) which is [supposedly] known … to been maintained by suspected criminals or dark web users[.]" (Compl. ¶ 78.) Aside from being a wholly conclusory statement based on conjecture, *SH575 Holdings LLC*, 195 A.D.3d 429, 431, 149 N.Y.S.3d 62, 64 (2021) (dismissing aiding and abetting conversion claim because the relevant allegations towards actual knowledge and substantial assistance "were largely made upon information and belief, and based on conjecture"), the allegation does permit a reasonable inference that Binance knew anything. *See ALP, Inc. v. Moskowitz*, 204 A.D.3d 454, 460 (2022) ("The complaint does not allege that Luntz had the requisite knowledge of Moskowitz's and the Bender Ciccotto defendants' conversions of funds or assets[.]"); *Lenczycki v. Shearson Lehman Hutton, Inc*., 238 A.D.2d 248 (1997) ("[P]laintiff's claim…for aiding and abetting that conversion was properly dismissed in the absence of evidence that they knew of [the wrongdoer's] intention to convert the funds."). At most, under the most strained of interpretations, these allegations

---

[10] Again, there are no allegations that Plaintiff or the criminal hacker interacted with BAM. Instead, Plaintiff relies solely on the SEC's complaint against Binance and the SEC's alter ego theory to impute certain KYC and AML obligations on Binance. This has yet to be resolved, and such obligations have yet to be established on Binance. *See Securities and Exchange Commission v. Binance Holdings Limited et al*., Case 1:23-cv-01599 (D.D.C.) and *Commodity Futures Trading Commission v. Binance Holdings Limited, et al*., 1:23-cv-01887 (N.D. Ill).

amount to "red flags" concerning the subject account. But "red flags" or suspicions are uniformly insufficient to state an aiding and abetting claim. *See Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021) (holding that the existence of several red flags indicating suspicious account activity alone is insufficient to establish actual knowledge); *Chemtex, LLC v. St. Anthony Enters., Inc*., 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) (holding allegations that the defendant ignored *obvious* warning signs of fraud are not sufficient to allege "actual knowledge").

Given the Complaint fails to plead actual knowledge, it logically follows that substantial assistance cannot be shown either. *Cf. Vasquez v. Hong Kong & Shanghai Banking Corp. Ltd.*, 2019 WL 2327810, at *18 (S.D.N.Y. May 30, 2019) (concluding there was no substantial assistance where there was no freestanding duty owed by bank to plaintiffs, notwithstanding court's finding that bank had actual knowledge of fraud). Since there are no allegations permitting an inference that Binance (or BAM) had knowledge that the subject cryptocurrency was stolen, Binance could not have "helped conceal" or "affirmatively assisted" a conversion that Binance knew nothing about. *See Huang v. Hong Kong & Shanghai Banking Corp. LTD*, 2022 WL 4123879, at *5 (S.D.N.Y. Sept. 9, 2022) ("[T]he law in New York is clear that a bank's performance of routine banking transactions does not constitute substantial assistance in another's tort.") (citing cases); *Berdeaux*, 561 F. Supp. 3d at 416 ("Inaction on the part of the alleged aider and abettor 'ordinarily should not be treated as substantial assistance[.]'"). Thus, this claim should also be dismissed.

### 4.     Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff also fails to state a claim for unjust enrichment. To state a claim for unjust enrichment a plaintiff must plausibly state "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110

(2011). "The essence of such a cause of action is that one party is in possession of money or property that rightly belongs to another." *Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*, 31 A.D.3d 983, 988 (2006).[11]

As a threshold matter, Plaintiff's unjust enrichment claim is duplicative of the conversion and aiding and abetting claims, which provide an adequate remedy at law. *See Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 81, 883 N.E.2d 990 (2008). Indeed, a claim for unjust enrichment cannot survive a motion to dismiss where it "simply duplicates, or replaces, a conventional contract or tort claim," even if the contract or tort claims are not otherwise legally viable. *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 740 (2012); *Steinberg v. Sherman*, 2008 WL 1968297, at *5 (S.D.N.Y. May 2, 2008) (dismissing unjust enrichment claim where it seeks same relief as conversion claim, which provides for an adequate remedy at law).

