UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-22083 RAR

**MICHAEL OSTERER**, *individually and on behalf of all others similarly situated*,

    Plaintiff,

v.

**BAM TRADING SERVICES INC**. d/b/a **BINANCE.US**, *a Delaware corporation*, and **BINANCE HOLDINGS, LTD**. d/b/a **BINANCE**, *a foreign company*,

    Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION

**THIS CAUSE** comes before the Court upon Defendant Binance Holdings, Ltd. ("Binance") and Defendant BAM Trading Services Inc.'s ("BAM") Motion to Compel Arbitration ("Motion"), [ECF No. 49]; Plaintiff's Response in Opposition, [ECF No. 52]; Defendants' Reply in Support of their Motion, [ECF No. 55]; and Defendants' Notice of Filing Supplemental Authority, [ECF No. 65]. Having carefully considered the Motion, the related briefing, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that the Motion, [ECF No. 49], is **GRANTED** for the reasons set forth herein.

### BACKGROUND

Binance was founded in 2017 as a foreign cryptocurrency exchange that allows its users to purchase and trade cryptocurrencies and digital assets such as Bitcoin ("BTC") and Ether ("ETH"). Complaint, [ECF No. 1], ¶¶ 6–8. BAM is a separate and independent cryptocurrency exchange

that operates in the United Sates.  Compl. ¶ 9.  Before a user can deposit, withdraw, or trade assets on Binance's exchange, the user must first register and create an account with Binance.  *See* Terms of Use ("Terms"), [ECF No. 49-1] at 1.  To create an account, the user must read and agree to Binance's Terms by affirmatively checking a box confirming that they "agree to Binance's Terms of Use."  *Id.*  The words "Terms of Use" in this sentence are hyperlinked to the Terms themselves.  *Id.*

The Terms plainly explain that the "Terms constitute a legal agreement and create a binding contract" between the user and Binance.  Terms § II.1.a.  Additionally, the Terms give Binance "the right to immediately suspend your Binance Account (and any accounts beneficially owned by related entities or affiliates), freeze or lock the Digital Assets or funds in all such accounts, and suspend your access to Binance for any reason . . . ."  *Id.* § VI.1.  Users also agree to confer on Binance "the right . . . to permanently freeze (cancel) the authorizations of your Binance Account on Binance and withdraw the corresponding Binance Account" in case of certain events.  *Id.* § VI.2.

Additionally, as is relevant here, the Terms bind both the user and Binance to mandatory binding arbitration.  *Id.* § X.2 ("Arbitration Provision").  The Arbitration Provision provides that:

> You and Binance Operators agree that, subject to paragraph 1 above, *any dispute, claim, or controversy* between you and Binance (and/or Binance Operators) arising in connection with or relating in any way to these Terms or to your relationship with Binance (and/or Binance Operators) as a user of Binance Services (*whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and whether the claims arise during or after the termination of these Terms*) *will be determined by mandatory final and binding individual (not class) arbitration*, except as set forth below under Exceptions to Agreement to Arbitrate.

Arbitration Provision (emphasis added).  The Arbitration Provision also provides: "[t]hese Terms (including this arbitration agreement) shall be governed by, and construed in accordance with, the

laws of Hong Kong" administered in English by the Hong Kong International Arbitration Centre ('HKIAC')." *Id.*

Additionally, the Terms include a provision providing that any threshold questions as to, among others, the jurisdiction, applicability, or scope of the Arbitration Provision are subject to mandatory arbitration. Terms § X.2 ("Delegation Provision"). Specifically, the Delegation Provision states:

> You and Binance Operators further agree that the arbitrator shall have the exclusive power to rule on his or her own jurisdiction, including without limitation any objections with respect to the existence, scope or validity of the Agreement to Arbitrate, or to the arbitrability of any claim or counterclaim . . . .

Delegation Provision.

