**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:23-cv-22083-RUIZ/Sanchez**

MICHAEL OSTERER, *et al.*,

     *Plaintiffs*,

v.

BAM TRADING SERVICES, INC., *et al.*,

     *Defendants.*

_____/

**DEFENDANTS' MOTION TO ENJOIN DUPLICATE CLASS ACTION FILED**
**BY PLAINTIFFS AFTER ORDER COMPELLING ARBITRATION**

Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
Telephone: 305-530-0050

Christopher N. LaVigne (pro hac vice)
christopher.lavigne@withersworldwide.com
Withers Bergman LLP
430 Park Avenue, 10th Fl.
New York, New York 10022
Telephone: 212-848-9800

*Counsel for Defendant Binance Holdings,*
*LTD. d/b/a Binance*

Adam M. Foslid (FBN 682284)
afoslid@winston.com
Winston & Strawn LLP
200 S. Biscayne Blvd., Ste. 2400
Miami, Florida 33131
Telephone: 305-910-0646

*Counsel for Defendant BAM Trading*
*Services Inc. d/b/a Binance.US*

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................1

II.  RELEVANT BACKGROUND .............................................................................4

    A.   BHL Seeks Arbitration Because the Class Claims Rely on the Terms ..................4

    B.   Osterer Argued the Claims are Based on Statutory Rights, Not BHL's Terms ...................................................................................................................5

    C.   While the Arbitration Motion Was Pending, Osterer Sought Leave to Add the Additional Plaintiffs and a RICO Claim ...........................................................5

    D.   The Court Held Plaintiffs' Claims Rely on BHL's Terms, Compelled Arbitration, and Denied Leave to Amend as Moot ..................................................6

    E.   Additional Plaintiffs File the Copy-Cat *Martin* Complaint .................................6

    F.   Osterer Refuses to Arbitrate and Seeks Dismissal *Without Prejudice* ..................9

III. ARGUMENT ...................................................................................................10

    A.   The Court Has Broad Discretion to Enjoin Plaintiffs Under the All Writs Act ...................................................................................................................10

        i.    The Court Should Enjoin Plaintiffs from Further Prosecuting *Martin* to Protect its Arbitration Order and Jurisdiction .........................11

        ii.   An Injunction Will Preserve Judicial Resources Because Under the First-Filed Rule, the Court Will Adjudicate Whether Additional Plaintiffs Must Arbitrate ..................................................................13

    B.   The Court Should Enjoin *Martin* on Collateral Estoppel Principles ...................15

        i.    This Court Already Decided the Arbitrability of *Martin*'s Claims ...........15

        ii.   Even Though Additional Plaintiffs Were Denied Leave to Join as Named Plaintiffs in the Class Action, They Are Still Bound by the Arbitration Order ....................................................................................16

IV.  CONCLUSION ..................................................................................................18

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. United States*,
317 U.S. 269 (1942) ........................................................................................11

*Allstate Ins. Co. v. Clohessy*,
9 F. Supp. 2d 1314 (M.D. Fla. 1998) ...............................................................15

*Boneta v. Am. Med. Sys., Inc.*,
524 F. Supp. 3d 1304 (S.D. Fla. 2021)..............................................................15

*Burr & Forman v. Blair*,
470 F.3d 1019 (11th Cir. 2006)..........................................................................10

*California v. Texas*,
459 U.S. 1096 (1983) ........................................................................................17

*E.E.O.C. v. Waffle House, Inc.*,
534 U.S. 279 (2002) ..........................................................................................13

*Fernandez v. Cruz*,
341 So. 3d 410 (Fla. Dist. Ct. App. 2022)..........................................................16

*Jones v. Blackstone Med. Servs. Med. Servs., LLC*,
2024 WL 4732705 (M.D. Fla. Nov. 11, 2024) ..................................................14

*Kerruish v. Essex Holdings, Inc.*,
777 F. App'x 285 (11th Cir. 2019) ......................................................................1

*Klay v. United Healthgroup, Inc.*,
376 F.3d 1092 (11th Cir. 2004)..........................................................................11

*Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*,
534 F. Supp. 2d 1290 (S.D. Fla. 2008)...............................................................11

*Marquardt v. State*,
156 So. 3d 464 (Fla. 2015) ................................................................................15

*Martin et al. v. Binance Holdings, Ltd. et al.*,
Case No. 2:24-cv-01264-BJR (W.D. Wash. Aug. 16, 2024),.........................*passim*

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
531 U.S. 497 (2001) ..........................................................................................15

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ...................................................................................... 17, 18

*Thomas v. The City of Jacksonville*,
    2016 WL 7093919 (11th Cir. Dec. 6, 2016) ........................................................ 10

*Wynn v. Vilsack*,
    2021 WL 7501821 (M.D. Fla. Dec. 7, 2021) ....................................................... 14

**Statutes**

9 U.S.C. § 3 ................................................................................................................ 10

18 U.S.C. §1961(4) ....................................................................................................... 8

All Writs Act, 28 U.S.C. § 1651(a) ................................................................ 1, 10, 11