Even if this Court were to entertain this unjust enrichment claim, it should be dismissed because Binance was not enriched at Plaintiff's "expense[.]" *Mandarin Trading Ltd.*, 16 N.Y.3d at 182. In *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142 (2009), the plaintiff asserted an unjust enrichment claim against Morgan Stanley asserting that it must disgorge certain profits that were allegedly wrongfully made at the plaintiff's expense. The court dismissed the unjust enrichment claim and explained "[i]n seeking Morgan Stanley's profits . . . IDT does not, and cannot, allege that Morgan Stanley has been unjustly enriched at IDT's expense, because IDT did not pay the alleged fees." *Id.* Here, Plaintiff similarly prays for Defendants to "reimburse . . . the transactions fees, and disgorge their ill-gotten gains . . . ." (Compl. ¶ 119.) But

---

[11] A claim for unjust enrichment is substantially similar under Florida law. *See AIM Recycling Fla., LLC v. Metals USA, Inc.*, 2019 WL 1991946, at *1 (S.D. Fla. Mar. 4, 2019); *Johnson v. Chase Bankcard Servs., Inc.*, 582 F. Supp. 3d 1230, 1236 (M.D. Fla. 2022), *appeal dismissed*, 2022 WL 3716649 (11th Cir. June 24, 2022).

the Complaint fails to allege that Plaintiff paid these fees or that these transaction fees were taken from Plaintiff's cryptocurrency.

Furthermore, New York courts uniformly hold that "a plaintiff cannot succeed on an unjust enrichment claim unless it has a sufficiently close relationship with the other party." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516-518 (2012) (dismissing unjust enrichment claim because plaintiff and defendant's relationship was "too attenuated" provided they "had no dealings with each other" nor "any contact regarding the purchase transaction" which formed basis for unjust enrichment claim) (citing cases); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d at 1111 (dismissing unjust enrichment claim because complaint failed to state "a relationship between the parties that could have caused reliance or inducement[,]" or "at least an awareness by [defendant] of [plaintiff]'s existence."). Similar to *Georgia*, there are no allegations that Binance had "any dealings" or "any contact" with Plaintiff regarding the alleged wrongful transfer of crypto assets into and out of its exchange or that Binance was even aware of Plaintiff's existence. *See id.*

### 5. Plaintiff Fails to State a Claim Against BAM Because There Are No Independent Allegations of Wrongdoing by BAM

As discussed above, Plaintiffs allege no independent wrongdoing on the part of BAM. Instead, Plaintiffs attempt to impute liability from Binance to BAM, alleging that the entities acted as alter egos of one another. But, as explained in section III(B)(3), *supra*, Plaintiff has not carried the very heavy burden of establishing that Binance and BAM are alter egos for jurisdictional purposes.[12] The Court should find similarly here, side with the other courts that have rejected this flawed theory, and conclude that Plaintiff has not met the heavy burden necessary to pierce the

---

[12] The three-factor analysis for piercing the corporate veil to impute jurisdiction and liability are the same. *Compare Sasowski*, 2021 WL 8363506, at *3 with Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011).

corporate veil. *See Guarini*, 2022 WL 20180341 at *3; *Reynolds*, 481 F. Supp. 3d at 1008; *Gadasalli*, 2023 WL 3586424, at *4.

**D.      The Class Allegations Should Be Dismissed Because the Complaint Does Not Plausibly Allege the Required Elements to Proceed As a Class Action**

Courts in this District and throughout the Eleventh Circuit routinely dismiss class allegations at the pleading stage where the complaint fails to plausibly allege the required elements of class claims. *King v. UA Local 91*, 2020 WL 4003019, at *7 (N.D. Ala. July 15, 2020). In the Eleventh Circuit  there is a presumption against class proceedings "because class actions are an exception to our constitutional tradition of individual litigation." *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1233 (11th Cir. 2016). As the party seeking to overcome this presumption, Plaintiff bears the burden of establishing that a class can be certified, which he must do by plausibly alleging the four Rule 23(a) requirements *and* at least one alternative requirement of Rule 23(b). *King*, 2020 WL 4003019, at *7.

Plaintiff's class allegations must be dismissed because the Complaint fails to plausibly allege numerosity, ascertainability, or predominance. As to numerosity and ascertainability, Plaintiff's Complaint pleads in a conclusory fashion that the number of people who have had their crypto assets stolen off of Coinbase and laundered through Binance is "so numerous that individual joinder of all class members is impracticable," (Compl. ¶ 87), but the Complaint does not plausibly allege, or identify, even one other person, let alone at least forty others, that have experienced a similar hack and theft. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986), *cert. denied*, 479 U.S. 883 (1986); *see also Adkins v. Morgan Stanley*, 307 F.R.D. 119, 137 (S.D.N.Y. 2015), *aff'd*, 656 F. App'x 555 (2d Cir. 2016). In fact, Plaintiff's proposed class fails on its face as a matter of law for the even more obvious and fundamental reason that it is impossible to identify any of the other class members.  Neither Plaintiff nor Defendants have any way of

ascertaining which wallets and accounts are holding stolen assets.   Thus, there is no way to notify class members of the action, provide an opportunity to opt out, calculate damages, or distribute any settlement or judgment.