Turning now to the allegations unique to this case, Plaintiff maintained an account at U.S.-based cryptocurrency exchange Coinbase. Compl. ¶ 76. Plaintiff alleges that, on or about April 7, 2021, an unauthorized person or persons infiltrated Plaintiff's Coinbase account and stole approximately 8 BTC and 449 ETH from Plaintiff. Compl. ¶ 77. Plaintiff further alleges that the approximately 8 BTC and the 449 ETH transferred from Plaintiff's Coinbase account were routed into several Binance accounts. Compl. ¶¶ 78–82. Under Binance's policies, the unknown depositor was not required to provide any sort of identification prior to making the deposit because each deposit was under 2 BTC. Compl. ¶ 82. The hacker allegedly later withdrew the stolen funds from the Binance accounts and absconded with the money. Compl. ¶¶ 78–81.

Plaintiff alleges that Defendant Binance's "policies and failures" were the direct and proximate cause of the financial harm he suffered. Compl. ¶ 84. Plaintiff claims that Binance could have frozen the alleged hacker's accounts and stopped their transactions "before some or all of the stolen cryptocurrency left the Binance exchange." Compl. ¶¶ 72–73. Plaintiff similarly

alleges that Binance knowingly engaged in this allegedly culpable conduct "for the purpose of earning Binance transaction fees . . . ." Compl. ¶ 75. As a result, Plaintiff claims that he is entitled to damages, including the disgorgement of fees purportedly collected by Binance on the hacker's alleged transactions. Compl. ¶¶ 1, 3.

## LEGAL STANDARD

The Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"). Under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that there is an "issue referable to arbitration under an agreement in writing for such arbitration[.]" *See* 9 U.S.C. § 3; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . ."). "[A]ny doubts" concerning the arbitrability of a dispute "should be resolved in favor of arbitration[.]" *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022). Under the FAA, a district court must compel arbitration if (1) a valid written agreement to arbitrate exists, (2) an arbitrable issue exists, and (3) the right to arbitrate has not been waived. *Integrated Sec. Servs. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1324 (S.D. Fla. 2009).

## ANALYSIS

**I. The Court has jurisdiction to determine threshold issues regarding the validity of the Arbitration and Delegation Provisions.**

The FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Like any contract, "parties can form multiple levels of agreements concerning arbitration." *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024). In addition to agreeing to an arbitrator resolving disputes on the merits, the parties

Page **4** of **12**

can also "agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes." *Id.* (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019)). The Supreme Court has recognized that parties can use these so-called "delegation provisions" to agree to arbitrate threshold issues "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70.

A party may resist an arbitration agreement by asserting one of two types of challenges under § 2 of the FAA. The first type "challenges specifically the validity of the agreement to arbitrate," while the second "challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006)). Only the first type of challenge may defeat a delegation provision. *Id.* Thus, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* And when the challenge to one part of the contract "applies 'equally' to the whole contract and to an arbitration or delegation provision, *a court* must address that challenge." *Coinbase, Inc.*, 144 S. Ct. at 1194 (emphasis added).

Here, Defendants maintain the Court lacks jurisdiction to address the validity of the Arbitration and Delegation Provisions because Plaintiff has not specifically challenged their enforceability. Reply at 3. But Plaintiff has specifically disputed the validity of the Arbitration and Delegation Provisions by arguing that he never agreed to them, maintaining that "[t]here exists no evidence, let alone clear and unmistakable evidence, that Plaintiff did, or even could, agree to arbitrate with Defendants; given that Plaintiff had no idea his cryptocurrency would be stolen and

deposited into Binance accounts." Resp. at 14. Clearly, in disputing the very existence of an agreement, Plaintiff is contesting the enforceability and validity of the Arbitration and Delegation Provisions. *See Coinbase, Inc.*, 144 S. Ct. at 1194. ("Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute."). Accordingly, the Court has jurisdiction to determine threshold issues regarding the enforceability and validity of the Arbitration and Delegation Provisions.[1]

## II. There is a valid agreement to arbitrate under the doctrine of equitable estoppel.

Having found that it has jurisdiction to answer the question, the Court now turns to whether there was a valid agreement to arbitrate.