# I. INTRODUCTION

This Court found that named plaintiff Michael Osterer's claims, and the claims of those similarly situated class members, are subject to mandatory individual arbitration. Unsatisfied with the Court's well-reasoned order, Plaintiffs and their counsel[1] engaged in a scheme to end-run the Court's order. As part of that scheme, just two weeks after the Court ordered arbitration, the Additional Plaintiffs[2], represented by the same counsel in this action, filed a copy-cat class action complaint in the Western District of Washington, for the same harm, against the same defendants, alleging the same causes of action, and on behalf of the same class. (*See Martin et al. v. Binance Holdings, Ltd. et al.*, Case No. 2:24-cv-01264-BJR, (W.D. Wash. Aug. 16, 2024) ("*Martin*"), ECF No. 1 ("*Martin* Complaint"), a copy of which is attached as Exhibit 1 to the accompanying Declaration of Christopher N. LaVigne ("LaVigne Decl.").), which is attached as **Exhibit A**.[3]

*Martin* is a transparent attempt by Plaintiffs to deprive this Court of its jurisdiction to oversee the arbitration of their claims and to attack the Court's order compelling arbitration.[4] Accordingly, Defendants move pursuant to the All Writs Act, 28 U.S.C. § 1651(a), and collateral estoppel principles to enjoin Plaintiffs from pursuing their claims in *Martin* or any forum other

---

[1] As used herein, "Plaintiffs" refers collectively to Michael Osterer ("Plaintiff" or "Osterer"), Philip Martin , T.F. (Natalie) Tang, and Yatin Khanna.

[2] "Additional Plaintiffs" refers collectively to Plaintiffs Martin, Tang, and Khanna.

[3] The filings and discovery responses in Martin are properly judicially noticed. *Kerruish v. Essex Holdings, Inc.*, 777 F. App'x 285, 293 (11th Cir. 2019) ("Judicial notice of court records is ordinarily confined to determining what happened in the course of a proceeding—when a plaintiff filed a complaint, <u>what claims were argued</u> and adjudicated, and so on." (emphasis added).)

[4] For avoidance of doubt, Defendants Binance Holdings Ltd. ("BHL") and BAM Trading Services Inc. ("BAM") (collectively hereinafter "Defendants") reiterate their position that the Court lacks personal jurisdiction over Defendant BHL regarding the merits of this case. [*See* Defendants' Motion to Compel Arbitration or in the Alternative, to Dismiss Plaintiff's Complaint and Strike Class Action Allegations, ECF No. 49 ("Arbitration Motion") at 18-26.] This motion refers to the Court's jurisdiction over this matter to enforce its order compelling arbitration [ECF No. 71] ("Arbitration Order").

than that contemplated by BHL's Terms of Use ("Terms").

Osterer filed the initial class action complaint in this Court seeking to hold Defendants liable for cryptocurrency purportedly stolen from his Coinbase account by unknown hackers, which, allegedly, was eventually deposited on BHL's digital asset exchange, Binance.com. Osterer claimed that Defendants are liable to him and the putative class because BHL knowingly ignored Know Your Customer and Anti-Money Laundering policies, knew that fraudulent activity was occurring on its exchange, and had the ability to freeze the fraudulent transactions but did not do so in order to collect transaction fees.

Defendants moved to compel arbitration of the class claims under equitable estoppel principles. Defendants argued that Osterer's theory of liability—that BHL had the ability to stop the fraudulent transactions, but intentionally did not do so to collect transaction fees—relies on rights created by the Terms. Thus, Osterer and the class are bound by the Terms, which includes mandatory arbitration and class waiver provisions. Osterer opposed arbitration, arguing that the claims do not rely on BHL's Terms and instead arise out of statutory rights.

While the motion to compel was pending, Osterer requested leave to amend the complaint to add the Additional Plaintiffs as named plaintiffs, add BHL's former CEO as a defendant, add allegations regarding government proceedings involving BHL, and add a RICO claim ("Motion for Leave"), [ECF No. 62]. Plaintiffs made repeated assurances to the Court that the amendments would not alter the analysis of the motion to compel in any way. Specifically, they maintained that the Additional Plaintiffs are part of the same putative class and they "have been injured by the same wrongful practices" by Defendants. (*Id.* at 1-2.) Likewise, Plaintiffs represented to the Court that, *inter alia*, the additional allegations and RICO claim are based on the "same wrongful conduct alleged in the initial complaint." (*Id.* at 6-7.)

Because Plaintiffs argued that the proposed amendments would not impact the analysis on arbitration, Defendants opposed leave as futile. [ECF No. 63.] In reply, Plaintiffs "unequivocally" reiterated that the proposed amendments would not impact arbitration and if the Court compelled arbitration, Plaintiffs would be able to "move expeditiously" to arbitrate. [ECF No. 64 at 4-5.]

On July 31, 2024, the Court issued the Arbitration Order, explicitly rejecting Plaintiffs' argument that the class claims are based on statutory rights, not BHL's Terms. The Court held that "Plaintiff is suing Defendants for failing to exercise a right created by the Terms [freezing the hackers' accounts]—and for collecting funds pursuant to the Terms." (Arbitration Order at 8.) The Court compelled "Plaintiffs . . . to arbitrate their claims." (Arbitration Order at 11 (emphasis added)) and denied the Motion for Leave as moot.