Even if it were possible to identify other members of the class, Plaintiff's class allegations should be dismissed because the Complaint does not adequately plead that issues subject to generalized proof do not predominate over issues subject to individualized proof.   To the contrary, the conversion, aiding-and-abetting, and unjust enrichments claims will all require an individualized showing of theft by a hacker and intent or knowledge by the Defendants, which will require a mini-trial for each class member.   *See Jim Moore Ins. Agency, Inc. v. State Farm Mut. Auto. Ins. Co.*, 2003 WL 21146714, at *8 (S.D. Fla. May 6, 2003); *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009); *Pearson v. Deutsche Bank AG*, 2022 WL 951316, at *7 (S.D. Fla. Mar. 30, 2022).

First, with respect to Plaintiff's conversion claim, he and the rest of the class will be required to show that a specific and identifiable amount of crypto assets were taken. *See Coughlan v. Jachney*, 473 F. Supp. 3d 166, 199-200 (E.D.N.Y. 2020) (citing cases); *Gulf Coast Produce, Inc. v. Am. Growers, Inc.*, 2008 WL 660100, at *4 (S.D. Fla. Mar. 7, 2008).   The Complaint fails to state in a non-conclusory manner how it would be possible to ascertain each class members' type and amount of crypto assets that were taken, in the first instance, and whether those assets were in fact stolen, without requiring a mini-trial with respect to each class member. *See Jim Moore Ins. Agency, Inc.*, 2003 WL 21146714, at *8. And, it defies logic that Binance or anyone else could somehow identify any others who had allegedly had stolen funds placed into a wallet on a Binance exchange by an unidentified hacker. *See Wallace v. VF Jeanswear Ltd. P'ship*, 2020 WL 999341, at *6 (N.D. Ala. Mar. 2, 2020) (Kallon, J).

Second, with respect to Plaintiff's aiding and abetting conversion claim, he and the rest of the class will be required to show that Binance had "actual knowledge" of each underlying tort. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009); *Pearson v. Deutsche Bank AG*, 2022 WL 951316 at *7 (S.D. Fla. Mar. 30, 2022). The Complaint fails to state how Binance would possibly have actual knowledge with respect to each instance of theft and each hacker's alleged laundering of crypto assets through Binance, and this certainly would not be possible without requiring a mini-trial for each act of conversion.

Third, Plaintiff's unjust enrichment claims, which are rarely ever subject to class certification, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274-75 (11th Cir. 2009), seek to disgorge the profits Binance made from allegedly receiving transaction fees for allegedly permitting the wrongdoer to transfer stolen assets on to and from its exchange. (Compl. ¶¶ 115-119.)  If Binance's transaction fees vary based on the amount and type of crypto asset transferred, then this would require each class member to put forth individualized proof to show their damages. The complaint fails to state in a non-conclusory manner how it would be possible to ascertain these alleged damages, especially if such stolen funds are commingled with other stolen or non-stolen funds, without a showing of individualized proof with respect to each class member.

For these reasons, it is clear on the face of the Complaint that no class can be ascertained, let alone certified.  Therefore, the class allegations should be struck now, rather than later

## IV.    CONCLUSION

In conclusion, Defendants respectfully request that this Court compel Plaintiff to arbitrate his purported claims because he is suing based on, and seeking benefits arising from, Binance's Terms, which include a mandatory arbitration clause.  Alternatively, this Court should dismiss this case with prejudice for lack of jurisdiction and failure to state a claim because, as many courts

inside and outside of this District have repeatedly held, there is no basis to establish jurisdiction over Binance and Plaintiff's pleading deficiencies are incurable by amendment.

## V.  <u>REQUEST FOR HEARING</u>

Pursuant to S.D. L.R. 7.1(b)(2), Defendants respectfully request oral argument on this motion.  Given the different legal issues in the motion, Defendants believe that an opportunity to address any questions the Court may have concerning these issues may assist the Court. Defendants estimate that ninety minutes will be a sufficient amount of time.

## VI.  <u>S.D. FLA. L.R. 7.1(A)(3) CERTIFICATION</u>

Pursuant to S.D. L.R. 7.1(a)(3), counsel have met and conferred and were unable to come to an agreement on the requested relief herein.

Dated: July 21, 2023

By: *Aaron S. Weiss*
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
Telephone: 305-530-0050

Christopher N. LaVigne (pro hac vice)
christopher.lavigne@withersworldwide.com
Withers Bergman LLP
430 Park Avenue, 10th Fl.
New York, New York 10022
Telephone: 212-848-9800

*Counsel for Defendant Binance Holdings,*
*LTD. d/b/a Binance*

By: *Adam M. Foslid*
Adam M. Foslid (FBN 682284)
Email: afoslid@winston.com
Winston & Strawn LLP
200 S. Biscayne Blvd., Ste. 2400
Miami, Florida 33131
Telephone: 305-910-0646

*Counsel for Defendant BAM Trading*
*Services Inc. d/b/a Binance.US*