While there is generally a presumption in favor of arbitration, the presumption "does not apply to the determination of whether an arbitration agreement exists." *Dasher v. RBC Bank (USA),* 745 F.3d 1111, 1115–16 (11th Cir. 2014). Instead, the Court must "apply ordinary state-law principles that govern the formation of contracts" when determining if a valid agreement to arbitrate exists. *Id.* (citations omitted). Additionally, under the doctrine of equitable estoppel, a party may compel arbitration against a non-signatory to a contract if the "plaintiff is relying on a contract to assert its claims and [ ] the scope of the arbitration clause in that contract covers the dispute." *Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018).[2]

---

[1] Defendants themselves note that "Plaintiff only posits that because the arbitration provision 'uses the following language: 'any dispute, claim, or controversy between you and Binance (and/or Binance Operators) arising in connection with or relating in any way to these Terms or your relationship with Binance,' the delegation provision is unenforceable." Reply at 3 (emphasis added). Thus, Defendants' argument that Plaintiff has not challenged the validity of the Arbitration and Delegation Provisions is entirely misplaced.

[2] The Court agrees with Defendants that it need not engage in any choice-of-law analysis here because there is no conflict among the potentially applicable laws with respect to the doctrine of equitable estoppel. *In re January 2021 Short Squeeze Trading Litig.*, 584 F. Supp. 3d 1161, 1179 (S.D. Fla. 2022) ("Under

Here, the parties agree that it was the unknown hacker, not Plaintiff, who agreed to the Terms containing the Arbitration Provision.  Mot. at 11; Resp. at 5.  Nevertheless, Defendants argue that Plaintiff is bound by the Arbitration Provision under well-settled principles of equitable estoppel.  Mot. at 11.  Specifically, Defendants argue that Plaintiff's theory of liability against Defendants requires that "(1) Binance could have, but did not, freeze Plaintiff's allegedly stolen cryptocurrency assets; and (2) Binance failed to do so in order to earn transaction fees."  Mot. at 13.  Defendants argue that Binance's legal right "to suspend, freeze or lock [] assets and accounts, and to collect fees based on [] transactions on the exchange" is created only by the Terms.  *Id.* (citing to Terms § II(D)(1)).  Plaintiff responds that his theory of liability encompasses many other practices including inadequate anti-money laundering protocols, lack of identification requirements, lack of internal controls, and failure to comply with various regulatory schemes. Resp. at 8–9.

The Court finds *Blinco v. Green Tree Servicing LLC* to be instructive here.  There, two married plaintiffs, Mr. and Mrs. Blinco, sued a group of defendants for alleged violations of the Real Estate Settlement Procedures Act ("RESPA") for failing to provide a required notice under RESPA.  *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1310 (11th Cir. 2005) *abrogated*

---

Florida's choice-of-law rules, courts need not decide a choice-of-law dispute unless a true conflict of laws exists[.]").  Florida law (forum), federal common law, and Hong Kong law (selected by the Terms' choice-of-law provision) all apply the doctrine of equitable estoppel in the same way to bind a non-signatory to a contract's arbitration provision when the non-signatory relies on the contract to state his claims.  *Tiffany Tate & Quantum Luxury Props., LLC v. Ibis Prop. Owners Ass'n*, No. 17-81005, 2018 WL 11585481, at *6 (S.D. Fla. Feb. 20, 2018) (applying Florida law and binding non-signatory to contract containing arbitration provision under "direct benefits" theory of estoppel because the non-signatory's suit sought to benefit under contract); Declaration of Sherlin Tung ("Tung Decl."), [ECF No. 49-2], ¶ 15 (recognizing that "in the appropriate circumstances, non-signatories may be bound to written arbitration agreements under the theory of estoppel.") (citing *Dickson Valora Group (Holdings) Co., Ltd. v. Fan Ji Qian*, [2019] HKCFI 482 (binding, under Hong Kong law, non-signatory to arbitration clause where non-signatory sought to enforce contractual rights under contract containing arbitration clause)); *Shamsi v. Levin*, No. 17-80372, 2017 WL 7803807, at *4 (S.D. Fla. Oct. 27, 2017) (applying federal law on equitable estoppel and compelling arbitration where plaintiff's claims implicated a contract that included an arbitration clause). Plaintiff does not dispute this point.  *See generally* Resp.