Despite the Arbitration Order and Plaintiffs' representations that they would arbitrate their claims if compelled, Plaintiffs instead engaged in a two-part scheme to end-run the Arbitration Order. First, through the same lead counsel in this action, the Additional Plaintiffs filed the *Martin* Complaint, which is identical to the proposed amended complaint in every way, except that they added allegations hoping to distance themselves from the Arbitration Order. Specifically, (1) even though Osterer remains part of the *Martin* class, the Additional Plaintiffs dropped him as named plaintiff for optics to avoid obvious *res judicata* and collateral estoppel issues; (2) they added conclusory allegations that they are not relying on BHL's Terms to state their claim; and (3) they amended the allegations to either omit or use ambiguous language regarding BHL's ability to freeze accounts and collect fees. Second, after they commenced the class action in another jurisdiction, they requested that this Court dismiss the class claims without prejudice and to be excused from providing periodic status updates on arbitration. [ECF Nos. 74, 76.] This last step is critical to their scheme because it would give them free reign to circumvent the Arbitration Order

without any oversight from this Court.

In response to Plaintiffs' attempt to deprive this Court of its jurisdiction to enforce the Arbitration Order, Defendants filed a motion to dismiss the class action complaint with prejudice. [ECF No. 75.] Defendants stand by the arguments advanced in their motion to dismiss and maintain that dismissal with prejudice is appropriate and necessary. Nevertheless, given the attempts by Plaintiffs and their counsel to attack the Court's Arbitration Order, an injunction is necessary to prevent them from making a mockery of this Court and the Arbitration Order.

## II.  RELEVANT BACKGROUND

### A.      BHL Seeks Arbitration Because the Class Claims Rely on the Terms

On June 5, 2023, Osterer filed a putative class action[5] complaint (the "Complaint") against Defendants, asserting claims for conversion, aiding and abetting conversion, and unjust enrichment. [ECF No. 1.] Plaintiff alleged that unidentified third-party hackers infiltrated his Coinbase account, stole his cryptocurrency, deposited the cryptocurrency in BHL accounts, and then ultimately withdrew the funds. (*Id.* ¶¶ 76-81.) Plaintiff alleged that the financial harm he and the class suffered as a result of this theft was a "direct and proximate result of [BHL]'s policies and failures" (*id.* ¶ 84), and that Defendants are liable because BHL "had the ability to freeze those accounts and stop transactions," and "could have"  but did not do so "for the purpose of earning [BHL] transaction fees" (*id.* ¶¶ 72-75).

On December 8, 2023, Defendants filed the Arbitration Motion to compel arbitration of these claims on equitable estoppel grounds [ECF No. 49], arguing that Osterer's individual and

---

[5] Plaintiff defined the Class as: "All persons or entities in the United States within the applicable statute of limitations period through class certification who had their stolen cryptocurrency deposited in a Binance account." (Compl. ¶ 85.)

class claims are based on rights created by the Terms and, therefore, he was also bound by the Terms' arbitration and class waiver provisions. (*See generally, id.*)

**B.      Osterer Argued the Claims are Based on Statutory Rights, Not BHL's Terms**

On February 2, 2024, Plaintiff filed an opposition to the Arbitration Motion. [ECF No. 52.] Plaintiff's primary argument was that the claims are not premised on BHL's ability to freeze accounts and collect fees (thus not premised on BHL's Terms), but are based on BHL's "practices that led to Plaintiff's and Class Members' losses," including, Defendants' "inadequate KYC and AML protocols"; policy allowing deposits and withdrawals of up to 2 Bitcoin per day without verification; and "lack of internal controls" and tracing policies. (*Id.* at 8 (emphasis added).)

**C.      While the Arbitration Motion Was Pending, Osterer Sought Leave to Add the Additional Plaintiffs and a RICO Claim**

While the Arbitration Motion was pending, Osterer filed the Motion for Leave and attached a proposed amended complaint ("Amended Complaint") [ECF No. 62-1], which sought to add (1) the Additional Plaintiffs as named plaintiffs, (2) BHL's former CEO as a defendant, (3) a RICO claim, and (4) additional detail regarding the government proceedings Plaintiff relied on in opposing arbitration. Plaintiff assured the Court that "the proposed amendments in no way would alter the Court's analysis of the pending motion to compel arbitration." (Motion for Leave at 5 (emphasis added).) Plaintiff argued that Additional Plaintiffs, and "all other members for the proposed Class," "all have been injured by the same wrongful practices of Defendants as Plaintiff Osterer was." (*Id.* at 1-2.) Similarly, Plaintiffs represented that "the new facts alleged" "strengthen [the] existing claims while not altering the balance of the arguments for or against arbitration." (*Id.* at 6.) Finally, Plaintiff argued that "these new allegations . . . support RICO claims against Defendants for the same wrongful conduct alleged in the initial Complaint." (*Id.* at 6-7 (emphasis added).) In the Reply in support of the Motion for Leave ("Reply"), Plaintiffs reiterated that "[as]

unequivocally stated in [the Motion for Leave]" the new allegations "strengthen Plaintiff's existing claims while not altering the balance of arguments for or against arbitration." [ECF No. 64 at 4.] Plaintiffs also argued leave would promote efficiencies because they "will be in a better position to move expeditiously" to arbitrate if the Court compels it. (Reply at 5.)

In other words, Plaintiffs represented repeatedly to this Court that the Complaint and Amended Complaint are based on the same claims and theory of liability, and that an order compelling arbitration as to Plaintiff would have the same force and effect as to the Additional Plaintiffs.