*on other grounds, as recognized in Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1171 (11th Cir. 2011). While Mr. Blinco signed the underlying note containing an arbitration clause, Mrs. Blinco did not. *Id.* When defendants attempted to compel arbitration against Mrs. Blinco, she argued that her claims "ar[ose] solely from statutory rights created by RESPA" and therefore she could not be bound by the arbitration agreement in the underlying note through equitable estoppel. *Id.* at 1312. However, the Court rejected this argument because her statutory claims "derive[d] from . . . the [underlying] note." Accordingly, Mrs. Blinco "[could] not rely upon the Note to establish her RESPA claims while avoiding her obligation under the Note to arbitrate such claims." *Id.*

Like Mrs. Blinco attempting to couch her claim solely under RESPA, Plaintiff argues that his claim only arises from Know Your Customer and Anti-Money Laundering rules, as well as Defendants' failure to create or comply with adequate internal policies. Resp. at 8–9. But, just as in *Blinco*, Plaintiff's claims "derive" from the underlying Terms. Plaintiff specifically alleges in his Complaint that Binance failed to "halt the further movement of [Plaintiff's] stolen property." Compl. ¶ 108. Additionally, in his prayer for relief, Plaintiff seeks a declaration that "Defendants were unjustly enriched by their collection of transaction fees" as well as "restitution and disgorgement of Defendants' ill-gotten gains." Compl. at 32. In other words, Plaintiff is suing Defendants for failing to exercise a right created by the Terms—and for collecting funds pursuant to the Terms. *See Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (holding a claim arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship). Accordingly, Plaintiff may not "rely upon the [Terms]

to establish [his] claims while avoiding [his] obligations under the [Terms] to arbitrate such claims." *Blinco*, 400 F.3d 1308 at 1312.[3]

Further, Plaintiff's reliance on *Leidal v. Coinbase* is misplaced. There, a cryptocurrency investor sued Coinbase after the exchange's services were allegedly used to steal his cryptocurrency. *Leidel v. Coinbase*, 729 F. App'x 883, 884 (11th Cir. 2018). When Coinbase attempted to compel the plaintiff to arbitration based on an arbitration provision agreed to by the thief, the plaintiff objected on the grounds that he was a non-signatory to the agreement. In holding that the plaintiff could not be bound by the agreement under equitable estoppel, the Eleventh Circuit noted that "Florida courts draw a distinction between clauses that require arbitration of claims 'arising out of' the subject contract and those that require arbitration of claims 'arising out of *or relating to*' the contract." *Leidel*, 729 F. App'x at 887 (citing to *Jackson*, 108 So. 3d at 593). The former are "considered to be 'narrow in scope' and apply only to 'those claims that have a direct relationship to a contract's terms and provisions.'" *Id.* The latter are "considered to be 'broad in scope' and apply to 'claims that are described as having a 'significant relationship' to the contract . . . ." *Id.*

Ultimately, the court found that plaintiff's claims had neither a significant relationship nor a direct relationship to the arbitration provisions because his claims were based on the defendant's "alleged failure to (1) adequately monitor or investigate [the thief's] use of Defendant's website; (2) detect [the thief's] theft of [the plaintiff's] Bitcoin; and (3) report suspicious activity by [the thief] to the appropriate authorities." *Leidel*, 729 F. App'x at 888. These duties were "imposed

---

[3] Plaintiff argues that the present case is also distinguishable from *Blinco* because "Plaintiff [does not] have any relation to the individual who allegedly entered into the agreement with Defendants." Resp. at 6. While it is true that the non-signatory in *Blinco* was married to the signatory, the Eleventh Circuit did not rely on this relationship in its equitable estoppel analysis. *See Blinco*, 400 F.3d 1308 at 1312. Thus, the Court does not find *Blinco* to be distinguishable from the present case.