### D.   The Court Found Plaintiffs' Claims Rely on BHL's Terms, Compelled Arbitration, and Denied Leave to Amend as Moot

On July 31, 2024, the Court granted BHL's Arbitration Motion and issued the Arbitration Order. The Court agreed with Defendants and held that because Plaintiff alleged that Binance failed to "halt the further movement of [Plaintiff's] stolen property, ... Plaintiff is suing Defendants for failing to exercise a right created by the Terms—and for collecting funds pursuant to the Terms." (Arbitration Order at 8.) Accordingly, the Court held that Plaintiff was equitably estopped from "rely[ing] upon the [Terms] to establish [his] claim while avoiding [his] obligation under the [Terms] to arbitrate such claims." (*Id.* at 8-9.) In reaching its holding, the Court addressed and rejected Plaintiff's argument that his claims and the claims of the class are rooted in a statutory scheme. (*Id.* at 10.) The Court ordered, *inter alia*, that: (1) "Plaintiffs are **COMPELLED** to arbitrate their claims against Defendants pursuant to the Terms"; and (2) "Plaintiff's Motion for Leave … is hereby **DENIED AS MOOT.**" (*Id.* at 11 (underline added, bold in original).)

### E.   Additional Plaintiffs File the Copy-Cat *Martin* Complaint

Despite representing to the Court that "if the Court mandates arbitration," they will "move

expeditiously" to arbitrate their claims, none of the Plaintiffs have commenced arbitration.[6] (Reply at 5.) Instead, on August 16, 2024, just two weeks after the Arbitration Order, the Additional Plaintiffs, represented by the same counsel, filed a class action in the Western District of Washington, seeking to hold the same defendants liable for the theft of the same cryptocurrency, based on the same claims, individually and on behalf of the same putative class. [*Martin*, ECF No. 1.] Specifically, in both the *Martin* Complaint and the Amended Complaint, Plaintiffs allege:

- "Plaintiff [Martin] is a citizen of California who resides in Los Angeles, California. In December 2021, a third party stole at least tens of thousands of dollars-worth of cryptocurrency from his Coinbase account. After extensive investigation, it was determined that cryptocurrency stolen from Plaintiff Martin was sent to at least one account at Binance.com." (*Compare*, *Martin* Compl. ¶ 19, *with* Amended Compl. ¶ 18.)

- "Plaintiff [Tang] is a citizen of California who resides in Los Angeles, California. In July 2022, a third party stole tens of thousands of dollars-worth of cryptocurrency from her Coinbase account. After extensive investigation, it was determined that cryptocurrency stolen from Plaintiff Tang was sent to at least one account at Binance.com." (*Compare*, *Martin* Compl. ¶ 20, *with* Amended Compl. ¶ 19.)

- "Plaintiff [Khanna]is a citizen of the state of New York who resides in New York, New York. In August 2022, a third party stole more than $1.5 million worth of cryptocurrency from him. After extensive investigation, it was determined that cryptocurrency stolen from Plaintiff Khanna was sent to at least one account at Binance.com." (*Compare*, *Martin* Compl. ¶ 21, *with* Amended Compl. ¶ 20.)

- "Plaintiffs bring this action … on behalf of the following Class: All persons or entities in the United States whose cryptocurrency was removed from a non-Binance/BAM digital wallet, account, or protocol as a result of a hack, ransomware, or theft and, between [four years prior to date complaint was filed] and the date of Judgment . . . , transferred to a Binance.com account, and who have not recovered all of their cryptocurrency which was transferred to Binance.com (the 'Class')." (*Compare*, *Martin* Compl. ¶ 202, *with* Amended Compl. ¶ 205.)

---

[6] *See* First Joint Status Report [ECF No. 72] at 1 ("to date, no arbitration [against BHL] has commenced."); LaVigne Declaration, Ex. 2, Responses and Objections to Defendant BHL's First Set of Arbitration Related Interrogatories to Plaintiff Philip Martin, at Response to Interrogatory 5 ("[Martin]" states he has not commenced arbitration against BHL."); *id.*, Ex. 3, Responses and Objections to Defendant BHL's First Set of Arbitration-Related Interrogatories to Plaintiff Yatin Khanna, at Response to Interrogatory 5 ("[Khanna]" states he has not commenced arbitration against BHL."); *id.*, Ex. 4, Responses and Objections to Defendant BHL's First Set of Arbitration-Related Interrogatories to Plaintiff T.F. (Natalie) Tang, at Response to Interrogatory 2 ("[Tang]" states she has not commenced arbitration against BHL.").

- "Defendants Zhao and Binance, including the Binance.com platform, constituted an 'enterprise' (the 'Binance Crypto-Wash Enterprise') within the meaning of 18 U.S.C. §1961(4) since the start of the Class Period, through which Defendants Binance and Zhao (and later BAM Trading) conducted the pattern of racketeering activity described herein." (*Compare*, *Martin* Compl. ¶ 175, *with* Amended Compl. ¶ 178.)

- Alleging claims for violations of the RICO Act, Conversion, and Aiding and Abetting Conversion. (*Compare*, *Martin* Compl. ¶¶ 211-259, *with* Amended Compl. ¶¶ 214-258.)