on Defendant by the Bank Secrecy Act and its implementing regulations not for the protection of Defendant's customers, but to detect money laundering and other suspicious or illegal activities by Defendant's customers" and therefore did not bear a significant relationship or direct relationship to the contract. *Id.*

Here, however, the facts are readily distinguishable from those in *Leidel*. For starters, the arbitration provision at issue is broad in scope. *See* Arbitration Provision (requiring arbitration of claims "arising in connection with or relating in any way to these Terms"). Additionally, although Plaintiff does allege that Defendants failed to comply with Know Your Customer and Anti-Money Laundering protocols and tethers certain allegations to similar statutory obligations, *see* Compl. ¶¶ 58, 99, 101, 110–112, Plaintiff also alleges that Binance failed to "halt the further movement of [Plaintiff's] stolen property." Compl. ¶ 108. This particular allegation regarding Defendants' failure to freeze the deposited funds has no connection to Defendant's failure (or statutory obligation) to properly identify customers or trace the origin of deposited funds. Nor does Plaintiff attempt to make such a connection. *See generally* Resp.[4] And determining whether Defendants had the ability and obligation to freeze funds will require referencing § II(D)(1) of the Terms. Accordingly, Plaintiff's claims have a significant relationship to the Terms. *See Jackson*, 108 So. 3d at 593 (holding there is a significant relationship when "the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract").

In sum, having found the Arbitration and Delegation Provisions under the Terms enforceable pursuant to the doctrine of equitable estoppel, the Court must enforce these

---

[4] Notably, even if Plaintiff had identified such a statutory scheme in his response, it would not change the outcome here. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding Plaintiff "may not amend [his] complaint through argument in a brief").

"agreement[s] to arbitrate threshold issues." *Rent-A-Ctr., W., Inc.*, 561 U.S. at 70. Here, the threshold issues specifically include the "scope" of the Arbitration Provision as challenged by Plaintiff. *See* Delegation Provision; Resp. at 12–14.[5] This matter must therefore proceed to arbitration.[6]

Finally, courts are split as to whether a stay or dismissal is proper when all claims in a complaint are compelled to arbitration. *See Valiente v. Holiday CVS, LLC*, No. 20-20382, 2020 WL 2404701, at *2–3 (S.D. Fla. May 12, 2020) (collecting cases). The Eleventh Circuit, however, has indicated that a stay is the more sound approach. *See id.* Accordingly, the Court will grant the Motion and stay the case pending arbitration—rather than dismiss it.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Motion, [ECF No. 49], is **GRANTED**.

2. Plaintiffs are **COMPELLED** to arbitrate their claims against Defendants pursuant to the Terms.

3. This case is **STAYED** pending the conclusion of arbitration proceedings.

4. In light of the stay, Plaintiff's Motion for Leave to File Amended Class Action Complaint, [ECF No. 62], is hereby **DENIED AS MOOT**.

---

[5] The Delegation Provision explicitly states that: "You and Binance Operators further agree that the arbitrator shall have the exclusive power to rule on his or her own jurisdiction, including without limitation any objections with respect to the existence, scope or validity of the Agreement to Arbitrate, or to the arbitrability of any claim or counterclaim."

[6] Defendants move to compel arbitration of Plaintiff's claims against both BAM and Biance. Mot. at 17–18. Plaintiff does not separately address or object to the arbitration of his claims against BAM. *See generally* Resp. Arbitration against multiple defendants is appropriate when the claims are based on the same facts and inherently inseparable from the alleged misconduct by a signatory. *Physician Consortium Servs., LLC v. Molina Healthcare, Inc.*, 414 F. App'x 240, 243 (11th Cir. 2011). Such is the case here. Accordingly, all parties shall be compelled to arbitrate Plaintiff's claims.

5.  The parties shall provide the Court with joint status reports every **sixty (60) days** regarding the status of arbitration proceedings.

6.  The Clerk shall **CLOSE** this case for administrative purposes only.

**DONE AND ORDERED** in Miami, Florida, this 31st day of July, 2024.

                                        **RODOLFO A. RUIZ II**
                                        **UNITED STATES DISTRICT JUDGE**