Indeed, the *Martin* Complaint is a near carbon-copy of the Amended Complaint except that the Additional Plaintiffs try to artfully plead around the Arbitration Order. First, *Martin* dropped Osterer as a named plaintiff. Osterer is clearly a member of the same class as the Additional Plaintiffs. (*See* Compl. ¶ 85 (defining the class as "All persons or entities in the United States . . . who had their stolen cryptocurrency deposited in a Binance account"); Amended Compl. ¶ 205 ("All persons or entities in the United States whose cryptocurrency was removed from a digital wallet, account or protocol as a result of a hack . . . [and] transferred to a Binance.com account"); *Martin* Compl. ¶ 202 (same as Amended Complaint).) Plaintiffs admit as much. (Motion for Leave at 1-2 (representing that Osterer, the Additional Plaintiffs, and "all other members for the proposed Class suffered great financial losses" and "have been injured by the same wrongful practices of Defendants").) Additional Plaintiffs dropped Osterer as a named plaintiff in *Martin* to avoid obvious *res judicata* and collateral estoppel issues (though these issues remain and Osterer—if he adhered to the Court's Arbitration Order—risks impermissible double recovery as part of the proposed *Martin* class).

Second, they amended the *Martin* Complaint to conclusorily allege that "[they] are not relying on any contracts or agreements entered into between Binance or BAM" to establish their claims. (E.g., *Martin* Compl. ¶10). Third, they reworded (without any material change) their allegations regarding BHL's ability to freeze accounts and collect fees. For instance, instead of

alleging that Defendants are liable because BHL "had the ability to freeze those accounts and stop transactions . . . Binance failed to interrupt the money laundering process when it could have done so" (Compl. ¶¶ 73-74), *Martin* alleges Defendants "made no effort to *utilize reasonable measures*" (*Martin* Compl. ¶ 255 (emphasis added)) to stop transactions on the Binance.com exchange involving the same alleged stolen cryptocurrency. (*See id*. ¶ 242.)

Fourth, Additional Plaintiffs tried to scrub the *Martin* Complaint of any reference regarding BHL's ability to collect transaction fees by removing reference to "ill-gotten gains" and "disgorgement." However, *Martin* still seeks restitution (*Martin* Compl. ¶ 12), and still alleges that Defendants failed to stop the alleged hackers from transacting on the Binance.com exchange because of its desire to obtain "massive" transaction fees. (*See Martin* Compl. ¶ 36 ("Binance has a strong monetary incentive to encourage. . . transactions involving stolen cryptocurrency."); *id.* ¶ 171 ("Defendants generated massive amounts of fees" from "their conspiracy and fraudulent scheme"); *id.* ¶ 183 ("The Binance Crypto-Wash Enterprise functions by generating fees from cryptocurrency transactions by customers.").

The Additional Plaintiffs' efforts do not change what this Court already determined: that no matter how much they try to dress them up, their claims remain the same and derive from the Terms. (*See* Arbitration Order at 8.)

**F.      Osterer Refuses to Arbitrate and Seeks Dismissal *Without Prejudice***

Pursuant to the Arbitration Order, on September 30, 2024, the parties filed the First Status Report, informing the Court that "to date, no arbitration has been commenced." [ECF No. 72.] The parties did not file a second status report when it was due. On December 3, 2024, the Court issued an Order to Show Cause directing the parties to file a joint status report or show good cause for failure to comply with the Arbitration Order by December 5, 2024. [ECF No. 73.]

On December 5, 2024, Plaintiffs' counsel filed a Notice of Voluntary Dismissal Without Prejudice ("Notice") claiming that the action could be automatically "dismissed without prejudice without an Order of the Court." [ECF No. 74.] In response, on the same day, Defendants filed the Motion to Enforce Order Compelling Arbitration, Strike Plaintiff's Notice of Voluntary Dismissal, and Dismiss *With Prejudice* Under Rule 41 ("Motion to Dismiss"). [ECF No. 75.] Later that day, the Court issued an order, explaining that "it appears that the Notice was improperly filed because the Federal Arbitration Act's mandatory stay provision, 9 U.S.C. § 3, precludes voluntary dismissal of a case stayed pending arbitration." [ECF No. 77.] The Court ordered that "on or before December 12, 2024, Plaintiff shall file a response to the Motion [to Dismiss] indicating why the Court should not strike the Notice and dismiss this action with prejudice for failure to arbitrate as required by the Order." (*Id.*)

### III. ARGUMENT

#### A.     The Court Has Broad Discretion to Enjoin Plaintiffs Under the All Writs Act

Under the All Writs Act, 28 U.S.C. § 1651(a), federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The All Writs Act empowers district courts to "issue writs in aid of jurisdiction . . . acquired on some other independent ground." *Burr & Forman v. Blair*, 470 F.3d 1019, 1027 (11th Cir. 2006) (*quoting Brittingham v. Commissioner*, 451 F.2d 315, 317 (5th Cir. 1971)). In allowing courts to protect their jurisdiction, the All Writs Act allows courts to "safeguard not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments." *Thomas v. The City of Jacksonville*, 2016 WL 7093919, at *1 (11th Cir. Dec. 6, 2016) (*quoting Original Brooklyn Water Bagel Co. v. Bersin Bagel Grp., LLC*, 817 F.3d 719, 724 (11th Cir. 2016)). A court may grant a writ under the All Writs Act whenever it is

"calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States*, 317 U.S. 269, 273 (1942).

"In addition to the immediate parties to a proceeding, these writs may be directed to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1324 (S.D. Fla. 2008) (internal quotations omitted). There is no requirement under the All Writs Act to allege the traditional basis for a preliminary injunction. In order to obtain an injunction under the All Writs Act, a party need only "simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1100 (11th Cir. 2004).

### i. The Court Should Enjoin Plaintiffs from Further Prosecuting *Martin* to Protect its Arbitration Order and Jurisdiction

Prosecuting *Martin* Complaint is a direct attempt to circumvent this Court's Arbitration Order. Allowing it to proceed will render the Arbitration Order meaningless and allow Plaintiffs to litigate their claims on a class basis in federal court, despite the fact that the Arbitration Order compelled "Plaintiffs . . . to arbitrate their claims against Defendants pursuant to the Terms," which contains a class waiver provision. (Arbitration Order at 11.) Indeed, Plaintiffs are not hiding that this is exactly what they intend to do. Each has represented that they have not commenced arbitration with BHL. (*See, supra*, n. 6.) And Plaintiffs' counsel confirmed that they have no intent to arbitrate the claims. (*See* Motion to Dismiss at n.1 ("Plaintiff's counsel confirmed during the meet and confer process that Osterer does not wish to pursue arbitration. . . .").) Plaintiffs' counsel doubled down by filing the Notice asking the Court to dismiss all claims of Osterer and "any

11

unnamed member of the putative class . . . "WITHOUT PREJUDICE." (Notice at 1.) And as a final measure to make sure that they could freely contravene the Arbitration Order without oversight from the Court, Plaintiffs' counsel stated in the Joint Response to Court's Order to Show Cause ] that the "Court need not maintain jurisdiction over this matter and may instruct the Clerk to close its file on this matter" and sought to be "excuse[d] . . . from filing [further] Joint Status Report[s]." (ECF No. at 1.) Plaintiffs' counsel has gone to such lengths to attempt to deprive the Court of jurisdiction of the class claims, and to avoid periodic status updates for one reason: so that they can end-run the Arbitration Order and get another shot at the same class action in the Western District of Washington with *Martin*.

As explained above, the Additional Plaintiffs are pursuing the exact same claims, against the exact same defendants, for the exact same injury, and on behalf of the exact same class. (*See*, *supra*, II.E.) But this Court has already found that these claims derive from BHL's Terms and thus the Additional Plaintiffs are bound by the all the provisions in the Terms, including (1) the class action waiver and (2) the mandatory arbitration provision.

Plaintiffs will likely argue that the claims in *Martin* are not the same because *Martin* omits allegations regarding BHL's ability to freeze or halt accounts, and its ability to collect fees, and thus does not rely on BHL's Terms. However, that argument is without merit for two reasons: (1) despite their best efforts, Additional Plaintiffs' claims and theory of liability in *Martin* still derives, at base, from BHL's ability to freeze accounts and collect fees (*see, supra,* II.E), and (2) Plaintiffs repeatedly represented to this Court that their claims, and the purported class they represent, are the same as Osterer's and that if Osterer is bound to arbitrate, so are the Additional Plaintiffs. (Motion for Leave at 1-2 (Osterer, the Additional Plaintiffs,  and "all other members for the proposed Class suffered great financial losses" and "have been injured by the same wrongful practices of Defendants")); Reply at 5 ("[I]f the Court mandates arbitration, the parties will be in

a better position to move expeditiously in that forum . . . .").)

Plaintiffs will also likely argue that they are not bound by the Arbitration Order because the Court denied leave for them to join as additional named plaintiffs. However, even assuming this technical reading of the Arbitration Order is correct, allowing Additional Plaintiffs to pursue the same class action in another federal court will still end-run the Arbitration Order. The Arbitration Order compels Osterer to arbitrate his claims "pursuant to BHL's Terms," which contain a class waiver provision. Given that *Martin* seeks to proceed on behalf of the exact same class as Osterer did, if a class was certified and the class prevailed on the merits, Osterer would be part of that class and he would be entitled to recover as part of that class. But the Arbitration Order expressly prohibits Osterer from adjudicating his claims (1) outside arbitration and (2) on a class basis. This result is untenable: on one hand, if Osterer is allowed to recover as a class member in *Martin*, it would allow him to avoid the Arbitration Order; on the other, if he proceeds with arbitration and as a member of the *Martin* class, it risks impermissible double recovery. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t 'goes without saying that the courts can and should preclude double recovery by an individual.'").

Taken together, there can be no question that the Additional Plaintiffs filed *Martin* in direct response to the Arbitration Order because they did not like this Court's ruling. They attempted to deprive this Court's jurisdiction by impermissibly seeking voluntary dismissal without prejudice and attacked the Arbitration Order by filing the duplicate class action in *Martin*. Accordingly, the Court must enjoin Plaintiffs from prosecuting *Martin*.

      **ii.** **An Injunction Will Preserve Judicial Resources Because Under the First-Filed Rule, the Court Will Adjudicate Whether Additional Plaintiffs Must Arbitrate**

Pursuant to the parties' stipulation, on October 7, 2024, the *Martin* court bifurcated the defendants' response to the *Martin* Complaint: issues of arbitrability will be decided in the first

instance, followed by Rule 12 challenges, if the case is not ordered to arbitration. [*Martin*, ECF No. 42.] All discovery, except for limited arbitration-related discovery, in *Martin* is stayed. [*Martin*, ECF No. 59]. The deadline for defendants to file the motion to compel arbitration was December 13, 2024. However, the *Martin* parties requested, and the court granted, an extension to the Motion to Compel briefing. On December 10, 2024, the court entered an order extending the deadline for Defendants to file a Motion to Compel to January 13, 2024. [*Martin,* ECF No. 61.]

As part of their motion to compel, defendants intend to argue, *inter alia*, that pursuant to the first-to-file rule, the *Martin* claims are "substantially similar" to those here and transfer the matter to this Court, which, as "the court [that] initially seized of the controversy" "not only [retains jurisdiction] to decide the merits of substantially similar cases, but also establishes [that this Court should] decide whether the second filed suit must be dismissed, stayed, or transferred and consolidated." *Jones v. Blackstone Med. Servs. Med. Servs., LLC*, 2024 WL 4732705, at *2-3 (M.D. Fla. Nov. 11, 2024) ("*Jones*") (quoting *Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 78 (11th Cir. 2013); *see also Wynn v. Vilsack*, 2021 WL 7501821, at *2 (M.D. Fla. Dec. 7, 2021) ("The first-filed rule requires only overlapping issues; it does not require identical issues.").

Given that the *Martin* claims are identical to those in this action, this Court will inevitably decide whether *Martin* "must be dismissed, stayed, or transferred and consolidated [with this action]." *Jones*, 2024 WL 4732705, at *2-3. Therefore, enjoining *Martin* from proceeding further pursuant to the Court's authority under the All Writs Act will conserve judicial resources and avoid conflicting rulings—"the primary purpose of the [first-to-file] rule[.]" *Allstate Ins. Co. v. Clohessy*, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Arthrex, Inc.,* 2022 WL 2542037, at *2 (M.D. Fla. June 9, 2022) (the 'first-filed rule may be

14

invoked by first-filed court to enjoin second-filed case…") (citing *Chavez v. Dole Food Co.*, 836

F.3d 205, 210, 220-21 (3d Cir. 2016)).

### B.      The Court Should Enjoin *Martin* on Collateral Estoppel Principles

Florida state law[7] recognizes collateral estoppel, or issue preclusion, which precludes a

litigant from re-litigating an issue that has been previously decided. Collateral estoppel consists of

five elements:

> (1) the identical issue was presented in a prior proceeding;

> (2) the issue was a critical and necessary part of the prior determination;

> (3) there was a full and fair opportunity to litigate the issue;

> (4) the parties to the prior action were identical to the parties of the current proceeding; and

> (5) the issue was actually litigated.

*Marquardt v. State*, 156 So. 3d 464, 481 (Fla. 2015).

Here, all five elements are satisfied to enjoin Plaintiffs from proceeding with *Martin*.

### i.      This Court Already Decided the Arbitrability of *Martin*'s Claims

As a threshold issue, the first, second, third, and fifth elements are satisfied here because

the issue of arbitrability of Plaintiffs claims was (naturally) a critical and necessary part of the

Motion to Compel Arbitration and was fully and fairly litigated resulting in the well-reasoned

Arbitration Order. Plaintiffs cannot legitimately dispute that the claims in *Martin* are the same

claims that the Arbitration Order compelled to arbitration. (*See, supra*, § II.E.) Again, Defendants

---

[7] The preclusive effect of a judgment rendered by a federal court sitting in diversity is governed
by federal common law, which in turn incorporates the law of the state where the rendering court
sits. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001); *Boneta v. Am. Med.
Sys., Inc.,* 524 F. Supp. 3d 1304, 1319 (S.D. Fla. 2021) (Ruiz, J.) (same). Because Plaintiffs alleged
diversity jurisdiction, the preclusive effect of the Arbitration Order is governed by Florida law,
unless Florida law is "incompatible with federal interests." *Lockheed Martin*, 531 U.S. at 509.

expect that Plaintiffs will argue that the *Martin* Complaint does not present the same issues as the issues presented here, this argument is one already considered by this Court and is easily dismissed.

First, as explained above (*see, supra*, § II.E), despite their best efforts to omit and reword allegations to distance *Martin* from the Arbitration Order, *Martin*'s theory is still the same: Defendants should be held liable because they could have stopped the purportedly fraudulent transaction (*Martin* Compl. ¶¶ 242, 255), but intentionally failed to do so to collect transaction fees (*e.g.*, *id.* ¶¶ 36, 171, 183). Indeed, the *Martin* Complaint still seeks restitution (*id.* ¶ 12), which the Arbitration Order held relied on BHL's Terms (Arbitration Order at 8).

Second, Plaintiffs have represented that the claims are the same. In their Motion for Leave, they assured the Court that "the proposed amendments in no way would alter the Court's analysis of the pending motion to compel arbitration." (Motion for Leave at 5.) Plaintiffs asserted that they have "been injured by the same wrongful practices" of Defendants, and the new RICO allegations they sought to include are "for the same wrongful conduct alleged in the initial Complaint." (*Id.* at 6-7.)  And third, the Court considered this exact argument—including that the class's claims arise from statutory rights, not BHL's Terms—and explicitly rejected it when issuing the Arbitration Order. (*See, supra* § II.D.)

### ii. Although Additional Plaintiffs Were Denied Leave to Join as Named Plaintiffs in the Class Action, They Are Still Bound by the Arbitration Order

The only remaining element, that the parties in the proceedings are identical, is also satisfied, even though the Additional Plaintiffs were denied leave to join as named Plaintiffs. As an initial matter, both Florida and federal law recognize exceptions to the mutuality of parties requirement. *See Fernandez v. Cruz*, 341 So. 3d 410, 414 (Fla. Dist. Ct. App. 2022) (recognizing that preclusion doctrines' requirement for mutuality of parties is not strictly enforced and has been

16

dispensed "where special fairness or policy considerations appear to compel it"); *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (under federal law, a nonparty may be precluded by a prior order in several circumstances). Among others, the Supreme Court has recognized three exceptions pursuant to which the Additional Plaintiffs are bound by the Arbitration Order.

First, "'[a] person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement.'" *Sturgell*, 553 U.S. at 893-94; *California v. Texas*, 459 U.S. 1096, 1097 (1983) (dismissing certain defendants from a suit based on a stipulation "that each of said defendants . . . will be bound by a final judgment of this Court" on a specified issue). Here, the Additional Plaintiffs represented "unequivocally" in the Motion for Leave papers that their allegations in the Amended Complaint "strengthen Plaintiff's existing claims while not altering the balance of arguments for or against arbitration" (Reply at 4; Motion for Leave at 6.) They also maintained that they and the class suffered injury for the same wrongful conduct by Defendants (Motion for Leave at 1-2), and that all of their allegations in the Amended Complaint are based on the "same wrongful conduct alleged in the initial Complaint" (*id.* at 6-7).  In other words, Plaintiffs represented to this Court that the Complaint and Amended Complaint are based on the same claims and theory of liability, and agreed that an order compelling arbitration on one would have the same force and effect on the other. Therefore, they agreed to be bound by the Arbitration Order.

Second, "a nonparty may be bound by a judgment because she was adequately represented by someone with the same interest who was a party to the suit." *Sturgell*, 553 U.S. at 894 (cleaned up). The Additional Plaintiffs concede this point as well. There can be no question that Osterer has the same interest as the Additional Plaintiffs because the Additional Plaintiffs sought to be added as additional named plaintiffs on behalf of the exact same class and claim that they have all been

injured by the same wrongful practices by Defendants. (*See* Motion for Leave at 1-2.) And neither can the Additional Plaintiffs argue against the adequacy of representation because their current counsel represented them in Osterer.

Third, "a nonparty is bound by a judgment if she assumed control over the litigation in which that judgment was rendered. Because such a person has had the opportunity to present proofs and arguments, he has already had his day in court even though he was not a formal party to the litigation." *Sturgell*, 553 U.S. at 895 (cleaned up). The Additional Plaintiffs filed their Motion for Leave to join as additional named plaintiffs *while the Motion to Compel Arbitration was pending*. Indeed, in their Motion for Leave and Reply papers, they had the opportunity to (and did) present arguments regarding arbitration. Thus, they have had their day in court and are bound by the Arbitration Order.

Accordingly, given that the Additional Plaintiffs are bound by the Arbitration Order and allowing *Martin* would result in the Additional Plaintiffs re-litigating the issues decided by the Arbitration Order, the Court should enjoin Plaintiffs from continuing to prosecute *Martin*.

## IV.   CONCLUSION

For the reasons herein, Defendants request that this Court enter the attached updated proposed order, which is attached as **Exhibit B**, enjoining the *Martin* proceedings, and enjoining Plaintiffs and their counsel from pursuing any other action (other than arbitration pursuant to BHL's Terms) for the claims stated in the Complaint, Amended Compliant, and the *Martin* Complaint.

### REQUEST FOR HEARING

Defendants believe that a hearing may be helpful to the Court. Further, while Defendants do not propose that such a hearing be evidentiary in nature, a hearing would be a useful opportunity for Plaintiffs' counsel to explain to the Court what they are seeking to do.

## S.D. FLA. L.R. 7.1(A)(3) CERTIFICATION

Undersigned counsel certifies that, because this filing is for injunctive relief, the parties need not formally meet and confer, and it is evident that parties are in disagreement with respect to the relief requested.

Dated:  December 12, 2024

*s/ Aaron S. Weiss*
Aaron S. Weiss (FBN 48813)
aweiss@carltonfields.com
Carlton Fields, P.A.
700 N.W. 1st Ave., Ste. 1200
Miami, Florida 33136
Telephone: 305-530-0050

Christopher N. LaVigne (pro hac vice)
christopher.lavigne@withersworldwide.com
Withers Bergman LLP
430 Park Avenue, 10th Fl.
New York, New York 10022
Telephone: 212-848-9800

*Counsel for Defendant Binance Holdings, LTD. d/b/a Binance*

*s/ Adam M. Foslid*
Adam M. Foslid (FBN 682284)
afoslid@winston.com
Winston & Strawn LLP
200 S. Biscayne Blvd., Ste. 2400
Miami, Florida 33131
Telephone: 305-910-0646

*Counsel for Defendant BAM Trading Services Inc. d/b/a Binance.US*

19